9

United States District Court
Southern District of Texas
FILED

DEC 0 8 2000

Michael N. Milby
Clerk of Court

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| CARLOS RUBINSTEIN | § | |
| Plaintiff | § | |
| | § | |
| vs. | § | |
| | § | |
| CITY OF BROWNSVILLE, TEXAS | § | Cause No.: B-00-169 |
| & CITY COMMISSIONERS | § | |
| ERNIE HERNANDEZ, CARLTON "BUD" | § | |
| RICHARDS, & HARRY MCNAIR, | § | |
| Individually & Officially | § | |
| Defendants | § | |

## CITY DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO REMAND & SANCTIONS

NOW COMES the CITY OF BROWNSVILLE, TEXAS, and COMMISSIONERS HERNANDEZ, RICHARDS, & MCNAIR, individually and officially (hereafter "CITY DEFENDANTS") in the above-styled and numbered cause, and file this Response to Plaintiff's Motion to Remand & Sanctions. Further, this Response should be read and considered in conjunction with a contemporaneously filed Motion to Abate Ruling, which, by way of counter-motion forms part and parcel of the CITY DEFENDANTS' response to Plaintiff's motion to remand.

### SUMMARY OF THE RESPONSE

The decision to remove this case was proper and appropriate, given the Plaintiff's actions invoking the authority of a federal agency, the EEOC, as a condition prerequisite to pursuing a federally based claim.

Response to Motion to Remand                                    Page   1

Even if the Court should determine that a remand is appropriate, an award of attorney's fees is not warranted in this case. An award of fees is discretionary, not mandatory, under the applicable statute. Given the procedural context of the proceedings, and the novelty of the legal issues presented, an award of costs and attorney's fees should, in all fairness, be denied.

## FACTUAL AND PROCEDURAL BACKGROUND

The lawsuit arises from decision by the CITY COMMISSION for the CITY OF BROWNSVILLE, acting through its duly elected representatives, to involuntarily separate the Plaintiff from his position as City Manager. The CITY COMMISSIONS terminated Plaintiff's employment on January 6, 2000, although the proceedings leading up to this adverse action began in December 1999.

Plaintiff filed suit in state district court against the CITY OF BROWNSVILLE, as well as those City Commissioners who voted in favor of the motion to terminate Plaintiff's employment, that is, COMMISSIONERS HERNANDEZ, RICHARDS, & MCNAIR. Mayor Blanca Vela, who spear-headed the effort to remove Rubinstein, and who also voted in favor of the removal, was not sued in her individual capacity.

Plaintiff filed suit against CITY DEFENDANTS on September 6, 2000 in the 357th District Court, Cameron County, Texas. Plaintiff pleaded a variety of causes of action, some statutory and some

Response to Motion to Remand                    Page 2

common law.   Significant for purposes of the motion to remand, Plaintiff specifically **did not** plead a statutory claim under the Texas Commission on Human Rights Act, which is codified at Chapter 21 of the Texas Labor Code (hereafter "TCHR Act").

The gravamen of Plaintiff's allegations is that the one or more members of the CITY COMMISSIONERS, and necessarily including Mayor Vela, were motivated by an illegal bias against Plaintiff by virtue of one or both of 1) Plaintiff's religious affiliation and/or 2) protected whistleblower type conduct.

At the time that CITY DEFENDANTS filed their state court answer, Counsel for CITY DEFENDANTS reviewed Plaintiff's Petition to assess removability to federal court.   However, because Plaintiff appeared to take pains to avoid pleading a federally cause of action, Counsel for CITY DEFENDANTS determined that at that point there was no proper basis upon which to believe that Plaintiff intended to assert a federally based claim.   CITY DEFENDANTS filed a general denial in state district court, along with the usual affirmative defenses applicable to a public employment action.

Subsequently however, and to the surprise of the DEFENDANT CITY, Plaintiff filed a Charge of Discrimination with the EEOC, a federal agency.   Plaintiff's affidavit in support of the EEOC Charge is dated September 29, 2000, but Notice of the charge to the DEFENDANT CITY is dated October 16, 2000.   The CITY did not receive

Response to Motion to Remand                                    Page  3

the Notice of Charge until October 19, 2000.  See Exhibit "A."  The EEOC Notice of Charge also required the DEFENDANT CITY to submit a Position Statement by November 16, 2000.

The EEOC Complaint, like the state court lawsuit, alleged that CITY DEFENDANTS engaged in retaliatory and religiously-based discrimination against Plaintiff when he was first placed on paid leave and then subsequently terminated as City Manager for the CITY OF BROWNSVILLE.  Because the EEOC Charge was clearly related to the adverse action, which was already the subject of a state court lawsuit, the thrust of the CITY's Position Statement was that the matter was already in litigation.

On October 23, 2000, within thirty days of having been put on notice of Plaintiff's intent to pursue an EEOC Charge, and after significant legal research into whether the Notice of Charge of Discrimination qualified as an "other paper" sufficient to put the CITY DEFENDANT on notice of a federally based claim for purposes of 28 U.S.C. §1447(c), CITY DEFENDANTS prepared and filed a Notice of Removal with both this Court, as well as the state district court.

Shortly thereafter, and apparently in response to the CITY's Position Statement, the EEOC issued Plaintiff a "Dismissal and Notice of Rights" letter dated October 31, 2000, which the CITY received on November 4, 2000.  Pursuant to this "right to sue" letter, the EEOC advised Plaintiff that he had ninety days from the receipt of the notice letter within which to file suit and pursue

Response to Motion to Remand                                    Page  4

a cause of action under Title VII, the ADA, and/or the ADEA. See Exhibit "B." By supplemental advisory to the Court, this document was also filed with this Court.

Plaintiff filed his motion to remand on November 22, 2000, to which CITY DEFENDANTS file this response, as well as a separately filed, but nonetheless related, Motion to Require Election of Remedies Or To Suspend Case.

## SPECIFIC RESPONSE TO PLAINTIFF'S POINTS

### 1.  The Notice of Charge Is An "Other Paper.

Plaintiff contends, first, that the Notice of Charge is not an "other paper". But a reasonable reading of the statute, as well as a reasonable reading of the caselaw authority on the subject, supports the position of the CITY DEFENDANTS that the Notice of Charge is in fact an "other paper." As such, CITY DEFENDANTS had thirty days within which to remove the case or face waiver of their right to remove to federal court.

The applicable statutory provision provides, in pertinent part, as follows:

> If the case stated by the initial pleading is not removable, a notice of removal may be filed **within thirty days** after receipt by the defendants, through service or otherwise, of a copy of an amended pleading, motion, **or other paper** from which it may first be ascertained that the case is one which is or has become removable....

28 U.S.C §1446(b)(emphasis added).

Response to Motion to Remand                                    Page 5

The Court should note, first, that the term "other paper" is carried in a series of nouns constructed in a disjunctive manner, that is, "amended pleading, motion **or** other paper."

