*12*

United States District Court
Southern District of Texas
FILED

FEB 0 1 2001

Michael N. Milby
Clerk of Court

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

| | | |
|---|---|---|
| CARLOS RUBINSTEIN | & | |
| | & | |
| VS. | & | |
| | & | |
| THE CITY OF BROWNSVILLE, TEXAS, | & | CIVIL ACTION NO. B-00-169 |
| ERNIE HERNANDEZ, JR., CARLTON J. | & | |
| "BUD" RICHARDS, HARRY E. MCNAIR, | & | |
| JR., IN THEIR INDIVIDUAL | & | |
| CAPACITIES AND OFFICIAL | & | |
| CAPACITIES AS CITY COMMISSIONERS | & | |
| FOR THE CITY OF BROWNSVILLE | & | |

### PLAINTIFF'S FIRST AMENDED ORIGINAL COMPLAINT

**TO THE HONORABLE JUDGE OF SAID COURT:**

COMES NOW, **CARLOS RUBINSTEIN**, hereinafter referred to as **"Plaintiff"** or **"MR. RUBINSTEIN"** and complains of **THE CITY OF BROWNSVILLE, TEXAS** (herein after referred to as **"Defendant CITY OF BROWNSVILLE"**, Ernie Hernandez, Jr. (hereinafter referred to as **"Defendant HERNANDEZ"**), Carlton J. "Bud" Richards (hereinafter referred to as **"Defendant RICHARDS"**), Harry E. McNair, Jr. (hereinafter referred to as **"Defendant MCNAIR"**) individually and in their official capacities as Members of the City Commission of Brownsville, Texas, and for cause of action would respectfully show the Court and Jury the following:

### I.

This Court has obtained jurisdiction over this cause of action by denying Plaintiff's Motion for remand over objection.

## II.

### CAUSES OF ACTION AND/OR CLAIMS MADE BY PLAINTIFF

2.01 This is a suit for damages against Defendants for unlawfully and wrongfully terminating

Plaintiff **CARLOS RUBINSTEIN** as City Manager for the City of Brownsville, Cameron County,

Texas, arising out of the following conduct of the Defendants:

(1)   Retaliating against Plaintiff, a public employee, for addressing the Ryder/MLS issue with Defendant **HERNANDEZ (in violation of the Texas Government Code Ann., Section 554.002 (Vernon 1998));**

(2)   Dictating to Plaintiff to discipline and/or retaliate against City of Brownsville employees **(in violation of the Texas Constitution, Article 1, Section 8);**

(3)   Dictating to Plaintiff to discipline and/or retaliate against City of Brownsville employees **(in violation of Section 20 of the Brownsville City Charter);**

(4)   Dictating to Plaintiff to discipline and/or retaliate against City of Brownsville employees **(in violation of the Texas Local Government Code Ann., Section 143.086 (Vernon 1998));**

(5)   Harassing Plaintiff insofar as his religious faith and/or beliefs are concerned **(in violation of Section 101, sub-section I, Chapter I of the City of Brownsville Personnel Policies Manual and the Texas Constitution, Article 1, Section 6);**

(6)   Denying Plaintiff the right to file a grievance against City Commissioners Ernie Hernandez, Jr. and Carlton J. "Bud" Richards **(in violation of Section 705 of the City of Brownsville Personnel Policies Manual);**

(7)   Retaliating against Plaintiff, a public employee for addressing or bringing forth City Commissioner Ernie Hernandez, Jr.'s benefit from his vote on the Contract for Municipal and Transit Fleet Management and Maintenance Services between City of Brownsville and Ryder/MLS **(in violation of the Texas Penal Code, Chapter 39, §39.02);**

(8)   Mistreating Plaintiff or intentionally denying or impeding Plaintiff's freedom of speech and/or freedom to worship **(in violation of the Texas Penal Code, Chapter 39, §39.03);**

(9)   Wrongfully terminating Plaintiff from his position as City Manager of the City of Brownsville for refusing to perform an "illegal act" by circumventing a majority City Commissioner vote on a contract or at least when the "laws of this state which carry

criminal penalties" are implicated;

(10)    Wrongfully terminating Plaintiff, a public employee, who in good faith reported a violation of law of other public employees, i.e. Defendants **HERNANDEZ AND RICHARDS,** as members of the City of Brownsville City Commission, to an appropriate law enforcement authority, i.e. the City of Brownsville Police Department. Further, Plaintiff in good faith believed the law enforcement authority, i.e. the City of Brownsville Police Department was authorized to regulate under or enforce the law alleged to be violated in the report or investigate or prosecute a violation of criminal law **(in violation of the Texas Whistleblowers Act, Chapter 554 of the Texas Government Code);**

(11)    Wrongfully terminating Plaintiff from his position as City Manager of the City of Brownsville **(in violation of the Freedom of Religion clause of the Texas Constitution (Tex. Const. Art. 1 section 6) and in violation of the Texas Constitution's Freedom of Association Clause);**

(12)    Wrongfully terminating Plaintiff from his position as City Manager of the City of Brownsville **(in violation of Freedom of Religion clause of the United States Constitution and the Freedom of Association Clause of the United States Constitution;**

(13)    Wrongfully terminating Plaintiff from his position as City Manager of the City of Brownsville **(in violation of the Federal Civil Rights Act of 1964, and 42 U.S.C. §1983, §1981 and §2000bb-1; and**

(14)    Wrongfully terminating Plaintiff from his position as City Manager of the City of Brownsville **(in violation of Chapter 551 of the Texas Government Code - Texas Open Meetings Act).**

### III.

### PARTIES TO THIS LAWSUIT

3.01  Plaintiff **CARLOS RUBINSTEIN** is a natural person residing in Brownsville, Cameron County, Texas.

3.02  Defendant **CITY OF BROWNSVILLE** is a municipal corporation within the State of Texas and may be served with process herein by serving its City Secretary, **MS. MELISSA DENNANY-MORALES,** at Market Square located at City Hall, East 12th Street and Market Square

3

CMzPDF - www.fesita.com

in Brownsville, Texas, pursuant to Rule 106(a)(1) of the Texas Rules of Civil Procedure by delivering to **MS. DENNANY-MORALES**, in person, a true copy of the citation with the date of delivery endorsed thereon with a copy of the herein Original Petition attached thereto.