Second, the existing the caselaw authority supports the CITY DEFENDANT's assessment that the EEOC Notice of Charge, filed after a lawsuit on the same subject matter was already in progress, qualifies as an "other paper" for purposes of putting the CITY DEFENDANTS on notice and triggering a thirty day removal deadline. *See Addo vs. Globe Life & Accident Insurance*, ___ F.3d ___ (5th Cir. 10/16/2000)(recognizing that correspondence between counsel triggers the "other paper" notice requirements), attached as Exhibit "C"; *see also cases cited therein* at p. 2.

Consequently, while it may be true that there is no case exactly on point holding that service of a Notice of EEOC Charge is in fact an "other paper," there is also no specific caselaw authority saying that it is not. And in view of the interpretation of the statute given in the caselaw, Counsel for CITY DEFENDANT would be remiss in not removing the case upon receipt of a Notice of Charge from a federal agency that clearly and unambiguously reflects that the Plaintiff is fulfilling the procedural prerequisites to pursuit of a federal claim.

The Court can be sure that had CITY DEFENDANTS not removed within thirty days of receipt of the Notice of EEOC Charge, and subsequently removed based on an amended petition asserting a

Response to Motion to Remand                                                    Page 6

federal claims, Plaintiff would be quick to file a motion to remand on the ground that CITY DEFENDANTS had waived their right to removal. The argument – receipt of the Notice of EEOC Charge was an "other paper" triggering the thirty day deadline regardless of the fact that the federal claim was not pleaded in the petition until a later time in the state court proceedings. Failure to remove within thirty days renders the removal defective. *See Murphy Bros. v. Michetti Pipe Stringing, Inc.*, ___ U.S. ___, 119 S.Ct. 1322, 1325-26 (1999)(failure to comply with these express statutory requirements for removal can fairly be said to render the removal defective, and justify a remand).

**2.  The Title VII Claim is the Only Viable Statutory Claim.**

Plaintiff next contends that he is the "master of his claim," and that under the dual filing protocols that exist between the state and federal agencies, the filing of the charge with the EEOC does not foreclose the option of pursing only a state based statutory claim under Chapter 21 of the TCHR Act, codified in the Texas Labor Code.

It is true that in Texas there is a worksharing agreement between the EEOC and the Texas Commission on Human Rights ("TCHR") whereby a charge filed in the EEOC can be deemed to have been filed in the state agency as well, that is, dual filed. Nevertheless, the administrative deadlines and standards applicable to each respective agency under their respective statues and administrative

Response to Motion to Remand                                        Page 7

regulations still apply. *Vielma vs. Eureka Co*, 218 F.3d 458, 464 (5th Cir. 7/20/2000)(in spite of worksharing, limitations periods are independent of each other).

In this regard, the Court should take judicial notice from the exhibits attached hereto, that the administrative deadline under the TCHR Act for filing a charge under Chapter 21 is 180 days from the date of adverse action. See §21.202, Tex. Labor Code, attached as Exhibit "D." Assuming, without conceding, that Plaintiff met all other filing prerequisites under Title VII, Plaintiff had up to 300 days to invoke the authority of the EEOC. 42 U.S.C. §2000e-5(e)(1). The EEOC Charge of Discrimination, on its face, reflects that it was filed with the EEOC within 300 days of the last adverse action.

Under the TCHR Act, the Commission "shall dismiss an untimely complaint." §21.202(b), Tex. Labor Code. Here, the Plaintiff's own affidavit, and the accompanying documents, reflect that the date of the adverse action was January 6, 2000. The so-called "dual filed" complaint was clearly not filed until September 29, 2000. See Exhibit "A" (Rubinstein Affidavit). CITY DEFENDANTS request that the Court take judicial notice that this is well beyond the 180 deadline for purposes of Chapter 21, Tex. Labor Code, but within the 300 day deadline under Title VII.

Counsel for CITY DEFENDANTS presumed that Plaintiff would not pursue a state law based claim that had such an obvious procedural

Response to Motion to Remand                              Page 8

defect in it.  *See Stanley Stores vs. Chavana*, 909 S.W.2d 554, ___ (Tex.App. – Corpus Christi 1995, writ den'd)(180 day deadline is jurisdictional).  It is, of course, Plaintiff's prerogative as the "master of his claim" (Motion at p. 4) to pursue a cause of action that must inevitably be barred and dismissed.  But defense counsel can not be faulted for presuming that Plaintiff would prefer to pursue a claim that did not have such an open and obvious jurisdictional and administrative bar.

Also, if Plaintiff really wanted to avoid federal jurisdiction, and pursue on state law based claims, it would have been equally possible for him to file his administrative charge directly with the Texas Commission on Human Rights.  It would have been impossible to infer from that conduct that Plaintiff might want to pursue a federally based claim.  Instead, Plaintiff chose to file with the EEOC, a federal agency, and clearly asserted that he believed he had suffered religious discrimination and retaliation.  His own affidavit states, in pertinent part:

> I believe that I have been discriminated against because of my religious beliefs, Jewish, and in retaliation for complaining of a protective activity **in violation of Title VII of the Civil Rights Act of 1964, as amended.**

See Exhibit "A" (Rubinstein Affidavit)(emphasis added).

Plaintiff's related argument that he has pleaded other state law based claims, is of no consequence whatsoever to the issues presented here.  This Court clearly has supplemental jurisdiction to consider any and all state law based claims.  28 U.S.C. §1367.

Response to Motion to Remand

3.   **There Is Nothing "Indeterminate" About an EEOC Notice of Charge.**

Plaintiff further contends that the EEOC Charge is "indeterminate." He further contends that "[i]t is clear that Rubinstein has admitted that as of this moment he has not pleaded, by petition or other paper, any federal claim." See Plaintiffs' Motion to Remand at p. 4.

There are two problems with these contentions. First, as described above, there is nothing "indeterminate" about receipt of an EEOC Notice of Charge asserting federal claims **after** initiation of a state court lawsuit based on the identical set of operative facts. As per *Addo*, and the authorities cited therein, the Notice of Charge is sufficient to trigger the 30 day removal deadline.

Further, the authority cited by Plaintiff, *Leffall vs. Dallas ISD*, 28 F.3d 521 (5th Cir. 1994) does not quite stand for the proposition asserted by Plaintiff. *Leffall* addresses the question of whether defense counsel has a duty, for purposes of the thirty day removal clock, to determine that a state court petition does not affirmatively does not plead a federal cause of action. *Leffall* answers this in the negative.