3.03 Defendant **ERNIE HERNANDEZ, JR.** is one of the Commissioners of the **CITY OF BROWNSVILLE** and may be served with process at Ernie's Fiesta Graphics, 205 Paredes Line Road, Brownsville, Texas, 78521, pursuant to Rule 106(a)(1) of the Texas Rules of Civil Procedure by delivering to **Defendant HERNANDEZ**, in person, a true copy of the citation with the date of delivery endorsed thereon with a copy of the herein Original Petition attached thereto.

3.04 Defendant **CARLTON J. "BUD" RICHARDS** is one of the Commissioners of the **CITY OF BROWNSVILLE** and may be served with process at 17 Casa Linda, Brownsville, Texas, 78521, pursuant to Rule 106(a)(1) of the Texas Rules of Civil Procedure by delivering to **Defendant RICHARDS**, in person, a true copy of the citation with the date of delivery endorsed thereon with a copy of the herein Original Petition attached thereto.

3.05 Defendant **HARRY E. MCNAIR, JR.** is one of the Commissioners of the **CITY OF BROWNSVILLE**, and may be served with process at McNair & Company, Inc., 730 East Fronton, Brownsville, Cameron County, Texas, 78520, pursuant to Rule 106(a)(1) of the Texas Rules of Civil Procedure by delivering to Defendant **MCNAIR**, in person, a true copy of the citation with the date of delivery endorsed thereon with a copy of the herein Original Petition attached thereto.

### IV.

Plaintiff relies upon both federal and Texas state law in asserting the following causes of action.

4

## V.

## CAUSES OF ACTION

A.    **FIRST CAUSE OF ACTION: DEFENDANTS' VIOLATION OF THE TEXAS
GOVERNMENT CODE ANN., SECTION 554.002 (VERNON 1998)**

5.01 Plaintiff would show the Court and Jury that prior to August 4, 1998, the Brownsville

Police Officers' Association (hereinafter referred to as **"BPOA"**) placed an ad in a local radio

station.  This ad, in part, included accusations against Defendants **HERNANDEZ** and **MCNAIR**

of having secret financial dealings with the City of Brownsville which violated State Law and City

Charter Provisions.  On August 4, 1998, **MR. RUBINSTEIN,** then City Manager of the City of

Brownsville, held a press conference to address the said ad.  **MR. RUBINSTEIN** held the press

conference after receiving intense and severe threats of termination of his employment by

Defendants **HERNANDEZ** and **MCNAIR.**  Defendant **HERNANDEZ** implied that he had the

votes to terminate **MR. RUBINSTEIN's** employment when he said, **"If you do not defend me in

the press conference, you will have to deal with me".**  Defendant **MCNAIR** also threaten **MR.**

**RUBINSTEIN** that if he (i.e. **MR. RUBINSTEIN**) did not defend Defendants **HERNANDEZ** and

**MCNAIR** by holding the press conference, that Defendant **MCNAIR** would place an item on the

City Commission Agenda, calling for a vote of **"no confidence"** against **MR. RUBINSTEIN.**

5.02 In the press conference, **MR. RUBINSTEIN** explained to the public that the City of

Brownsville and the Brownsville Police Department were not responsible for the radio ad.  **MR.**

**RUBINSTEIN** made several statements under threats of termination that he did not agree with or

feel were correct or accurate.  One such statement was that to the best of his knowledge and belief

neither the City of Brownsville nor Defendants **HERNANDEZ** or **MCNAIR** had been involved in

5

secret financial dealings.  **MR. RUBINSTEIN** further explained that the City Attorney had reviewed Defendant **HERNANDEZ'** wrecker services and had opined that nothing improper had occurred or taken place.  **MR. RUBINSTEIN** also explained that the City Attorney also reviewed the facts surrounding the placement of vending machines which are owned by Toms Foods, a McNair Company, on city of Brownsville property, and had opined that no violations of law had taken place. The City Attorney said his opinion was based on a review of State Law and City Charter Codes. **MR. RUBINSTEIN** also stated that both he and Police Chief Ben Reyna had reviewed the City Attorney's legal opinions.  As such, **MR. RUBINSTEIN,** based on the City Attorney's opinion, concluded that Defendants **HERNANDEZ** and **MCNAIR** had not acted in improper manner and no conflict of interest or violation of State Law or City Charter Provision was identified.

5.03  Thereafter, on August 5, 1998, the Chief of Police, Ben Reyna contacted **MR. RUBINSTEIN** to advise him that one of the Defendant **HERNANDEZ'** wrecker businesses had towed a vehicle belonging to the Brownsville Police Department on that day and had been towing vehicles in the past for Ryder/MLS.  This action on the part of Ernie's Wrecker Services suggested or gave the appearance of impropriety and directly contradicted the comments made by **MR. RUBINSTEIN** in the aforementioned press conference.   Chief Reyna reminded **MR. RUBINSTEIN** that he **(i.e. MR. RUBINSTEIN)** had told the public that Defendant **HERNANDEZ** had no secret dealings with the City of Brownsville.  It was during this telephone conversation that **MR. RUBINSTEIN** became aware of the agreement between Defendant **HERNANDEZ'** businesses, Ernie's Wrecker Services and/or Express Towing, and Ryder/MLS.  Ernie's Wrecker Services was placed on Ryder's **"preferred services"** list.  This information was of immense concern to **MR. RUBINSTEIN** because Ryder/MLS provided vehicle maintenance services to the

City of Brownsville's fleet under contract voted on and approved by the City Commissioners, including Defendant **HERNANDEZ**.

5.04 On August 7, 1998, Defendant **HERNANDEZ** contacted **MR. RUBINSTEIN** and ordered a meeting for the following day, Saturday, August 8, 1998. The purpose of this meeting, as per Defendant **HERNANDEZ**, was to discuss **"city business"**.