*Leffall* does not provide a rule of decision here. It addresses the standard of due diligence for pleadings, not what constitutes an "other paper." If anything, *Leffall* is instructive of how risky it is for defense counsel to take Plaintiff's

Response to Motion to Remand                                           Page 10

pleadings at face value.  Although ultimately rejected, *Leffall* considered on the merits the contention by the plaintiff therein that defense counsel had a duty to interpret whether a basis for removal determinable from the context of the pleadings.  28 F.3d at 525.

Second, Plaintiff has not "admitted" (Motion at p. 4) that he has no intent to pursue a federal claim, only that he has not pleaded one, a convenient hyper-technicality.  Moreover, the so called admission is made for the first time in the context of the motion to remand itself.

In this regard, CITY DEFENDANTS will state that if Plaintiff, through counsel, will in fact judicially admit and that he has no intention to pursue a cause of action under Title VII, or any other federally based claim, then CITY DEFENDANTS would join Plaintiff in having this case remanded to state district court.  But CITY DEFENDANTS do not want to be placed in a position whereby, after remand, Plaintiff then decides to pursue a federal claim, thereby triggering yet another removal deadline.

At this juncture, the EEOC has issued Plaintiff his administrative Dismissal and Notice of Rights.  See Exhibit "B." Under that Notice Plaintiff has 90 days from receipt of this notice make a final decision about whether to pursue his federal remedy.

**4.   A Federal Court Has Authority to Hold a Case In Suspension While the Administrative Prerequisites Are Perfected.**

Plaintiff cites *Vielma vs. Eureka Co.* for the obvious proposition that one needs a right to sue letter before pursuing a claim in court. Motion at p. 3. Of greater significance, however, is the proposition that in federal jurisprudence under Title VII, that a federal court not only may, but probably should, hold a case in abeyance when the conditions precedent, such as issuance of a right to sue letter, have not been satisfied. *See Oscar Mayer & Co. vs. Evans*, 441 U.S. 750, 765 & n. 13 (1979)(suspension of proceedings preferable to dismissal with leave to refile); *see also Spencer vs. BancoReal, S.A.*, 87 F.R.D. 739, 746 (S.D.N.Y. 1980)(citing to *Oscar Mayer* proposition with approval).

At the time this matter was removed, the EEOC had not issued it right to sue letter to Plaintiff. But prior to filing of the motion to remand, the right to sue letter came down, making the matter ripe. Consequently, the administrative proceeding is ripe for an election by Plaintiff. By way of separately filed motion, CITY DEFENDANTS have asked that Plaintiff be required to elect his remedies, including whether he intends to keep or abandon any or all of his federally based claims.

**5.   An Award of Costs & Attorney's Fees is Not Warranted.**

Predictably, Plaintiff has requested costs and attorney's fees in connection with their motion to remand. Again, it was the potential for exposure to such fees that cause defense counsel to

carefully research and evaluate their position on this matter prior to initiating removal.

The pertinent statutory provision here, 28 U.S.C. §1447(c), provides that a court "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal. On its face, the statutory language is discretionary, not mandatory. As such, CITY DEFENDANTS request that, even if the Court should ultimately conclude that remand is appropriate, an award of costs and attorneys fees is not warranted under the circumstances.

In this regard, CITY DEFENDANTS ask the Court to consider the following criteria. First, the removal was not done without due diligence. Undersigned counsel hereby represents to the Court that the question of removability was identified, researched, and evaluated with due diligence by both undersigned counsel. Given the language of the statute, the gloss given by the existing caselaw authority, and the risk of waiving the thirty day removal deadline, defense counsel reasonably believed that removal was ripe at this time, not at a later time.

Further, CITY DEFENDANTS request that the Court consider that the ambiguity regarding what claims Plaintiff intends to pursue was created by his own conduct. CITY DEFENDANTS were faced with a circumstance whereby Plaintiff's counsel did not appear to wish to pursue a federally based claim. Nevertheless, after the matter is

in litigation, the Plaintiff himself pursues an EEOC Charge, swearing under federal law that he has been discriminated against under Title VII.  CITY DEFENDANTS can only presume that Plaintiff took this action with the actual or constructive knowledge of his counsel.   Regardless, Plaintiff's conduct, which gave CITY DEFENDANTS notice of an intent to at least satisfy the necessary jurisdictional prerequisites for pursuit of a federal claim placed CITY DEFENDANTS in a difficult position.  CITY DEFENDANTS did not create or foster the circumstances giving rise to a procedural development whereby a thirty day removal deadline was ticking.  If anything, failure to heed the deadline would compromise the rights of the CITY DEFENDANTS.  As such, removal was not unreasonable nor frivolous. Therefore, regardless of the Court's ultimate ruling on the motion to remand, the request for costs, expenses, and attorneys fees should, in all fairness, be denied.

**6.  Plaintiff Should Have An Opportunity to Abandon Any Intention to Pursue A Federal Claim.**

By separately filed motion, CITY DEFENDANTS are requesting that the Court do one of two things: a) force an election of his position with regard to Title VII or any other federally based claims or, alternatively (b) abate a ruling on the motion to remand for ninety days, which corresponds roughly with the ninety day period contained in the Notice of Rights letter.  In conjunction with this separately filed motion, CITY DEFENDANTS request that the Court give Plaintiff an opportunity to amend his Petition to

Response to Motion to Remand                                    Page  14

clarify whether he intends to keep or abandon his federally based claims once and for all.

## CONCLUSION

THEREFORE, based on any one or more of the foregoing reasons, the CITY DEFENDANTS hereby request that, after appropriate hearing on the matter, the Court grant the following relief:

1.  find that the Notice of Charge of Discrimination constitutes an "other paper" for purposes of the removal statute;

2.  find that the removal was timely;

4.  deny Plaintiff's request for costs, expenses, and attorney's fees; and

5.  allow Plaintiff an opportunity to amend his pleading to establish whether he intends to pursue or to abandon his federally based claims.

CITY DEFENDANTS further request and pray for any such other and further relief, at law or in equity, to which the CITY DEFENDANTS are entitled.

SIGNED on the _8th_ day of December 2000.

Response to Motion to Remand                                    Page  15

Respectfully submitted,

**DENTON, McKAMIE & NAVARRO**
A Professional Corporation
Bank of America Building
222 East Van Buren, Suite 405
Harlingen, Texas 78550
956/421-4904
956/421-3621 (Fax)

By: _____
RICARDO J. NAVARRO
Attorney in Charge
State Bar No. 14829100
So. Dist. ID No. 5953

By: _____
MAURO F. RUIZ
State Bar No. 24007960
So. Dist. ID No. 23774

## CERTIFICATE OF SERVICE

I certify that a true copy of this document has been sent by regular U.S. Mail, unless otherwise indicated, to the persons listed below on the _8th_ day of December 2000.