5.05 On August 8, 1998 at approximately 12:30 p.m., **MR. RUBINSTEIN** met with Defendant **HERNANDEZ** at Defendant **HERNANDEZ'** office. Shortly, thereafter, Defendant **MCNAIR** arrived at Defendant **HERNANDEZ'** office unknown to **MR. RUBINSTEIN** that he (i.e. Defendant **MCNAIR**) was also invited to attend said meeting. In the meeting, **MR. RUBINSTEIN** was severely criticized by Defendants **HERNANDEZ** and **MCNAIR** for not being assertive enough. Defendants **HERNANDEZ** and **MCNAIR** continuously expressed their dissatisfaction with **MR. RUBINSTEIN's** press conference. They wanted more punitive measures to be taken against **BPOA** and wanted strong **political** support from **MR. RUBINSTEIN**, as City Manager. At this meeting, **MR. RUBINSTEIN** reminded Defendant **HERNANDEZ** about Ernie's Wrecker Services being on Ryder's **"preferred services"** list. **MR. RUBINSTEIN** pointed out to Defendant **HERNANDEZ** that Ernie's Wrecker Services on Ryder's **"preferred services"** list could be challenged as a conflict of interest. This may be viewed as a form of impropriety and/or **public official misconduct**. Since that conversation, Defendant **HERNANDEZ'** conduct was scornful toward **MR. RUBINSTEIN**.

5.06 Thereafter on September 11, 1998, **MR. RUBINSTEIN** received a letter dated September 9, 1998 via facsimile from Defendant **HERNANDEZ** in regard to an unrelated matter. A true and correct copy is attached hereto as **Exhibit "A"** and incorporated herein by reference the same as if fully copied and set forth at length.

5.07 **MR. RUBINSTEIN** contends that Defendant **HERNANDEZ'** September 9, 1998 letter serves as retaliation on the part of Defendant **HERNANDEZ'** against him, a public employee, for addressing the Ryder issue on August 8, 1998.  As such, **MR. RUBINSTEIN** contends that this retaliation is violative of **Texas Government Code, Chapter 554, Section 554.002** which provides as follows:

> **"... A state agency or local government may not suspend or terminate the employment of or discriminate against a public employee who in good faith reports a violation of law to an appropriate law enforcement authority..." (Emphasis added).**

**B.**    **SECOND CAUSE OF ACTION**:  DEFENDANTS' VIOLATION OF THE TEXAS CONSTITUTION, ARTICLE 1, SECTION 8 AND CHAPTER 39 OF THE TEXAS PENAL CODE

5.08 As mentioned beforehand, prior to August 4, 1998, **BPOA** placed an ad in a local radio station which, in part, accused Defendants **HERNANDEZ** and **MCNAIR** of having secret financial dealings with the City of Brownsville.  As a result of **BPOA** placing the ad on the radio, on or about August 8, 1998, **MR. RUBINSTEIN** was asked by Defendant **HERNANDEZ** to retaliate against and/or discipline the **BPOA** members, who are employees of the City of Brownsville.  On March 30, 1998, Defendant **RICHARDS** had previously instructed **MR. RUBINSTEIN** to treat members of the Brownsville Police Department "like Hitler would".  **MR. RUBINSTEIN**, who is Jewish, refused to do so.

5.09 **MR. RUBINSTEIN** contends that the requests of Defendants **RICHARDS** and **HERNANDEZ** are violative of the oath he took as City Manager on March 4, 1997.  On March 4, 1997, **MR. RUBINSTEIN** solemnly affirmed that he would faithfully execute the duties of the City

8

Manager of the City of Brownsville, and would to the best of his ability preserve, protect, and defend the Constitution and laws of the United States and of the State of Texas.

5.10 **MR. RUBINSTEIN** further contends that the orders of Defendants **RICHARDS** and **HERNANDEZ** to retaliate against **BPOA** for expressing their rights are(were) illegal in that these Defendants were, in essence, asking **MR. RUBINSTEIN** to violate **Chapter 39, §§39.02 and §39.03 of the Texas Penal Code**. These orders are also violative of **BPOA's** freedom of speech rights protected under the **Texas Constitution, Article 1, Section 8**.

5.11    Chapter 39, §39.02 of the Texas Penal Code reads, in part, as follows:
**"... §39.02.  ABUSE OF OFFICIAL CAPACITY"**

(a)    A public servant commits an offense if, with **intent to obtain a benefit or with intent to harm or defraud another, he intentional or knowingly:**

(1)    **violates a law relating to the public servant's office or employment; ..."** (Emphasis added).

5.12    Chapter 39, §39.03 of the Texas Penal Code reads, in part, as follows:
**"...§39.03 OFFICIAL OPPRESSION**

(a)    **A public servant acting under color of his office or employment commits an offense if he**:

(1)    **intentionally subjects another to mistreatment** or to arrest, detention, search, seizure, dispossession, assessment, or lien that he knows is unlawful;

(2)    **intentionally denies or impedes another in the exercise or enjoyment of any right, privilege**, power, or immunity, **knowing his conduct is unlawful;..."** (Emphasis added).

5.13 Texas Constitution Art. 1, Section 8 reads, in part as follows:

**"... Sec. 8.  Every person shall be at liberty to speak, write or publish his opinions on any subject, being responsible for the abuse of that privilege; and no law shall ever be passed curtailing the liberty of speech or of the press..."** (Emphasis added).

9

**C.**     **THIRD CAUSE OF ACTION:** DEFENDANTS' VIOLATION OF SECTION 20 OF THE BROWNSVILLE CITY CHARTER

5.14     **MR. RUBINSTEIN** would further allege that Defendant **RICHARDS**

placed pressure on him to retaliate, reprimand, or terminate **BROWNSVILLE POLICE CHIEF**

**BEN REYNA**.

5.15     **MR. RUBINSTEIN** would also show this Court and Jury that the requests of

Defendants **HERNANDEZ** and **RICHARDS** as outlined in paragraph 5.08 above are also violative

of a sub-paragraph of **Section 20 of the Brownsville City Charter**.