Mr. Ed McAninch          **By CMRRR NO. 7000 1670 0000 0474 7412**
LAW OFFICES OF EDWIN L. MCANINCH, P.C.
507 Fall River Road
Houston, Texas 77024
COUNSEL FOR PLAINTIFF

_____
RICARDO J. NAVARRO
MAURO F. RUIZ

Response to Motion to Remand                                    Page 16



EXHIBIT " A "

CtrlPDF – www.fastio.com

## EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

Ricardo J Navarro
Denton, McKamie&Navarro
Attorneys And Counselors
222 East Van Buren, Ste. 405
Harlingen, TX 78550

PERSON FILING CHARGE

Rubinstein, Carlos

THIS PERSON (check one)

[X] CLAIMS TO BE AGGRIEVED
[ ] IS FILING ON BEHALF OF ANOTHER

DATE OF ALLEGED VIOLATION

| *Earliest* | *Most Recent* |
|---|---|
| 12/07/1999 | 12/07/1999 |

PLACE OF ALLEGED VIOLATION

Brownsville, TX

CHARGE NUMBER

360A02016

### NOTICE OF CHARGE OF DISCRIMINATION
*(See EEOC "Rules and Regulations" before completing this Form)*

You are hereby notified that a charge of employment discrimination has been filed against your organization under:

[X] TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

[ ] THE AGE DISCRIMINATION IN EMPLOYMENT ACT OF 1967

[ ] THE AMERICANS WITH DISABILITIES ACT

[ ] THE EQUAL PAY ACT (29 U.S.C, SECT. 206(d)) investigation will be conducted concurrently with our investigation of this charge.

The boxes checked below apply to your organization:

1. [ ] No action is required on your part at this time.

2. [X] Please submit by 11/16/00 a statement of your position with respect to the allegation(s) contained in this charge, with copies of any supporting documentation. This material will be made a part of the file and will be considered at the time that we investigate this charge. Your prompt response to this request will make it easier to conduct and conclude our investigation of this charge.

3. [ ] Please respond fully by _____ to the attached request for information which pertains to the allegations contained in this charge. Such information will be made a part of the file and will be considered by the Commission during the course of its investigation of the charge.

For further inquiry on this matter, please use the charge number shown above. Your position statement, your response to our request for information, or any inquiry you may have should be directed to:

San Antonio District Office
5410 Fredericksburg Road
Suite 200
San Antonio Texas   78229

Guillermo Zamora, Enf. Supv.
*(Commission Representative)*

(210) 281-7603
*(Telephone Number)*

[X] Enclosure: Copy of Charge

BASIS OF DISCRIMINATION

[ ] RACE   [ ] COLOR   [ ] SEX   [X] RELIGION   [ ] NAT. ORIGIN   [ ] AGE   [ ] DISABILITY   [X] RETALIATION   [ ] OTHER

CIRCUMSTANCES OF ALLEGED VIOLATION

See enclosed Form 5, Charge of Discrimination.

RECEIVED
OCT 19 2000

DATE

10/16/00

TYPED NAME/TITLE OF AUTHORIZED EEOC OFFICIAL
Pedro Esquivel
Director

EXHIBIT "A"

SIGNATURE

EEOC FORM 131 (Rev. 06/92)

RESPONDENT'S COPY

# CHAR_ F DISCRIMINATION

This form is affected by the Priv_ Act of 1974; See Privacy Act Statement _ re completing this form.

| | |
|---|---|
| AGENCY | CHARGE NUMBER |
| ☐ FEPA ☒ EEOC | 360A02016 |

___Texas Commission on Human Rights___ and EEOC
*State or local Agency, if any*

| | |
|---|---|
| NAME *(Indicate Mr., Ms., Mrs.)* Mr. Carlos Rubinstein | HOME TELEPHONE *(Include Area Code)* (956) 546-8066 |
| STREET ADDRESS                CITY, STATE AND ZIP CODE 1570 Capistrano Drive, Brownsville, TX 78526 | DATE OF BIRTH 01/13/1959 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME *(If more than one list below.)*

| NAME Brownsville City Of | NUMBER OF EMPLOYEES, MEMBERS Cat A (15-100) | TELEPHONE *(Include Area Code)* (956) 548-8000 |
|---|---|---|
| STREET ADDRESS       CITY, STATE AND ZIP CODE P O Box 911, Brownsville, TX 78520 | | COUNTY 061 |
| NAME | | TELEPHONE NUMBER *(Include Area Code)* |
| STREET ADDRESS       CITY, STATE AND ZIP CODE | | COUNTY |

| CAUSE OF DISCRIMINATION BASED ON *(Check appropriate box(es))* | DATE DISCRIMINATION TOOK PLACE |
|---|---|
| ☐ RACE  ☐ COLOR  ☐ SEX  ☒ RELIGION  ☐ NATIONAL ORIGIN ☒ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ OTHER *(Specify)* | EARLIEST          LATEST 12/07/1999    12/07/1999 ☐ CONTINUING ACTION |

THE PARTICULARS ARE *(If additional space is needed, attach extra sheet(s)):*

On March 1, 1997, I was appointed as City Manager. Toward the end of the initial interview I was asked to disclose my religious affiliation and beliefs.

During my tenure as City Manager I was subjected to offensive, insensitive and anti-Semitic comments, harassment and retaliation for complaining these actions.

On December 7, 1999, I was placed on 30 days paid leave by the City Commission.  I was terminated on January 6, 2000.

I believe I have been discriminated against because of my religious beliefs, Jewish, and in retaliation for complaining of a protective activity in violation of Title VII of the Civil Rights Act of 1964, as amended.

RECEIVED
OCT 19 2000

| | |
|---|---|
| ☐ I want this charge filed with both the EEOC and the State or local Agency, if any.  I will advise the agencies if I change my address or telephone number and cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY - (When necessary for State and Local Requirements) |
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| I declare under penalty of perjury that the foregoing is true and correct. | SIGNATURE OF COMPLAINANT |
| Date 9/29/00    Charging Party *(Signature)* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (Month, day and year) |

EEOC FORM 5 (Rev. 06/99)

FILE COPY

EXHIBIT "B"

CutePDF – www.fastio.com

EEOC Form 161 (10/96)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

To: Carlos Rubinstein
1570 Capistrano Drive
Brownsville, Tx. 78526

From: Equal Employment Opportunity Commission
San Antonio District Office
5410 Fredericksburg Rd.  Suite 200
San Antonio, Tx  78229

[  ]  *On behalf of person(s) aggrieved whose identity is*
*CONFIDENTIAL (29 CFR § 1601.7(a))*

| Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 360 A0 2016 | GUILLERMO ZAMORA, SUPV. | 210/281-7603 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[  ]  The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[  ]  Your allegations did not involve a disability that is covered by the Americans with Disabilities Act.

[  ]  The Respondent employs less than the required number of employees or is not otherwise covered by the statues.

[  ]  We cannot investigate your charge because it was not filed within the time limit required by law.

[  ]  Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge.

[  ]  While reasonable efforts were made to locate you, we were not able to do so.