5.16     **Section 20 of the Brownsville City Charter** states, in part, as follows:
**"... Neither the City Commission nor any of its members shall in any manner dictate the appointment or removal of any city administrative officers or employees whom the city manager or any of his subordinates are empowered to appoint ..." (Emphasis added)**

**D.**     **FOURTH CAUSE OF ACTION:** DEFENDANTS' VIOLATION OF THE TEXAS LOCAL GOVERNMENT CODE ANN., SECTION 143.086 (VERNON 1998)

5.17 Additionally, by requesting **MR. RUBINSTEIN** to discipline and/or retaliate against

members of the **BPOA**, Defendants **RICHARDS** and **HERNANDEZ** were, in essence, asking **MR.**

**RUBINSTEIN** to violate **Texas Local Government Code, Section 143.086**.

**Section 143.086 (e)** provides as follows:

**"...(e) Except as expressly provided by this section, the commission or the municipality's governing body may not restrict a fire fighter's or police officer's right to engage in a political activity..." (Emphasis added)**.

**E.**     **FIFTH CAUSE OF ACTION:** DEFENDANTS' VIOLATION OF SECTION 101, SUB-SECTION I, CHAPTER 1 OF THE CITY OF BROWNSVILLE PERSONNEL POLICIES MANUAL AND THE TEXAS CONSTITUTION, ARTICLE 1, SECTION 6

10

5.18 On March 30, 1998, during a telephone conversation, Defendant **RICHARDS** made a statement to **MR. RUBINSTEIN** which was offensive to **MR. RUBINSTEIN**. Defendants **RICHARDS** and **MR. RUBINSTEIN** were discussing various city issues, including a recent action taken by some Brownsville Police Officers. Defendant **RICHARDS** referred to the Brownsville Police Officers' action as **"Gestapo"** like, and suggested that **MR. RUBINSTEIN** treat the Brownsville Police Officers "like Hitler would", or words to that effect. **MR. RUBINSTEIN**, who is Jewish, immediately advised Defendant **RICHARDS** about how he **(i.e. MR. RUBINSTEIN)** felt about the comments made by Defendant **RICHARDS**. **MR. RUBINSTEIN** advised Defendant **RICHARDS** that he did not appreciate the comments and would never be a part of any city action likened to Hitler.

5.19 **MR. RUBINSTEIN** summarized the telephone conversation between him and Defendant **RICHARDS** in a letter dated March 30, 1998 to Former Mayor Henry Gonzalez. **MR. RUBINSTEIN** stated in this letter that he could not compromise what he believed in and would not under any circumstances. He reiterated that he would not be a party to any actions suggested by Defendant **RICHARDS**.

5.20 Thereafter, on September 11, 1998, Defendant **HERNANDEZ** sent a letter to **MR. RUBINSTEIN** via facsimile. (Please refer to the attached **Exhibit "A"**). This letter is dated September 9, 1998 and states therein it has been held for two (2) days to allow **MR. RUBINSTEIN** to respond to some comments made by Former Mayor Gonzalez in an executive session on September 8, 1998. Former Mayor Gonzalez' comment was not made directly to **MR. RUBINSTEIN** as was the March 30, 1998 comment made by Defendant **RICHARDS**. **MR. RUBINSTEIN** contends that the comment was also not made with malice or malcontent.

11

5.21 In the September 9, 1998 letter, Defendant **HERNANDEZ** severely attacked and criticized **MR. RUBINSTEIN** for not responding to the Former Mayor's comments and grossly questioned **MR. RUBINSTEIN's** religious beliefs. Defendant **HERNANDEZ** states in his letter that **"... You have allowed yourself to be compromised in what you believe in and created doubt as to your sincerity and sensibility to your religious beliefs...".** Defendant **HERNANDEZ** continues to criticize and threaten **MR. RUBINSTEIN** by stating **"... I seriously believe your credibility in the community will be seriously compromised if this issue becomes public..."** Defendant **HERNANDEZ** further accuses **MR. RUBINSTEIN** of applying a double standard in his religious beliefs.

5.22 Defendant **HERNANDEZ'** accusations of **MR. RUBINSTEIN** applying a double standard in his religious beliefs were echoed by Defendant **RICHARDS** in a memorandum to Defendant **HERNANDEZ** dated September 9, 1998. A true and correct copy of said memorandum dated September 9, 1998 is attached hereto as **Exhibit "B"** and incorporated herein by reference the same as if fully copied and set forth at length.

5.23 In his Memorandum dated September 9, 1998, Defendant **RICHARDS** states **"... It appears that there are two standards being applied by Mr. Rubinstein, one, which excludes the Mayor's comments, and one where mine became public by the Mayor and held to high criticism..."** (Please refer to the attached **Exhibit "B"**). **(Emphasis added).**

5.24 **MR. RUBINSTEIN** contends that the comments made by Defendants **RICHARDS** and **HERNANDEZ** amount to religious harassment insofar as **MR. RUBINSTEIN's** religious faith and/or beliefs are concerned. This type of harassment and/or religious harassment is in direct contravention of **Section 101, sub-section I of the Personnel Policies Manual of the City of**

Brownsville and **Article 1, Section 6 of the Texas Constitution**.

5.25 **Section 101, sub-section I of Chapter I of the Personnel Policies Manual** reads, in part, as follows:

> "**Harassment, retaliation, coercion, interference, or intimidation of any employee due to that employee's race, religion, color, national origin, sex, age, disability, or veteran status is strictly forbidden**". (Emphasis added)

5.26 It is quite clear that Defendants **RICHARDS** and **HERNANDEZ'** comments are a from of harassment that is **strictly forbidden** by the aforementioned section.  The September 9, 1998 letter and memorandum (**Exhibits "A" and "B"**) question the genuiness and sincerity of **MR. RUBINSTEIN's** religious faith and beliefs.  This is a matter about which Defendants **RICHARDS** and **HERNANDEZ**, as **MR. RUBINSTEIN's** employers or supervisors, should not be concerned.

5.27 **MR. RUBINSTEIN** further contends that the comments made by Defendants **RICHARDS** and **HERNANDEZ** violate his freedom to worship as guaranteed by the **Texas Constitution, Article 1, Section 6**, which provides, in part, as follows:

> "**Sec. 6.  All men have a natural and indefeasible right to worship Almighty God according to the dictates of their own consciences.  No man shall be compelled to attend, erect or support any  place of worship, or to maintain any ministry against his consent.  No human authority ought, in any case whatever, to control or interfere with the rights of conscience in matters of religion...**" (Emphasis added).