[  ]  You had 30 days to accept a reasonable settlement offer that afford full relief for the harm you alleged.

[  ]  The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[  ]  The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ X ]  Other *(briefly state)*    Charging Party is in a court of competent jurisdiction regarding the same issues and basis.

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you.  You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed WITHIN 90 DAYS** from your receipt of this Notice; otherwise, your right to sue based on this charge will be lost.  (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.

On behalf of the Commission

_____
Pedro Esquivel, Director

10/31/00
*(Date Mailed)*

Enclosure(s)

cc:   Brownsville ( city of )

RECEIVED
NOV 0 4 2000
DM NRGV



CVISPDF – www.fastio.com

U.S.   5th Circuit Court of Appeals Reports

ADDO v. GLOBE LIFE AND ACCIDENT INSURANCE, ___ F.3d ___ (5th Cir. 2000)

ALICE ADDO Plaintiff-Appellant, v. GLOBE LIFE AND ACCIDENT INSURANCE

COMPANY, Defendant-Appellee.

No. 99-60277.

United States Court of Appeals, Fifth Circuit.

October 16, 2000.

Appeal from the United States District Court for the Southern District of Mississippi,

Before JONES, DUHÉ, and WIENER, Circuit Judges.

EDITH H. JONES, Circuit Judge:

The determinative question before us is whether an insurance company timely removed a case from state court over a $5,000 life insurance policy when it received a letter, after the case was filed, indicating that plaintiff would seek damages exceeding the federal jurisdictional minimum. Finding that the removal≥ petition was ≤untimely≥, we must vacate a summary judgment for the insurer and remand with instructions to remand to state court.

Plaintiff-appellant Alice Addo submitted a claim as the beneficiary under her mother's life insurance policy to defendant-appellee Globe Life and Accident Insurance Company ("Globe"). Upon investigation, Globe discovered that Addo's mother misrepresented a pre-existing condition on her policy application. Accordingly, Globe denied the claim, rescinded the policy, and refunded Addo the premiums that her mother paid for the policy.

Addo brought suit in state court, requesting $5,000 in actual damages – the face amount of the policy – and punitive damages "not to exceed $65,000." A month later, she served a demand letter on Globe, offering to settle the suit for an amount in excess of $75,000.[fn1] Several months passed before Globe served interrogatories on Addo asking her to confirm that the amount in controversy would not exceed $75,000. When she refused to confirm, Globe removed this case to federal court and Addo moved to remand.

The district court denied Addo's motion and later granted Globe's motion for summary judgment. Addo has appealed.

DISCUSSION

Globe removed on the basis of diversity jurisdiction. The complaint stated an insufficient amount in controversy to support diversity jurisdiction See 28 U.S.C. § 1332 (giving district courts original jurisdiction over matters where there is diversity of citizenship and where "the matter in controversy exceeds the sum or value of $75,000"). However, under 28 U.S.C. § 1446(b):

If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after



receipt by the ˌ ˌendant . . . of a copy of an a ˌded
pleading, motion order *or other paper* from which it may
first be ascertained that the case is one which is or has
become removable . . .

Id. (emphasis added). The issue before us is what "other paper"
first gave Globe notice that the amount in controversy exceeded
$75,000 and whether Globe removed within thirty days after
receiving that paper. Addo argues that the demand letter was an
"other paper" and that Globe's ≤removal≥ was ≤untimely≥. Globe
counters that Addo has "≤waived≥" any removal argument based on the
letter, and alternatively, that it timely removed after receiving
the interrogatory answers. We need not reach Globe's alternative
contention.

As an initial matter, Globe's argument that this issue is not
properly before us lacks merit. First, although Addo did not
mention the remand ruling in her notice of appeal, the remand
ruling was encompassed within the final judgment she appealed such
that we may consider it on appeal. See Trust Co. of Louisiana v.
N.N.P. Inc., 104 F.3d 1478, 1485 (5th Cir. 1997) (an appeal from a
final judgment sufficiently preserves all prior orders intertwined
with the final judgment.).

Second, Addo has not "≤waived≥" her argument that the letter was an
"other paper" which gave Globe notice of the amount in
controversy. Globe concedes that Addo issued the letter after
filing her complaint, but it argues that ≤waived≥ any remand
argument based on this *post*-complaint demand letter because she
has continuously, and erroneously, based her remand arguments here
and below on a *pre*-complaint demand letter. We read the record
differently. Despite some ambiguity in Addo's trial court
briefing, neither the trial court nor this court has been
misinformed as to the timing of Addo's letter or the legal
consequences for removal that followed from it.

Turning to the merits of the remand argument, an issue this court
reviews de novo, Rodriguez v. Sabatino, 120 F.3d 589, 591 (5th
Cir. 1997), we have not previously determined whether a
post-complaint letter concerning settlement terms may constitute
an "other paper" under § 1446(b). See Chapman v. Powermatic, Inc.,
969 F.2d 160, 164-65 & 164 n. 8 (5th Cir. 1992) (declining to reach
this question, but concluding for other reasons that a
pre-complaint demand letter does not constitute "other paper").
However, we have held that similar documents can be "other paper,"
see S.W.S. Erectors, Inc. v. Infax, Inc., 72 F.3d 489, 494 (5th
Cir. 1996) (a deposition answer constituted an "other paper"), and
the majority of lower courts to have considered this issue hold
that a post-complaint demand letter is "other paper" under §
1446(b), see Stramel v. GE Capital Small Business Finance Corp.,
955 F. Supp. 65, 67 (E.D.Tex. 1997); Sunburst Bank v. Summit
Acceptance Corp., 878 F. Supp. 77, 82 (S.D.Miss. 1995); Rodgers
v. Northwestern Mut. Life Ins. Co., 952 F. Supp. 325, 327
(W.D.Va. 1997); cf. 14C Charles Alan Wright, et al., *Federal Practice
and Procedure* § 3732 (1998) ("[C]orrespondence between the parties
and their attorneys or between the attorneys usually [is] accepted
as [an] `other paper' source[] that initiate[s] a new thirty-day
period of removability."). Additionally, the SWS case implicitly
rejected the most commonly advanced argument against treating a
letter between counsel as an "other paper," namely, that a
document must actually be filed in the state court proceedings to
be an "other paper." See S.W.S. Erectors, 72 F.3d at 494.
Moreover, the letter in this case complies with our rule that
"other paper" must result from the voluntary act of a plaintiff
which gives the defendant notice of the changed circumstances

2.

which now support federal jurisdiction.   See id.   Holding that a post-complaint letter, which is not plainly a sham, [fn2] may be "other paper" under § 1446(b) is consistent with the purpose of the removal statute to encourage prompt resort to federal court when a defendant first learns that the plaintiff's demand exceeds the federal jurisdictional limit. Further, this holding discourages disingenuous pleading by plaintiffs in state court to avoid removal.