F.     <u>SIXTH CAUSE OF ACTION</u>:  **DEFENDANTS' VIOLATION OF SECTION 705 OF THE CITY OF BROWNSVILLE PERSONNEL POLICIES MANUAL**

5.28     **MR. RUBINSTEIN** would show the Court and Jury that on or about September 17, 1998, he made a grievance claim against Defendants **HERNANDEZ AND RICHARDS**.  This said grievance claim was made by **MR. RUBINSTEIN** pursuant to **Section 705 of the Personnel**

13

**Policies Manual of the City of Brownsville** and stemmed from the situations and/or complaints addressed in the foregoing paragraphs 5.01 through 5.24.

5.29 **Section 705 of the Personnel Policies Manual** reads, in part, as follows:
"... A grievance is a complaint about the terms of an **employee's employment or about the conditions under which he or she does the job**. Examples include complaints about the employee's physical environment, **the employee's treatment by their supervisor** or co-workers, and alleged unlawful conduct or discrimination..." (Emphasis added).

5.30 **MR. RUBINSTEIN** would also show the Court and Jury that the Personnel Policies Manual of the City of Brownsville clearly identifies the City Manager as an **"employee"**. **Section 102** of the manual reads, in part, as follows:

"... **All employees of the City of Brownsville** are either "exempt" or "non-exempt".

**"Exempt" employees** are those who are not subject to the overtime provisions of the Fair Labor Standards Act. **Examples of exempt employees are the City Manager**..." (Emphasis added).

5.31 Furthermore, **MR. RUBINSTEIN** is an **"employee"** and the City of Brownsville is an **"employer"** as those terms are defined under the Texas Labor Code, Chapter 21, Section 21.002 (7), (8), and (12), respectively. In said sections, an **"employee"** means an individual employed by an employer. An "employer" is defined as including a municipality.

5.32 **MR. RUBINSTEIN** would further show this Court and Jury that on or about September 24, 1998, Defendant **CITY OF BROWNSVILLE**, by and through its City Attorney, J.G. Warburton, concluded that the grievance procedure outlined in Section 705 of the Personnel Policies Manual did not apply to the relationship between the City Manager and the City Commission. Accordingly, Defendant **CITY OF BROWNSVILLE** denied **MR. RUBINSTEIN's** right to file a grievance against Defendants **HERNANDEZ** and **RICHARDS** and thus, violated **Section 705 of the City of Brownsville Personnel Policies Manual**.

14

**G.**   **SEVENTH CAUSE OF ACTION:** DEFENDANTS' VIOLATION OF CHAPTER 39, §39.02 OF THE TEXAS PENAL CODE

5.33 **MR. RUBINSTEIN** would show this Court and Jury that on or about August 5, 1998 he became aware of an agreement between Defendant **HERNANDEZ'** businesses, **Ernie's Wrecker Services** and/or **Express Towing** and Ryder/MLS by which said businesses were placed on Ryder/MLS' **"preferred services"** list.   This information was of immense concern to **MR. RUBINSTEIN** because Ryder/MLS provided vehicle maintenance services to the City of Brownsville's fleet under contract vehicle maintenance services to the City of Brownsville's fleet under a contract voted on and approved by the City Commissioners, including Defendant **HERNANDEZ**.

5.34 Thereafter, at the August 8, 1998 meeting at Defendant **HERNANDEZ'** office, **MR. RUBINSTEIN** pointed out to Defendant **HERNANDEZ** that Ernie's Wrecker Services being on Ryder's **"preferred services"** list could be challenged as a conflict of interest.   **MR. RUBINSTEIN** further pointed out to Defendant **HERNANDEZ** that such fact may be viewed as a form of impropriety and/or public official misconduct.

5.35 Once again, **MR. RUBINSTEIN** would show this Court and Jury that he received the letter dated September 9, 1998 **(Exhibit "A")** from Defendant **HERNANDEZ** in which Defendant **HERNANDEZ'**, a public servant, grossly questioned **MR. RUBINSTEIN's** religious beliefs and faith.   **MR. RUBINSTEIN** contends that such action on the part of Defendant **HERNANDEZ** amounts to retaliation against him (i.e. **MR. RUBINSTEIN**) for addressing or bringing forth

15

Defendant **HERNANDEZ'** benefit from his vote on the Contract for Municipal and Transit Fleet Management and Maintenance Services between the City of Brownsville and Ryder/MLS. **MR. RUBINSTEIN** further contends that such action and/or retaliation on the part of Defendant **HERNANDEZ** is violative of **Chapter 39, §39.02 of the Texas Penal Code**.

5.36    Chapter 39, §39.02 of the Texas Penal Code reads, in part, as follows:

"... **§39.02. ABUSE OF OFFICIAL CAPACITY**"

(a)    A public servant commits an offense if, with **intent to obtain a benefit or with intent to harm or defraud another, he intentional or knowingly**:

(1)    **violates a law relating to the public servant's office or employment; ...**" **(Emphasis added)**.

H.    <u>**EIGHTH CAUSE OF ACTION**</u>:    **DEFENDANTS' VIOLATION OF CHAPTER 39, §39.03 OF THE TEXAS PENAL CODE**

5.37    **MR. RUBINSTEIN** again points to the Court and Jury the letter dated September 9, 1998 **(Exhibit "A")** from Defendant **HERNANDEZ** in which Defendant **HERNANDEZ** grossly questioned **MR. RUBINSTEIN's** religious beliefs and faith. **MR. RUBINSTEIN** also points to the Court and Jury the memorandum dated September 9, 1998 from Defendant **RICHARDS**, a public servant, to Defendant **HERNANDEZ (Exhibit "B")** in which he (i.e. Defendant **RICHARDS)** echoed Defendant **HERNANDEZ** accusations of **MR. RUBINSTEIN** applying a double standard in his religious beliefs.

5.38    As mentioned beforehand in his memorandum dated September 9, 1998 **(EXHIBIT "B")**, Defendant **RICHARDS** states "... **it appears that there are two standards being applied by Mr. Rubinstein, one, which excludes the Mayor's comments, and one where mine became**

16

public by the Mayor and held to high criticism..."   (Emphasis added).

5.39    **MR. RUBINSTEIN** contends that such action on the part of Defendants

**HERNANDEZ** and **RICHARDS** amounts to mistreatment that they knew was unlawful and also

such action on these Defendants' part amounts to intentionally denying or impeding his exercise or

enjoyment of his right to and freedom to worship as he pleases knowing their conduct was unlawful.