Accordingly, Addo's post-complaint demand letter was an "other paper" under § 1446(b) which gave Globe notice that the case was removable. Because Globe did not, however, remove within thirty days of receiving that letter, Globe's subsequent removal was improper, and Addo's remand motion should have been granted. Thus, we VACATE the district court's judgment and REMAND with instructions to remand the case to state court.

[fn1] Whether the letter is properly characterized as a "demand letter" or "statement letter" may be disputed, but is irrelevant to our legal analysis. The letter states:

[To Globe]:

In our telephone conversation of August 21, 1997, it is my understanding that you offered $5,000 to settle the above referenced case. We counter offer with $250,000. This offer will stand until Friday, September 5, 1997.

Very truly yours,

[Plaintiff's counsel]

[fn2] Globe has not argued that Addo's demand letter was a sham. Although the amount of punitive damages requested was high compared to the policy amount, Mississippi law permits punitive damages for bad-faith refusal to pay a policy, and if a punitive recovery was warranted, it could well have exceeded the federal jurisdictional limit.

Wiener, Circuit Judge, DISSENTING.

By failing to consider the full context in which the August, 1997 letter from the plaintiff's lawyer (the "Addo letter") was sent to Globe's agent, and then by failing to recognize that letter for what it really is, the majority opinion reaches the wrong legal result, albeit under the right law. In the process, that opinion both encourages disingenuous pleading rather than discouraging it and sets a trap for the unwary. This is why I respectfully and reluctantly - but strenuously - dissent.

I.

Context

In testing the Addo letter to see if it qualifies as an "other paper" for purposes of opening § 1446(b)'s 30-day removal window, we must examine that letter in the framework of all the circumstances that existed at the time it was sent by Addo's lawyer and received by the defendant. Only by so doing can we properly determine whether Addo's lawsuit - which was not removable when filed - "is one which is or has become removable" [fn3] by virtue of that letter.

Addo's state court petition, filed less than a month before the

3.

Addo letter was m̄ ___.ed, is artfully crafted to esc ̄ ̄y
removability: In addition to demanding the $5000 proceeds of the
Globe policy, Addo asked for interest, punitive damages,
attorneys' fees and costs, not to exceed $65,000, thereby
expressly capping her aggregate recovery at $70,000. Within weeks
after suit was filed (and apparently before it was placed in the
hands of defense counsel), Globe's agent phoned Addo's lawyer and
proposed to settle the case by paying Addo $5000 in consideration
for her dismissal of the lawsuit. A few days after that phone
call, the 2-sentence Addo letter (reproduced in full in footnote 1
of the majority opinion) rejected Globe's $5000 settlement offer.

   With settlement rejected, Addo's lawyer prosecuted her case in
state court until, approximately six months later, defense counsel
endeavored to establish once and for all whether Addo genuinely
capped her claim at $70,000 or, despite her carefully crafted
pleadings, intended to seek more. This exercise took the form of
Globe's written interrogatories, Addo's answers to which were so
equivocal and noncommittal that they served as grounds for Globe's
removing the case to federal court on the basis of diversity.
Given Mississippi's open-ended law on punitive damages, Addo's
answers to Globe's interrogatories were sufficient - at least
in the eyes of the district judge - to meet the $75,000
jurisdictional amount for diversity purposes. Indeed, it was only
after this 1998 removal that Addo's lawyer resurrected his August,
1997 letter and proffered it as a § 1446(b) "other paper,"
purportedly sufficient to have opened the 30-day removal window,
after the closing of which Globe's removal efforts would be
forever barred. These are the circumstances that bracket the
sending of the Addo letter and provide the complete framework for
testing it as one that first established removability for purposes
of § 1446(b).

                              II.

                Proper Characterization of Addo Letter

   The first sentence of the majority opinion describes the Addo
letter as one "indicating that plaintiff would seek damages
exceeding the federal jurisdictional minimum." That, I submit, is
not an objective description of the letter; rather, it states the
majority's legal conclusion of this entire appeal, the one with
which I take issue today. Next, in its second paragraph, the
majority opinion labels the Addo letter a "demand letter," again a
legal conclusion with which I beg to differ. And, finally, in that
same sentence, the Addo letter is described as "offering to settle
a suit for an amount in excess of $75,000." If, but only if, we
are willing to read the second and final sentence of the
two-sentence Addo letter "in a vacuum," while wearing blinders,
can we say it is an offer to settle. I contend, however, that as a
matter of law the Addo letter can neither be read nor analyzed
that way. When read in pari materia with all the facts and
circumstances of the case - as it must be - the Addo letter
is absolutely nothing more than an emphatic rejection of Globe's
settlement offer. The first sentence of the letter reiterates that
offer; the second sentence of the letter rejects that offer. It's
as simple as that.

   To support its contrary conclusions - that the Addo letter was
"a demand letter" or that it constituted a bona fide offer to
settle the suit for more than $75,000, thereby making it an
indicator of the plaintiff's intent to seek damages exceeding the
federal jurisdictional minimum - the majority relies on its
preliminary finding that the Addo letter is not a "sham." Although
I agree wholeheartedly that the Addo letter is not a "sham" for

4.

its obviously-int   led purpose of rejecting Globe' ;5000
settlement offer out of hand, I am convinced beyond peradventure
that the Addo letter is a "sham" of a settlement counteroffer.
And, unlike most shams, Addo's sham counteroffer was not intended
to fool or mislead anyone!

    Obviously irked by what he presumably perceived to be an
insultingly-low settlement offer from Globe, Addo's lawyer
responded in kind, not with a simple, bland rejection but with one
couched in terms of an equally insulting, exaggerated
"counteroffer." Stated differently, the second sentence of the
Addo letter is no counteroffer at all; it can only have been
intended to drive home the adamancy of her rejection by phrasing
it as a sarcastic and grossly hyperbolized "sham" counteroffer: a
quarter of a million dollars to settle a suit on a $5000 life
insurance claim, plus whatever punitive damages Addo might obtain
from a state court jury of her friends and neighbors? Sure! I
acknowledge that reasonable jurists can differ, but I can discern
no justification for characterizing the Addo letter as anything
other than an unconditional rejection of Globe's proposal to
settle, despite its being dressed for dramatic effect in the
raiment of a faux settlement counteroffer. A counterproposal to
settle for fifty times the amount of the principal demand and more
than three-and-one-half times the capped amount - even
including punitive damages - is just not a demand or a
settlement proposal, much less a realistic one.

    As proof of this pudding, one need only imagine how vociferously
Addo's lawyer would be insisting on this very interpretation had
the shoe been on the other foot, i.e., had Globe timely seized on
the Addo letter as an "other paper" and removed this case to
federal court on the basis of the $250,000 figure in that letter!
I repeat, as a rejection of a settlement offer, the Addo letter is
certainly not a sham; as a settlement counteroffer vel non,
however, I cannot reasonably classify it as anything but a sham.
Therein lies the crucial difference between the majority and me
for purposes of § 1446(b).