**MR. RUBINSTEIN** further contends that such action on the part of Defendants **HERNANDEZ** and

**RICHARDS**, public servants acting under the color of their respective City Commissioner offices,

is violative of **Chapter 39, §39.03 of the Texas Penal Code**.

5.40    Chapter 39, §39.03 of the Texas Penal Code reads, in part, as follows:

**"...§39.03 OFFICIAL OPPRESSION**

(a)    **A public servant acting under color of his office or employment commits an offense if he:**

(1)    **intentionally subjects another to mistreatment** or to arrest, detention, search, seizure, dispossession, assessment, or lien that he knows is unlawful;

(2)    **intentionally denies or impedes another in the exercise or enjoyment of any right, privilege,** power, or immunity, **knowing his conduct is unlawful;..."** (Emphasis added).

I.    <u>**NINTH CAUSE OF ACTION**</u>:    **WRONGFUL TERMINATION FOR REFUSAL TO PERFORM AN "ILLEGAL ACT"**

5.41    **MR. RUBINSTEIN** would show the Court and Jury that **on or about October 5,**

**1999**, the City of Brownsville City Commission considered and voted to award a contract for the

purchase of twenty-seven (27) vehicles for various City departments.  This consideration and vote

took place at a public meeting of the City Commission of the City of Brownsville.   Among the said

17

twenty-seven (27) vehicles, a 4X4 SUV vehicle for the Emergency Medical Services **(EMS)** department was included.  This contract was awarded to Tipton Ford located in Brownsville, Cameron County, Texas.

5.42    Thereafter, on or about November 1-5, 1999, Defendants **HERNANDEZ, RICHARDS**, and **MCNAIR** traveled to New York City on behalf of the City of Brownsville City Commission in regard to City of Brownsville's business.  While in New York City, Defendants **HERNANDEZ, RICHARDS**, and **MCNAIR** discussed the purchase of the 4x4 SUV vehicle for the **EMS** department and the need to cancel this particular purchase.  **MR. RUBINSTEIN** contends that the discussion of City business by members of the City Commission in numbers greater than a quorum may be violative of the Texas Open Meetings Act.

5.43    Thereafter, **MR. RUBINSTEIN** is notified that Defendant **RICHARDS** wants to cancel, the 4x4 SUV vehicle for the **EMS** department and replace same with a fifteen (15) - passenger van.  Defendant **RICHARDS** represents to the Assistant City Manager that he (i.e. Defendant **RICHARDS**) has already spoken to Tipton Ford about this request and apparently Tipton Ford had not problem with the exchange.  Defendant **RICHARDS** also represents to the Assistant City Manager that the majority of the City Commission desires the cancellation to take place.

5.44    **MR. RUBINSTEIN** then contacts the Purchasing Agent for the City of Brownsville to discuss the propriety of the situation.  It was agreed that the only appropriate cause of action, short of City commission action in a public meeting, was not to cancel the contract for the purchase of the 4X4 SUV vehicle.  **MR. RUBINSTEIN** contends that the purchase order issued by the City of Brownsville to Tipton Ford was a binding contract, and he did not have unilateral authority to cancel same.

18

5.45    Thereafter, a memorandum is sent to Defendant **RICHARDS** outlining the reason why his request cannot be legally satisfied by **MR. RUBINSTEIN**.  Defendant **RICHARDS** is explained that while Tipton Ford might be willing to assist the City of Brownsville in canceling the order for the 4X4 SUV vehicle, the purchase of a large capacity van needed to be placed for re-binding.  Defendant **RICHARDS** was also explained that there was no guarantee that Tipton Ford would be the lowest or successful bidder.  Defendant **RICHARDS** was further explained that any substitutions at this point, without having advertised for bids for the fifteen (15) passenger vehicle would be construed as circumventing the City of Brownsville's bid procedure.  It was further explained to Defendant **RICHARDS** that while Tipton Ford may be willing to swap the 4X4 SUV vehicle for a large capacity van, the fact remained that the City of Brownsville did not advertise for, nor solicited bids for two (2) large-capacity vans.

5.46    Thereafter, on or about November 17, 1999, **MR. RUBINSTEIN** is instructed to do what Defendant **RICHARDS** wants to do (i.e. cancel the 4X4 SUV vehicle contract and replace it with a fifteen (15) - passenger van).  **MR. RUBINSTEIN** did not believe he had the legal right to do as he was instructed.  **MR. RUBINSTEIN** explained that he believed such action was illegal because it would be an attempt to circumvent the purchasing laws of the State of Texas the City of Brownsville.

5.47    Thereafter, on or about November 18, 1999, the City Attorney, J.G. Warburton approached **MR. RUBINSTEIN** and tells him that the Mayor has asked him to tell **MR. RUBINSTEIN** to cancel the contract for 4X4 SUV vehicle.  **MR. RUBINSTEIN** is further told that the City Commission wants the item to go away quietly.  **MR. RUBINSTEIN** reiterated to Mr. Warburton that he will only cancel the contract if the item is placed on the City's Council Public

19

Agenda for cancellation and the City Commission authorizes **MR. RUBINSTEIN** to cancel the contract.

5.48 Later on November 18, 1999, Mr. Warburton approaches **MR. RUBINSTEIN** with a draft, a letter to Tipton Ford canceling the 4X4 SUV vehicle to be signed by **MR. RUBINSTEIN**. **MR. RUBINSTEIN** is told that the letter is what "our bosses" want **MR. RUBINSTEIN** to use. **MR. RUBINSTEIN** tells Mr. Warburton that he (i.e. **MR. RUBINSTEIN**) will sign the letter once the City Commission authorize the signature in an open session of a public meeting. **MR. RUBINSTEIN** attempts to give the draft of the letter back to Mr. Warburton but Mr. Warburton tells **MR. RUBINSTEIN** to keep and consider the letter.

5.49 Thereafter, an item is placed on the Agenda of the City of Brownsville City Commission to discuss the duties of the City Manager. The Public Meeting of the City Commission was to take place on Tuesday, November 23, 1999 at 3:45 p.m. and said item was to be discussed in Executive Session. **MR. RUBINSTEIN** contends that the placing of said item on the agenda amounts to retaliation against him on the part of the Defendants for his refusal to cancel the contract for the 4X4 SUV vehicle.