    The slight amount of jurisprudence on the subject confirms that
not every "other paper" exchanged between the parties, or between
counsel, or between counsel opposite and a party, will start the
running of § 1446(b)'s thirty-day removal clock. For example, in
Sfirakis v. Allstate Insurance Co.,[fn4] a plaintiff's letter
demanding $300,000 in damages when only $20,000 had been sought in
the pleadings was held to be "nothing more than posturing by
counsel seeking to stake out a position for settlement
purposes."[fn5] The court determined that the letter could not
"override the unamended verified complaint that unequivocally
states that the damages did not exceed $20,000."[fn6] I cannot read
Addo's letter as even "stak[ing] out a position for settlement
purposes." The Addo letter is the antithesis of a genuine
invitation to negotiate, much less her lawyer's true evaluation of
his client's maximum potential recovery. The district court
obviously reached the same conclusion, one that is certainly not
clearly erroneous.

    Similarly, in Golden v. Dodge-Markham Co., Inc.,[fn7] the court
rejected a true demand letter as nevertheless insufficient to
justify a finding of the jurisdictional amount requirement because
the court was "not persuaded . . . that Plaintiff's settlement
demand was an honest assessment of damages."[fn8] In the same vein,
the district court in Standridge v. Wal-Mart Stores, Inc.,[fn9] held
that a $75,000 settlement letter, admittedly sent two weeks before
the filing of the complaint, was "nothing more than posturing by
plaintiff's counsel for settlement purposes and cannot be

5.

considered a reliable indicator of the damages plaintiff [was] seeking."[fn10]

That line of cases illustrates the appropriate analysis for a case like this one, rejecting puffery and posturing and crediting only those writings that are seriously meant to be a plaintiff's realistic assessment of the value of his case. To repeat, the Addo letter was unquestionably intended by its author to serve one purpose only – to reject emphatically a low-ball settlement offer. That, I submit, is the reason why he phrased his response as a sham settlement counteroffer, underscoring the adamancy of that rejection. Under the circumstances that existed at the time the letter was confected, mailed, and received, it had to have been obvious to all concerned – especially counsel for Addo – that reference to the preposterous sum of $250,000 was neither a serious settlement counteroffer nor a realistic appraisal of the judgment value of his client's lawsuit. Again, no one would have insisted on my characterization of the Addo letter more zealously than its author had Globe tried to use it as grounds for removal.

III.

Future Effects

Finally, I must respectfully disagree with the prediction of today's panel majority that its holding will discourage disingenuous pleading by those state court plaintiffs who seek to avoid removal. On the contrary, what could be more encouraging of such disingenuous pleading than the majority's letting Addo get away with her artfully drafted state court petition filed a few weeks before her sham letter, and, months later, her craftily evasive responses to Globe's interrogatories, which sought only to determine, one way or the other, whether or not Addo was seeking to recover $75,000 or more.

Besides providing a blueprint for the drafting of such duplicitous pleadings, today's majority opinion also sets a trap for the unwary. From now on, every scrap of paper sent by a plaintiff or his lawyer to a defendant or his lawyer that, irrespective of content or context, happens to mention any dollar figure in excess of $75,000, can and likely shall be held by a federal court to have started the running of § 1446(b)'s thirty-day removal clock. Henceforth, every plaintiff will be free to amend his state court complaint with impunity – and with only the sky as the limit – as long as he does so more than thirty days after having transmitted some "other paper" that happens to mention a figure of at least $75,000.

As yet another consequence of what we do today, ultra-cautious defense lawyers will undoubtedly file notices of removal virtually every time any writing even obliquely referencing a figure of $75,000 or more is received from the plaintiff or plaintiff's counsel. This will create a veritable ping pong game of removal and remand between state and federal courts until remand eventually "sticks." Even more troubling is the realization that less jittery lawyers - whether plaintiff's or defendant's – who are "merely" diligent practitioners, will awaken one day to find that (1) the plaintiff has inadvertently subjected himself to removal, or (2) the defendant (like Globe today) has just as inadvertently lost forever any opportunity to remove the case, solely because, more than thirty days earlier, the plaintiff sent the defendant some seemingly innocuous letter or fax or e-mail.

IV.

6.

## Conclusion

I remain convinced that, for purposes of opening § 1446(b)'s thirty-day removal window, we must harken to the message of the cases like those cited above and require the presence of a realistic figure in a bona fide writing that demonstrates, in context, a true and functional nexus between the dollars mentioned and the content, context, and circumstances under which such "other paper" is transmitted and received. If this would cause our trial courts to test "other papers" for objective reasonableness and functional nexus, so be it: They conduct such tests under other circumstances on virtually a daily basis.

I certainly agree with the panel majority that removal should be sought promptly when removability can <u>reasonably</u> be ascertained. Removal should not be either triggered or forever precluded, however, by any and every "other paper" that happens to mention a high dollar figure; only by those writings that can be read sensibly as first indicating removability. I respectfully dissent.

[fn3] <u>28 U.S.C. § 1446</u>(b).

[fn4] 1991 WL 147482 (E.D.Pa.).

[fn5] <u>Id.</u> at *3.

[fn6] <u>Id.</u>

[fn7] 1 F. Supp.2d 1360 (M.D.Fla. 1998).

[fn8] <u>Id.</u> at 1364.

[fn9] 945 F. Supp. 252 (N.D.Ga. 1996).

[fn10] <u>Id.</u> at 256.

Copyright 2000 LOISLAW.COM, Inc. All rights Reserved.

EXHIBIT "D"

CVISPDF – www.fastio.com

(b) The local commission shall take appropriate action to remedy the practice alleged as discriminatory in the referred complaint.

(c) If the local commission does not act on the complaint within 60 days or a longer time that is reasonable, the Commission on Human Rights shall reassume responsibility for the complaint and take appropriate action on the complaint.

Acts 1993, 73rd Leg., ch. 269, § 1, eff. Sept. 1, 1993.

### § 21.156. Referral by Local Commission to State Commission

A local commission may refer a matter under its jurisdiction to the Commission on Human Rights.

Acts 1993, 73rd Leg., ch. 269, § 1, eff. Sept. 1, 1993.

## SUBCHAPTER E. ADMINISTRATIVE REVIEW

### § 21.201. Filing of Complaint; Form and Content; Service

(a) A person claiming to be aggrieved by an unlawful employment practice or the person's agent may file a complaint with the commission.

(b) The complaint must be in writing and made under oath.

(c) The complaint must state:

(1) that an unlawful employment practice has been committed;

(2) the facts on which the complaint is based, including the date, place, and circumstances of the alleged unlawful employment practice; and

(3) facts sufficient to enable the commission to identify the respondent.