5.50 **MR. RUBINSTEIN** would show this Court and Jury that throughout the duration of the 4x4 SUV vehicle contract cancellation issue, he had reported the information to Chief of Police Ben Reyna. **MR. RUBINSTEIN** was keeping Chief Reyna informed of the events as same were happening.

5.51 During the November 23, 1999 Executive Session of the City Commission public meeting, Defendant **HERNANDEZ** tells **MR. RUBINSTEIN** that the City Commission does not want the 4X4 SUV vehicle and that he would expect more cooperation from **MR. RUBINSTEIN**

20

on that issue.  Defendant **HERNANDEZ** further tells **MR. RUBINSTEIN** that he (i.e. Defendant

**HERNANDEZ**) does not want to explain **"... to the world"** in open session why he wants to cancel

the contract.  **MR. RUBINSTEIN** tells Defendant **HERNANDEZ** that the cancellation must be in

open session.

5.52    Thereafter, during the November 30, 1999 City Commission public meeting, the

contract for the 4X4 SUV vehicle is canceled on a 4-1 vote.  Immediately after the meeting,

Defendant **HERNANDEZ** follows **MR. RUBINSTEIN** to his office and threatens **MR.**

**RUBINSTEIN** to get even because of the way the 4X4 SUV vehicle item was handled and makes

that a promise.

5.53    The following week on December 7, 1999, **MR. RUBINSTEIN** was placed on a

thirty (30) day leave of absence during a City Commission public meeting.  Thereafter, **MR.**

**RUBINSTEIN** was terminated from his position as City Manager on January 6, 2000.

       **J.**     **TENTH CAUSE OF ACTION**:  **DEFENDANTS' VIOLATION OF THE TEXAS WHISTLEBLOWERS ACT (CHAPTER 554 OF THE TEXAS GOVERNMENT CODE)**

5.54    Based upon the aforementioned facts, **MR. RUBINSTEIN** was terminated from his

position as City Manager of the City of Brownsville for  refusing to  perform an "illegal act" or at

least when the "laws of this state and the United States which carry criminal penalties" are

implicated.

5.55    Based on the aforementioned, **MR. RUBINSTEIN** was terminated for reporting all

the aforementioned to the proper Texas law enforcement agency, i.e. the Brownsville Police

Department.

21

5.56  Based upon the aforementioned facts the Defendants have violated Chapter 554 of the Texas Government Code (hereinafter referred to as the (Texas Whistleblowers Act) in that **MR. RUBINSTEIN** was terminated for in good faith, as a public employee, reporting violations of law of other public employees, i.e. Defendants **HERNANDEZ** and **RICHARDS**, to an appropriate law enforcement authority, i.e. the City of Brownsville Police Department.  Further, **MR. RUBINSTEIN** in good faith, believed the law enforcement authority, i.e. the City of Brownsville Police Department was authorized to regulate under or enforce the law alleged to be violated int he report or investigate or prosecute a violation of criminal law.

5.57    Further, **MR. RUBINSTEIN** alleges in each of 20 or more calendar weeks in the calendar year in which this suit is filed the City of Brownsville, i.e. the local government entity,  has employed more than 500 employees.

### K.    <u>ELEVENTH CAUSE OF ACTION</u>:  DEFENDANTS' VIOLATIONS OF THE TEXAS CONSTITUTION

5.58    Based upon the aforementioned facts, **MR. RUBINSTEIN** contends that he was terminated in violation of the Freedom of Religion clause of the Texas Constitution ( Tex.  Const. Art. 1 section 6) which states:

> All men have a natural and indefeasible right to worship Almighty God according to the dictates of their own consciences. No man shall be compelled to attend, erect or support any place of worship, or to maintain any ministry against his consent. **No human authority ought, in any case whatever, to control or interfere with the rights of conscience in matters of religion, and no preference shall ever be given by law to any religious society or mode of worship.** But it shall be the duty of the Legislature to pass such laws as may be necessary to protect equally every religious denomination in the peaceable enjoyment of its own mode of public worship. (Emphasis

22

added)

5.59 Further, **MR. RUBINSTEIN** was terminated due to his relationship with the former Mayor for the City of Brownsville, Henry Gonzalez, in violation of the Texas Constitution's Freedom of Association Clause.

L.  **THIRTEENTH CAUSE OF ACTION: DEFENDANTS' VIOLATION OF THE FEDERAL CIVIL RIGHTS ACT OF 1964 AND 42 U.S.C. §1981, §1983 §2000bb-1, §2000e-3(b), and §2000-2(a)(1).**

5.60   Based upon the aforementioned facts, Plaintiff contends he was terminated in violation of the Federal Civil Rights Act of 1964 as well as in violation of 42 U.S.C. §1981, §1983 and §2000bb-1 §2000e-3(b), and  §20003-2(a)(1).  Plaintiff alleges that Defendants deprived him of  his rights, privileges or immunities secured by the United States Constitution by substantially burdening Plaintiff's exercise of his religion and thereby discriminating against Plaintiff based upon his religious beliefs.

M.  **THIRTEENTH CAUSE OF ACTION: DEFENDANTS' VIOLATION OF 42 U.S.C. §2000e-3(a).**

5.61   Based upon the aforementioned facts, Plaintiff contends he was terminated in violation of 42 U.S.C. §2000e-3(a) in that Plaintiff alleges that Defendants discriminated against him for making a charge or participating in an investigation pursuant to the Civil Rights Act of 1964.

N.  **FOURTEENTH CAUSE OF ACTION:  DEFENDANTS' VIOLATION OF THE TEXAS OPEN MEETINGS ACT**

5.62   Based upon the aforementioned facts, **MR. RUBINSTEIN** was terminated as City

Manager for the City of Brownsville in violation of **Chapter 551 of the Texas Government Code (hereinafter Texas Open Meetings Act)** in that Defendants held a meeting without giving written notice of the date, hour, place and subject of the meeting and that during said meeting public business or public policy over which the Defendants have supervision or control was discussed or considered or during which the Defendants in substantial effect took formal action and that such matters deliberated concerned issues within the jurisdiction of the governing body, i.e. the Defendants, or concerned any other public business.