(d) The executive director or the executive director's designee shall serve the respondent with a copy of the perfected complaint not later than the 10th day after the date the complaint is filed.

(e) A complaint may be amended to cure technical defects or omissions, including a failure to verify the complaint or to clarify and amplify an allegation made in the complaint.

(f) An amendment to a complaint alleging additional facts that constitute unlawful employment practices relating to or arising from the subject matter of the original complaint relates back to the date the complaint was first received by the commission.

(g) If a perfected complaint is not received by the commission within 180 days of the alleged unlawful employment practice, the commission shall notify the respondent that a complaint has been filed and that the process of perfecting the complaint is in progress.

Acts 1993, 73rd Leg., ch. 269, § 1, eff. Sept. 1, 1993. Amended by Acts 1995, 74th Leg., ch. 76, § 9.06(a), eff. Sept. 1, 1995.

### § 21.202. Statute of Limitations

(a) A complaint under this subchapter must be filed not later than the 180th day after the date the alleged unlawful employment practice occurred.

(b) The commission shall dismiss an untimely complaint.

Acts 1993, 73rd Leg., ch. 269, § 1, eff. Sept. 1993.

### § 21.203. Alternative Dispute Resolution; Office

(a) The use of alternative means of dispute resolution, including settlement negotiations, conciliation, facilitation, mediation, fact-finding, minitrials, and arbitration, is encouraged to resolve disputes arising under this chapter. The settlement of a disputed claim under this chapter that results from the use of traditional or alternative means of dispute resolution is binding on the parties to the claim.

(b) The commission shall establish an office of alternative dispute resolution. At any time after a complaint is received under Section 21.201, at the request of a party or at the direction of the commission the matter may be referred to the office of alternative dispute resolution.

Acts 1993, 73rd Leg., ch. 269, § 1, eff. Sept. 1, 1993. Amended by Acts 1995, 74th Leg., ch. 76, § 9.06(b), eff. Sept. 1, 1995.

### § 21.204. Investigation by Commission

(a) The executive director or a staff member of the commission designated by the executive director shall investigate a complaint and determine if there is reasonable cause to believe that the respondent engaged in an unlawful employment practice as alleged in the complaint.

(b) If the federal government has referred the complaint to the commission or has deferred jurisdiction over the subject matter of the complaint to the commission, the executive director or the executive director's designee shall promptly investigate the allegations stated in the complaint.

Acts 1993, 73rd Leg., ch. 269, § 1, eff. Sept. 1, 1993.

### § 21.205. Lack of Reasonable Cause; Dismissal of Complaint

(a) If after investigation the executive director or the executive director's designee determines that reasonable cause does not exist to believe that the respondent engaged in an unlawful employment practice as alleged in a complaint, the executive director or the executive director's designee shall issue a written determination, incorporating the finding that the evidence does not support the complaint and dismissing the complaint.

(b) The executive director or the executive director's designee shall serve a copy of the determination on the complainant, the respondent, and other agencies as required by law.

Acts 1993, 73rd Leg., ch. 269, § 1, eff. Sept. 1, 1993.

### § 21.206. Determination of Reasonable Cause; Review by Panel

(a) If after investigation the executive director or the executive director's designee determines that there is reasonable cause to believe that the respondent engaged in an unlawful employment practice as alleged in a complaint, the executive director or the executive director's designee shall review with

(a) A complaint under this subchapter must be filed not later than the 180th day after the date the alleged unlawful employment practice occurred.

(b) The commission shall dismiss an untimely complaint.

Acts 1993, 73rd Leg., ch. 269, § 1, eff. Sept. 1993.

### § 21.203. Alternative Dispute Resolution; Office

(a) The use of alternative means of dispute resolution, including settlement negotiations, conciliation, facilitation, mediation, fact-finding, minitrials, and arbitration, is encouraged to resolve disputes arising under this chapter. The settlement of a disputed claim under this chapter that results from the use of traditional or alternative means of dispute resolution is binding on the parties to the claim.

(b) The commission shall establish an office of alternative dispute resolution. At any time after a complaint is received under Section 21.201, at the request of a party or at the direction of the commission the matter may be referred to the office of alternative dispute resolution.

Acts 1993, 73rd Leg., ch. 269, § 1, eff. Sept. 1, 1993. Amended by Acts 1995, 74th Leg., ch. 76, § 9.06(b), eff. Sept. 1, 1995.

### § 21.204. Investigation by Commission

(a) The executive director or a staff member of the commission designated by the executive director shall investigate a complaint and determine if there is reasonable cause to believe that the respondent engaged in an unlawful employment practice as alleged in the complaint.

(b) If the federal government has referred the complaint to the commission or has deferred jurisdiction over the subject matter of the complaint to the commission, the executive director or the executive director's designee shall promptly investigate the allegations stated in the complaint.

Acts 1993, 73rd Leg., ch. 269, § 1, eff. Sept. 1, 1993.

### § 21.205. Lack of Reasonable Cause; Dismissal of Complaint

(a) If after investigation the executive director or the executive director's designee determines that reasonable cause does not exist to believe that the respondent engaged in an unlawful employment practice as alleged in a complaint, the executive director or the executive director's designee shall issue a written determination, incorporating the finding that the evidence does not support the complaint and dismissing the complaint.

(b) The executive director or the executive director's designee shall serve a copy of the determination on the complainant, the respondent, and other agencies as required by law.

Acts 1993, 73rd Leg., ch. 269, § 1, eff. Sept. 1, 1993.

### § 21.206. Determination of Reasonable Cause; Review by Panel

(a) If after investigation the executive director or the executive director's designee determines that there is reasonable cause to believe that the respondent engaged in an unlawful employment practice as alleged in a complaint, the executive director or the executive director's designee shall review with

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

| | | |
|---|---|---|
| CARLOS RUBINSTEIN | § | |
|       Plaintiff | § | |
| | § | |
| vs. | § | |
| | § | |
| CITY OF BROWNSVILLE, TEXAS | § | Cause No.: B-00-169 |
| & CITY COMMISSIONERS | § | |
| ERNIE HERNANDEZ, CARLTON "BUD" | § | |
| RICHARDS, & HARRY MCNAIR, | § | |
| Individually & Officially | § | |
|       Defendants | § | |

## INDEX TO EXHIBITS IN SUPPORT OF RESPONSE TO
## MOTION TO REMAND

A.  EEOC Notice of Charge of Discrimination dated 10/16/2000 and accompanying Charge of Discrimination dated 9/29/2000;

B.  EEOC Dismissal & Notice of Rights dated 10/31/2000;

C.  *Addo vs. Globe Life & Accident Insurance*, ___F.3d ___ (5th Cir. decided 10/16/2000);

D.  Chapter 21, Texas Labor Code (relevant sections).