5.63    In the alternative, the violations of the Texas Open Meetings Act committed by the Defendants were intentional in that the Defendants knowingly conspired to circumvent Chapter 551 of the Texas Government Code by meeting in numbers less than a quorum for the purpose of secret deliberations in violation of the Texas Government Code, Chapter 551.

5.64    Further, in the alternative each Defendant violated §551.145 in that each Defendant participated in a closed meeting of the governmental body knowing that a certified agenda of the closed meeting was not being kept or a tape recording was made of the meeting.

5.65    Further, **MR. RUBINSTEIN** would show this Court and this Jury that his access to E-Mail and Internet was locked out on orders of the City Attorney, who in turn was ordered to lock out **MR. RUBINSTEIN** prior to **MR. RUBINSTEIN's** dismissal on January 6, 2000.

## VI.

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

6.01    Based upon the aforementioned facts, **MR. RUBINSTEIN** was terminated as City Manager for the City of Brownsville as the Defendants acted intentionally or recklessly, further the Defendants' conduct  was extreme and outrageous and the Defendants' actions caused plaintiff

emotional distress and lastly the distress was severe [Twyman v. Twyman, 855 S.W.2d 619, 621 (Tex. 1993)--citing Restatement (Second) of Torts § 46 (1965)].

## VII.

## DAMAGES

7.01 Based upon the aforementioned facts, **MR. RUBINSTEIN** was terminated as City Manager for the City of Brownsville and has and/or will incur the following damages:

### A.     LOST WAGES AND BENEFITS

Since Plaintiff was terminated from his position as City Manager for the City of Brownsville, Plaintiff is entitled to recover any lost wages due and owing due to his wrongful termination. Further, Plaintiff is owed any benefits (including but not limited to Pension Benefits, Retirement Plans, "Texas Municipal Retirement System" that would have accrued during the period of time for which he was wrongfully discharged.

### B.     PAST AND FUTURE MENTAL ANGUISH

The actions of the Defendants have caused **MR. RUBINSTEIN** to suffer severe mental anguish and emotional trauma, and is therefore, entitled to recover money damages from the Defendants, jointly and severally, for such mental anguish based upon the acts of the Defendants. Also, **MR. RUBINSTEIN** will in all reasonable probability experience and suffer mental anguish and emotional distress in the future, and seeks to recover these damages from the Defendants, jointly and severally, as well.

### C.     DAMAGE TO REPUTATION

The actions of the Defendants have damaged **MR. RUBINSTEIN's** reputation in the community and is, therefore, entitled to recover money damages for such damage to his reputation

based upon the acts of the Defendants.

### D. <u>EXEMPLARY DAMAGES</u>

**MR. RUBINSTEIN** will further show the Court and Jury that all of the foregoing conduct of the Defendants constituted malice in that such conduct amounted to ill will, bad or evil motive, and/or gross negligence to the rights of Plaintiff as to amount a willful, wanton and malicious acts. As such, Plaintiff seeks exemplary and/or punitive damages against the Defendants, jointly and severally, for such conduct in an amount to be determined by the trier of fact.

Further, the actions taken by the Defendants were intentional acts which resulted in the intentional discrimination in the Plaintiff's employment in violation of 42 U.S.C. §1981a. Such violation entitles Plaintiff to punitive damages as well..

### VIII.

### <u>PUNITIVE DAMAGES UNDER THE TEXAS WHISTLEBLOWERS ACT</u>

8.01 Punitive damages are available in a Whistleblower Act action. There is no requirement that the plaintiff prove malice or evil intent on the part of a "policy-making official" of the agency. The Whistleblower Act protects against pervasive retaliation by an entire institution as well as acts attributable to a single official. **City of San Antonio v. Heim, 932 S.W.2d 287, 293-294 (Tex. App.--Austin 1996, den.)**

### IX.

### <u>ATTORNEY'S FEES</u>

9.01     As a further result of Defendants' actions and practices, **MR. RUBINSTEIN** has been compelled to engage the services of the attorney whose name is subscribed to this pleading and has agreed to pay attorneys' fees for legal services rendered and to be rendered in the preparation and

trial of this cause.  As such, **MR. RUBINSTEIN** seeks to recover reasonable attorney's fees in relation to the work performed in this cause.

## X.

### NOTICE OF CLAIM WAS GIVEN TO THE DEFENDANTS

10.01   **MR. RUBINSTEIN** would show this Court and Jury that he gave notice of his claims to the Defendants on **June 22, 2000**.  This notice was issued to the Defendants pursuant to **Article II, Section 8 of the Brownsville Code (City Charter) and/or Ordinance No. 93-1270 (Proposition #1)**.  A true and correct copy of said Notice of Claim is attached hereto as **Exhibit "C"**, and incorporated by reference the same as if fully copied and set forth at length.

### PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff **CARLOS RUBINSTEIN**, respectfully prays that Defendants be cited to appear and answer, that a trial by jury be had on the merits, and that, at the conclusion of said trial, he have the following:

1.   Judgment against Defendants, jointly and severally, for actual damages in a sum in excess of the minimum jurisdictional limits of this Court;

2.   Judgment against Defendants for pre and post judgment interest;

3.   Judgment against Defendants for costs of suit including reasonable attorney's fees;

4.   Judgment against Defendants for exemplary damages in a sum determined by the trier of fact;

5.   Such other and further relief to which Plaintiff may  be justly entitled including but not limited  to damages within the jurisdictional limits of this court, together with  pre-judgment and post-judgment interest as allowed by law.

Respectfully submitted,

ED MCANINCH
Federal Id No. 4892
State Bar No. 13325050
440 Louisiana, Suite 2300
Houston, Texas 77002
VIA TELEPHONE NO. (713) 223-1000
VIA FACSIMILE NO. (713) 222-6903

**ATTORNEY FOR PLAINTIFF CARLOS RUBINSTEIN**

CERTIFICATE OF SERVICE

I certify that a true and correct copy of this Complaint was sent via certified mail return receipt requested to Defendants attorney in charge on this the 1st day of February, 2001.

Ed McAninch