27

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**



**COPY**

United States District Court
Southern District of Texas
FILED

MAR 1 6 2001

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| CARLOS RUBINSTEIN | & | |
| | & | |
| VS. | & | |
| | & | |
| THE CITY OF BROWNSVILLE, TEXAS, | & | CIVIL ACTION NO. B-00-169 |
| ERNIE HERNANDEZ, JR., CARLTON J. | & | |
| "BUD" RICHARDS, HARRY E. MCNAIR, | & | DEMAND FOR JURY |
| JR., IN THEIR INDIVIDUAL | & | |
| CAPACITIES AND OFFICIAL | & | |
| CAPACITIES AS CITY COMMISSIONERS | & | |
| FOR THE CITY OF BROWNSVILLE | & | |

## PLAINTIFF'S THIRD AMENDED ORIGINAL COMPLAINT

**TO THE HONORABLE JUDGE OF SAID COURT:**

COMES NOW, **CARLOS RUBINSTEIN**, Plaintiff in the above-styled and numbered civil

action, (hereinafter also referred to as **"MR. RUBINSTEIN"**), complaining of **THE CITY OF**

**BROWNSVILLE, TEXAS** (herein after referred to as **"Defendant CITY OF BROWNSVILLE"**,

**Ernie Hernandez, Jr.** (hereinafter referred to as **"Defendant HERNANDEZ"**), **Carlton J. "Bud"**

**Richards** (hereinafter referred to as **"Defendant RICHARDS"**), **Harry E. McNair, Jr.** (hereinafter

referred to as **"Defendant MCNAIR"**), Individually and in their Official Capacities as Members

of the City Commission of Brownsville, Texas, and for cause of action would respectfully show this

Honorable Court and Jury the following:

### I.

1.01 This Court has obtained jurisdiction over this cause of action by his withdrawal of

Plaintiff's Motion for Remand.

## II.

## CAUSES OF ACTION AND/OR CLAIMS MADE BY PLAINTIFF

2.01 This is a suit for damages and/or injuries sustained by **MR. RUBINSTEIN** in which

he seeks to recover damages and reasonable attorney's fees against Defendants, jointly and severally,

for unlawfully and wrongfully terminating him as City Manager for the City of Brownsville,

Cameron County, Texas, arising out of the following conduct of the Defendants:

(1)     Wrongful termination of Plaintiff from his position as City Manager of the City of Brownsville **(in violation of Freedom of Religion clause of the United States Constitution and the Freedom of Association Clause of the United States Constitution, and in violation of the Freedom of Religion clause of the Texas Constitution (Tex. Const. Art. 1 section 6) and the Texas Constitution's Freedom of Association Clause);**

(2)     Retaliation against Plaintiff **in violation of the Texas Whistleblowers Act, Chapter 554 of the Texas Government Code, and *Sabine Pilot Service, Inc. v. Hauck,*** 687 S.W. 2d 733 (Tex. 1985);

(3)     Wrongfully terminating Plaintiff from his position as City Manager of the City of Brownsville **(in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000(e), et. seq., 2000(e)-2(a)(1), 2000(e)-2(a)(2), specifically those sections related to religious and race discrimination; 42 U.S.C. §1983, and 42 U.S.C. §1981;**

**(4)**     Defendant City of Brownsville's violation of Plaintiff's right to due process through Defendant's deprivation of liberty interests by maligning Carlos Rubinstein's good name in violation of due process of law under the Fourteenth (14th) Amendment to the United States Constitution**; and**

(5)     Intentional infliction of emotional distress.

2

## III.

## PARTIES TO THIS LAWSUIT

3.01   Plaintiff **CARLOS RUBINSTEIN** is a natural person residing in Brownsville, Cameron County, Texas.   **MR. RUBINSTEIN** is the former City Manager of the City of Brownsville, Texas.  **MR. RUBINSTEIN** is Jewish.

.   3.02  Defendant **CITY OF BROWNSVILLE** is a municipal corporation within the State of Texas who has been duly served with citation and has made an appearance herein.  As such, service of citation is not necessary at this time.

3.03   Defendant **ERNIE HERNANDEZ, JR.**  is a  local elected official who serves as Commissioner of the **CITY OF BROWNSVILLE,** Place 2.  This Defendant was duly served with citation and has made an appearance herein.  As such, service of citation is not necessary at this time.

3.04  Defendant **CARLTON J. "BUD" RICHARDS** is a local elected official who serves as Commissioner of the **CITY OF BROWNSVILLE,** Place 1.  This Defendant was duly served with citation and has made an appearance herein.  As such, service of citation is not necessary at this time.

3.05  Defendant **HARRY E. MCNAIR, JR.**  is a local elected official who serves as Commissioner of the **CITY OF BROWNSVILLE**, Place 3.  This Defendant  was duly served with citation, and has made an appearance herein.  As such, service of citation is not necessary at this time.

# IV.

## FACTUAL CONTENTIONS

4.01 Plaintiff was appointed and/or hired as City Manager of the City of Brownsville, Texas on **March 1, 1997.** After Plaintiff was hired, he began to faithfully execute his duties and responsibilities as City Manager. Plaintiff worked efficiently and fulfilled all his duties and responsibilities. Up until January 6, 2000, Plaintiff served under two (2) mayors, to wit: (1) Henry Gonzalez; and (2) Blanca S. Vela.

4.02 Plaintiff would show the Court and Jury that prior to **August 4, 1998**, the Brownsville Police Officers' Association (hereinafter referred to as **"BPOA"**) placed an ad in a local radio station. This ad, in part, included accusations against Defendants **HERNANDEZ** and **MCNAIR** of having secret financial dealings with the City of Brownsville which violated state laws and City Charter provisions. On August 4, 1998, **MR. RUBINSTEIN** held a press conference to address the said ad. **MR. RUBINSTEIN** held the press conference after receiving intense and severe threats of termination of his employment by Defendants **HERNANDEZ** and **MCNAIR**. Defendant **HERNANDEZ** implied that he had the votes to terminate **MR. RUBINSTEIN's** employment when he said, **"If you do not defend me in the press conference, you will have to deal with me"**. Defendant **MCNAIR** also threatened **MR. RUBINSTEIN** that if he (i.e. **MR. RUBINSTEIN**) did not defend Defendants **HERNANDEZ** and **MCNAIR** against the accusations made by **BPOA** of impropriety and **"secret dealings"** in the press conference, that Defendant **MCNAIR** would place an item on the City Commission Agenda, calling for a vote of **"no confidence"** against **MR. RUBINSTEIN**. Defendant **MCNAIR** also demanded that Police Chief Ben Reyna attend this press conference in full dress uniform to add credibility to the statements to be made by **MR. RUBINSTEIN**. Plaintiff would show that, on this point, Police Chief Ben Reyna objected and/or

4

expressed concern about being a part of this said press conference because it would compromise his standing, objectivity, and stature as a law enforcement official.

4.03 In the press conference, **MR. RUBINSTEIN** explained to the public that the City of Brownsville and the Brownsville Police Department were not responsible for the radio ad. **MR. RUBINSTEIN** made several statements under threats of termination that he did not agree with or feel were correct or accurate. One such statement was that to the best of his knowledge and belief neither the City of Brownsville nor Defendants **HERNANDEZ** or **MCNAIR** had been involved in secret financial dealings. **MR. RUBINSTEIN** further explained that the City Attorney had reviewed Defendant **HERNANDEZ'** wrecker services and had opined that nothing improper had occurred or taken place. **MR. RUBINSTEIN** also explained that the City Attorney also reviewed the facts surrounding the placement of vending machines which at the time were owned by Toms Foods, a McNair Company, on city of Brownsville property, and had opined that no violations of law had taken place. The City Attorney said his opinion was based on a review of State Law and City Charter Codes. **MR. RUBINSTEIN** also stated that both he and Police Chief Ben Reyna had reviewed the City Attorney's legal opinions. As such, **MR. RUBINSTEIN**, based on the City Attorney's opinion, concluded that Defendants **HERNANDEZ** and **MCNAIR** had not acted in an improper manner and no conflict of interest or violation of state laws or city charter provisions was identified.

4.04 Thereafter, on **August 5, 1998,** the Chief of Police, Ben Reyna contacted **MR. RUBINSTEIN** to advise him that one of the Defendant **HERNANDEZ'** wrecker businesses had towed a vehicle belonging to the Brownsville Police Department on that day and had been towing vehicles in the past for Ryder/MLS. This action on the part of Ernie's Wrecker Services suggested or gave the appearance of impropriety and directly contradicted the comments made by **MR. RUBINSTEIN** in the aforementioned press conference. Chief Reyna reminded **MR.**

RUBINSTEIN that he (i.e. MR. RUBINSTEIN) had told the public, during the August 4, 1998 press conference, that Defendant HERNANDEZ had no secret dealings with the City of Brownsville. It was during this telephone conversation that MR. RUBINSTEIN became aware of the agreement between Defendant HERNANDEZ' businesses, Ernie's Wrecker Services and/or Express Towing, and Ryder/MLS. Ernie's Wrecker Services was placed on Ryder's "preferred services" list. This information was of immense concern to MR. RUBINSTEIN because Ryder/MLS provided vehicle maintenance services to the City of Brownsville's fleet under contract previously voted on and approved by the City Commissioners, including Defendant HERNANDEZ.

4.05 On August 7, 1998, Defendant HERNANDEZ contacted MR. RUBINSTEIN and ordered a meeting for the following day, Saturday, August 8, 1998. The purpose of this meeting, as per Defendant HERNANDEZ, was to discuss "city business".

4.06 On August 8, 1998 at approximately 12:30 p.m., MR. RUBINSTEIN met with Defendant HERNANDEZ at Defendant HERNANDEZ' office. Shortly, thereafter, Defendant MCNAIR arrived at Defendant HERNANDEZ' office unknown to MR. RUBINSTEIN that he (i.e. Defendant MCNAIR) was also invited to attend said meeting. In the meeting, MR. RUBINSTEIN was severely criticized by Defendants HERNANDEZ and MCNAIR for not being assertive enough. Defendants HERNANDEZ and MCNAIR continuously expressed their dissatisfaction with MR. RUBINSTEIN's press conference. They wanted more punitive measures to be taken against BPOA and wanted strong political support from MR. RUBINSTEIN, as City Manager. MR RUBINSTEIN was asked by Defendant HERNANDEZ to retaliate against and/or discipline the BPOA executive committee. Members of this executive committee consisted of Police Officers Ray

6

Rosas, Jr., Kirk Massey, Robert Tyler, and Chris Breeden.  Defendant **MCNAIR** wanted **MR. RUBINSTEIN** to specifically retaliate against and/or discipline and/or terminate Police Officer Kirk Massey.

4.07  On March 30, 1998, during a telephone conversation, Defendant **RICHARDS** made a statement to **MR. RUBINSTEIN** which was offensive to **MR. RUBINSTEIN**.  Defendants **RICHARDS** and **MR. RUBINSTEIN** were discussing various city issues, including a recent action taken by some Brownsville Police Officers.  Defendant **RICHARDS** referred to the Brownsville Police Officers' action as **"Gestapo"** like, and suggested that **MR. RUBINSTEIN** treat the Brownsville Police Officers **"like Hitler would"** or words to that effect.  **MR. RUBINSTEIN**, who is Jewish, immediately advised Defendant **RICHARDS** about how he **(i.e. MR. RUBINSTEIN)** felt about the comments made by Defendant **RICHARDS**.  **MR. RUBINSTEIN** advised Defendant **RICHARDS** that he did not appreciate the comments and would never be a part of any city action likened to Hitler.

4.08  **MR. RUBINSTEIN** summarized the telephone conversation between him and Defendant **RICHARDS** in a letter dated March 30, 1998 to Former Mayor Henry Gonzalez, as presiding officer of the City Commission.  **MR. RUBINSTEIN** stated in this letter that he could not and would not under any circumstances compromise what he believed in.  He reiterated that he would not be a party to any actions suggested by Defendant **RICHARDS**.

4.09  At the **August 8, 1998** meeting, **MR. RUBINSTEIN** reminded Defendant **HERNANDEZ** about Ernie's Wrecker Services being on Ryder's **"preferred services"** list.  **MR. RUBINSTEIN** pointed out to Defendant **HERNANDEZ** that Ernie's Wrecker Services being on

7

Ryder's **"preferred services"** list could be challenged as a conflict of interest. This may be viewed as a form of impropriety and/or **public official misconduct**. Since that conversation, Defendant **HERNANDEZ'** conduct was scornful toward **MR. RUBINSTEIN**.

4.10 Thereafter on **September 11, 1998, MR. RUBINSTEIN** received a letter dated September 9, 1998 via facsimile from Defendant **HERNANDEZ** in regard to an unrelated matter. A true and correct copy of said September 9, 1998 letter attached hereto as **Exhibit "A"** and incorporated herein by reference the same as if fully copied and set forth at length. This letter is dated September 9, 1998 and states therein it has been held for two (2) days to allow **MR. RUBINSTEIN** to respond to some comments made by Former Mayor Gonzalez in an executive session on September 8, 1998. Former Mayor Gonzalez' comment was made to Defendant **MCNAIR**. It was not made directly to **MR. RUBINSTEIN** as was the March 30, 1998 comment made by Defendant **RICHARDS**. **MR. RUBINSTEIN** contends that the comment was also not made with malice or malcontent. Furthermore, unlike Defendant **RICHARDS** Former Mayor Gonzalez immediately apologized to **MR. RUBINSTEIN**, privately and publicly, for making said comments.

4.11 In the September 9, 1998 letter, Defendant **HERNANDEZ** severely attacked and criticized **MR. RUBINSTEIN** for not responding to the Former Mayor's comments and grossly questioned **MR. RUBINSTEIN's** religious beliefs. Defendant **HERNANDEZ** states in his letter that "... **You have allowed yourself to be compromised in what you believe in and created doubt as to your sincerity and sensibility to your religious beliefs...**". Defendant **HERNANDEZ** continues to criticize and threaten **MR. RUBINSTEIN** by stating "... **I seriously believe your**

**credibility in the community will be seriously compromised if this issue becomes public..."** Defendant **HERNANDEZ** further accuses **MR. RUBINSTEIN** of applying a double standard in his religious beliefs.

4.12 Defendant **HERNANDEZ'** accusations of **MR. RUBINSTEIN** applying a double standard in his religious beliefs were echoed by Defendant **RICHARDS** in a memorandum to Defendant **HERNANDEZ** dated September 9, 1998. A true and correct copy of said **RICHARDS'** memorandum dated September 9, 1998 is attached hereto as **Exhibit "B"** and incorporated herein by reference the same as if fully copied and set forth at length.

4.13 In his Memorandum dated September 9, 1998, Defendant **RICHARDS** states **"... It appears that there are two standards being applied by Mr. Rubinstein, one, which excludes the Mayor's comments, and one where mine became public by the Mayor and held to high criticism..."** (Please refer to the attached **Exhibit "B"**). **(Emphasis added).**

4.14    **MR. RUBINSTEIN** would show the Court and Jury that on or about **September 17, 1998**, he made a grievance claim against Defendants **HERNANDEZ AND RICHARDS**. This said grievance claim was made by **MR. RUBINSTEIN** pursuant to **Section 705 of the Personnel Policies Manual of the City of Brownsville** and stemmed from the situations and/or complaints addressed in the foregoing paragraphs.

4.15    **Section 705 of the Personnel Policies Manual** reads, in part, as follows:
"... A grievance is a complaint about the terms of an **employee's employment or about the conditions under which he or she does the job.** Examples include complaints about the employee's physical environment, **the employee's treatment by their supervisor** or co-workers, and alleged unlawful conduct or discrimination..." (Emphasis added).

9

4.16    **MR. RUBINSTEIN** would also show the Court and Jury that the Personnel Policies Manual of the City of Brownsville clearly identifies the City Manager as an **"employee"**. **Section 102** of the manual reads, in part, as follows:

"... **All employees of the City of Brownsville** are either **"exempt"** or **"non-exempt"**.

**"Exempt" employees** are those who are not subject to the overtime provisions of the Fair Labor Standards Act. **Examples of exempt employees are the City Manager**..." (Emphasis added).

4.17    **MR. RUBINSTEIN** contends that he is an **"employee"** and the City of Brownsville is an **"employer"** as those terms are defined under the Texas Labor Code, Chapter 21, Section 21.002 (7), (8), and (12), respectively.  In said sections, an **"employee"** means an individual employed by an employer.  An **"employer"** is defined as including a municipality.

4.18    **MR. RUBINSTEIN** would further show this Court and Jury that **on or about September 24, 1998**, Defendant **CITY OF BROWNSVILLE**, by and through its City Attorney, J.G. Warburton, concluded that the grievance procedure outlined in Section 705 of the Personnel Policies Manual did not apply to the relationship between the City Manager and the City Commission.  Accordingly, Defendant **CITY OF BROWNSVILLE** denied **MR. RUBINSTEIN's** right to file a grievance against Defendants **HERNANDEZ** and **RICHARDS**.  **MR. RUBINSTEIN** contends this denial violated **Section 705 of the City of Brownsville Personnel Policies Manual**, as well as his civil rights.  Plaintiff contends that the City of Brownsville (i.e. his employer) had no formal grievance procedure applicable to him.

4.19    **MR. RUBINSTEIN** would show the Court and Jury that **on or about October 5, 1999**, the City of Brownsville City Commission considered and voted to award a contract for the purchase of twenty-seven (27) vehicles for various City departments.  This consideration and vote

10

took place at a public meeting of the City Commission of the City of Brownsville.   Among the said twenty-seven (27) vehicles, a 4X4 SUV vehicle for the Emergency Medical Services **(EMS)** department was included.   This contract was awarded to Tipton Ford located in Brownsville, Cameron County, Texas.

4.20    Thereafter, **on or about November 1-5, 1999,** Defendants **HERNANDEZ, RICHARDS,** and **MCNAIR** traveled to New York City on behalf of the City of Brownsville City Commission in regard to City of Brownsville's business.   While in New York City, Defendants **HERNANDEZ, RICHARDS,** and **MCNAIR** discussed the purchase of the 4x4 SUV vehicle for the **EMS** department and the need to cancel this particular purchase.   **MR. RUBINSTEIN** contends that the discussion of City business by members of the City Commission in numbers equal to or less than a quorum (with the intent of circumventing the Open Meetings Act) may be violative of the Texas Open Meetings Act.

4.21    Thereafter, **MR. RUBINSTEIN** is notified that Defendant **RICHARDS** wants to cancel, the 4x4 SUV vehicle for the **EMS** department and replace same with a fifteen (15) - passenger van.   Defendant **RICHARDS** represents to Assistant City Manager, Ivan Welker, that he (i.e. Defendant **RICHARDS**) has already spoken to Tipton Ford about this request and apparently Tipton Ford had not problem with the exchange.   Defendant **RICHARDS** also represented to Mr. Welker  that the majority of the City Commission desired the cancellation to take place.

4.22    **MR. RUBINSTEIN** then contacted the Purchasing Agent for the City of Brownsville to discuss the propriety of the situation.   It was agreed that the only appropriate cause of action, short of City Commission action in a public meeting, was **not to cancel** the contract for the purchase of the 4X4 SUV vehicle.   **MR. RUBINSTEIN** contends that the purchase order issued by the City of

CMPDF - www.tecks.com

Brownsville to Tipton Ford was a binding contract, and he did not have unilateral authority to cancel same. **MR. RUBINSTEIN** believed (and still does) that if the said purchase order was canceled and any substitution allowed to take place, without having advertised for bids, such action could be construed as circumventing the City of Brownsville's and local government code bid procedure.

4.23   Thereafter, a memorandum was sent to Defendant **RICHARDS** outlining the reason why his request cannot be legally satisfied. This memorandum was sent to Defendant **RICHARDS** at the directive of **MR. RUBINSTEIN**. Defendant **RICHARDS** is explained that while Tipton Ford might be willing to assist the City of Brownsville in canceling the order for the 4X4 SUV vehicle, the purchase of a large capacity van needed to be placed for re-binding. Defendant **RICHARDS** was also explained that there was no guarantee that Tipton Ford would be the lowest or successful bidder. Defendant **RICHARDS** was further explained that any substitutions at this point, without having advertised for bids for the fifteen (15) passenger vehicle would be construed as circumventing the City of Brownsville's bid procedure. It was further explained to Defendant **RICHARDS** that while Tipton Ford may be willing to swap the 4X4 SUV vehicle for a large capacity van, the fact remained that the City of Brownsville did not advertise for, nor solicited bids for two (2) large-capacity vans.

4.24   Thereafter, on or about **November 17, 1999, MR. RUBINSTEIN** is instructed by Mayor Blanca Vela to do what Defendant **RICHARDS** wants to do (i.e. cancel the 4X4 SUV vehicle contract and replace it with a fifteen (15) - passenger van). **MR. RUBINSTEIN** did not believe he had the legal right to do as he was instructed. **MR. RUBINSTEIN** explained that he believed such action was illegal because it would be an attempt to circumvent the purchasing laws of the State of Texas and the City of Brownsville.

12

4.25    Thereafter, on or about **November 18, 1999**, the City Attorney, J.G. Warburton approached **MR. RUBINSTEIN** and tells him that the Mayor has asked him to tell **MR. RUBINSTEIN** to cancel the contract for 4X4 SUV vehicle. **MR. RUBINSTEIN** is further told that the City Commission wants the item to go away quietly. **MR. RUBINSTEIN** reiterated to Mr. Warburton that he will only cancel the contract if the item is placed on the City Commission's Public Agenda for cancellation and the City Commission authorizes **MR. RUBINSTEIN** to cancel the contract.

4.26 Later on **November 18, 1999**, Mr. Warburton approached **MR. RUBINSTEIN** with a draft, a letter to Tipton Ford canceling the 4X4 SUV vehicle to be signed by **MR. RUBINSTEIN**. **MR. RUBINSTEIN** was told that the letter is what **"our bosses"** want **MR. RUBINSTEIN** to use. **MR. RUBINSTEIN** advised Mr. Warburton that he (i.e. **MR. RUBINSTEIN**) would sign the letter once the City Commission authorized the signature in an open session of a public meeting. **MR. RUBINSTEIN** attempted to give the draft of the letter back to Mr. Warburton, but Mr. Warburton told **MR. RUBINSTEIN** to keep and consider the letter.

4.27    Thereafter, an item is placed on the Agenda of the City of Brownsville City Commission to discuss the duties of the City Manager. The Public Meeting of the City Commission was to take place on **Tuesday, November 23, 1999** at 3:45 p.m. and said item was to be discussed in Executive Session. **MR. RUBINSTEIN** contends that the placing of said item on the agenda amounts to retaliation against him on the part of the Defendants for his refusal to cancel the contract for the 4X4 SUV vehicle.

4.28    **MR. RUBINSTEIN** would show this Court and Jury that throughout the duration of the 4x4 SUV vehicle contract cancellation issue, he had reported the information to Chief of Police Ben Reyna. **MR. RUBINSTEIN** was keeping Chief Reyna informed of the events as same

were happening.

4.29    During the **November 23, 1999** Executive Session of the City Commission public meeting, Defendant **HERNANDEZ** advised **MR. RUBINSTEIN** that the City Commission does not want the 4X4 SUV vehicle and that he would expect more cooperation from **MR. RUBINSTEIN** on that issue.  Defendant **HERNANDEZ** further told **MR. RUBINSTEIN** that he (i.e. Defendant **HERNANDEZ**) does not want to explain **"... to the world"** in open session why he wants to cancel the contract.  **MR. RUBINSTEIN** advised Defendant **HERNANDEZ** that the cancellation must be in open session.

4.30 Thereafter, during the **November 30, 1999** City Commission public meeting, the contract for the 4X4 SUV vehicle is canceled on a 4-1 vote.  Immediately after the meeting, Defendant **HERNANDEZ** followed **MR. RUBINSTEIN** to his office and threatened **MR. RUBINSTEIN** to get even with him because of the way the 4X4 SUV vehicle item was handled and makes that a promise to that effect.

4.31    Thereafter, **MR. RUBINSTEIN** was asked by Mayor Blanca Vela to meet with her on **December 3, 1999.**  On December 3, 1999, **MR. RUBINSTEIN** met with Mayor Vela and Defendant **MCNAIR** as requested by her.  At this meeting, **MR. RUBINSTEIN** is advised by Defendant **MCNAIR** that four (4) members of the City Commission (Mayor Vela, Defendants **HERNANDEZ, RICHARDS**, and **MCNAIR**) wanted **MR. RUBINSTEIN** to resign as City Manager by noon on December 3, 1999 or an item would be placed on the City Commission Agenda of December 7, 1999 to terminate **MR. RUBINSTEIN's** employment.  Defendant **MCNAIR** advised **MR. RUBINSTEIN** that this was the sentiment of the "**super majority**" of the City Commission.

4.32 The following week on **December 7, 1999, MR. RUBINSTEIN** was placed on a thirty (30) day leave of absence during a City Commission public meeting.   Thereafter, **MR. RUBINSTEIN** was terminated from his position as City Manager on **January 6, 2000.**

V.

**FIRST CAUSE OF ACTION**

**(DEFENDANTS' VIOLATION OF THE FREEDOM OF RELIGION AND FREEDOM OF ASSOCIATION CLAUSES OF THE UNITED STATES CONSTITUTION AND THE TEXAS CONSTITUTION)**

5.01 Plaintiff hereby incorporates by reference the factual contentions set forth in the foregoing paragraphs 4.01 through 4.02 of this Amended Complaint.

5.02 **MR. RUBINSTEIN** contends that the comments made by Defendants **RICHARDS** and **HERNANDEZ** especially on March 30, 1998 and September 9, 1998 amount to religious harassment insofar as **MR. RUBINSTEIN's** religious faith and/or beliefs are concerned.   As mentioned beforehand, **MR. RUBINSTEIN** is Jewish.   This type of harassment and/or religious harassment is in direct contravention of **the First (1st) Amendment to the United States Constitution**, but also of **Article 1, Section 6 of the Texas Constitution**.

5.03 It is quite clear that Defendants **RICHARDS** and **HERNANDEZ'** comments are a from of harassment that is **strictly forbidden** by the aforementioned constitutional provisions.   The September 9, 1998 letter and September 9, 1998 memorandum (**Exhibits "A" and "B"**) question the genuiness and sincerity of **MR. RUBINSTEIN's** religious faith and beliefs.   This is a matter about which Defendants **RICHARDS** and **HERNANDEZ**, as **MR. RUBINSTEIN's** employers or supervisors, should not be concerned.

15

5.04 **MR. RUBINSTEIN** further contends that the comments made by Defendants **RICHARDS** and **HERNANDEZ** violate his freedom to worship as guaranteed by the **Texas Constitution, Article 1, Section 6**, which provides, in part, as follows:

> **"Sec. 6.  All men have a natural and indefeasible right to worship Almighty God according to the dictates of their own consciences.  No man shall be compelled to attend, erect or support any place of worship, or to maintain any ministry against his consent.  No human authority ought, in any case whatever, to control or interfere with the rights of conscience in matters of religion..." (Emphasis added).**

5.05     Based upon the aforementioned facts, **MR. RUBINSTEIN** contends that he was terminated in violation of the Freedom of Religion clause of the Texas Constitution ( Tex.  Const. Art. 1 section 6) which states:

> All men have a natural and indefeasible right to worship Almighty God according to the dictates of their own consciences. No man shall be compelled to attend, erect or support any place of worship, or to maintain any ministry against his consent.  **No human authority ought, in any case whatever, to control or interfere with the rights of conscience in matters of religion, and no preference shall ever be given by law to any religious society or mode of worship.**  But it shall be the duty of the Legislature to pass such laws as may be necessary to protect equally every religious denomination in the peaceable enjoyment of its own mode of public worship. (Emphasis added)

5.06 **MR. RUBINSTEIN** would further show this Honorable Court and Jury that the Defendants, by their actions and comments, violated the **free exercise of religion clause of the First Amendment [Article 1] of the United States Constitution** which reads as follows:

"Congress **shall make no law** respecting an **establishment of religion, or prohibiting the free exercise thereof**; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances". (Emphasis added).

16

5.07  Further, **MR. RUBINSTEIN** was terminated from his employment as City Manager due to his relationship with the former Mayor for the City of Brownsville, Henry Gonzalez, in violation of the Texas Constitution's and the United States Constitution Freedom of Association Clause.   On this point, **MR. RUBINSTEIN** contends that he was severely criticized by the Defendants and Mayor Blanca S. Vela for his association with Former Mayor Gonzalez.  **MR. RUBINSTEIN** contends that his association with Former Mayor Gonzalez was a reason for his termination as City Manager on January 6, 2000.

VI.

## SECOND CAUSE OF ACTION

**RETALIATION BY DEFENDANTS IN VIOLATION OF THE TEXAS WHISTLEBLOWERS ACT, CHAPTER 554 OF THE TEXAS GOVERNMENT CODE AND *SABINE PILOT SERVICE* CASE**

6.01  Plaintiff incorporates by reference the factual contentions set forth in paragraphs 4.01, through 4.32, respectively, of this Amended Complaint.

A.     **BPOA ISSUE**

6.02  As mentioned beforehand, prior to August 4, 1998, **BPOA** placed an ad in a local radio station which, in part, accused Defendants **HERNANDEZ** and **MCNAIR** of having secret financial dealings with the City of Brownsville.  As a result of **BPOA** placing the ad on the radio, on or about August 8, 1998, **MR. RUBINSTEIN** was asked by Defendants**HERNANDEZ** and **MCNAIR** retaliate against and/or discipline the **BPOA** members, who placed the ad on the radio.  Specifically, Defendants **HERNANDEZ** and **MCNAIR** wanted **MR. RUBINSTEIN** to retaliate and/or discipline the executive committee members of the **BPOA**.

17

6.03 **MR. RUBINSTEIN** would show this Honorable Court and Jury that he refused to retaliate and/or discipline and/or terminate the executive committe members of the **BPOA**- as requested by Defendant **HERNANDEZ** and **MCNAIR**. **MR RUBINSTEIN** believed (and still does) that if he followed Defendants **HERNANDEZ** and **MCNAIR's** requests, he would then be violating the law and oath he took as City Manager on March 4, 1997. On March 4, 1997, **MR. RUBINSTEIN** solemnly affirmed that he would faithfully execute the duties of the City Manager of the best of his ability, preserve, protect, and defend the Constitution and laws of the United States and of the State of Texas.

6.04 **MR. RUBINSTEIN** further contends that the orders of Defendants **HERNANDEZ** and **MCNAIR** to retaliate against **BPOA** for expressing their rights are(were) illegal in that these Defendants were, in essence, asking **MR. RUBINSTEIN** to violate **Chapter 39, §§39.02 and §39.03 of the Texas Penal Code**. These orders are also violative of **BPOA's** freedom of speech rights protected under the **Texas Constitution, Article 1, Section 8**.

6.05    Chapter 39, §39.02 of the Texas Penal Code reads, in part, as follows:

"... **§39.02. ABUSE OF OFFICIAL CAPACITY"**

(a)    A public servant commits an offense if, with **intent to obtain a benefit or with intent to harm or defraud another, he intentional or knowingly**:

(1)    **violates a law relating to the public servant's office or employment; ..."** **(Emphasis added)**.

6.06    Chapter 39, §39.03 of the Texas Penal Code reads, in part, as follows:

"...**§39.03 OFFICIAL OPPRESSION**

(a)    **A public servant acting under color of his office or employment commits**

18

**an offense if he:**

(1)    **intentionally subjects another to mistreatment** or to arrest, detention, search, seizure, dispossession, assessment, or lien that he knows is unlawful;

(2)    **intentionally denies or impedes another in the exercise or enjoyment of any right, privilege,** power, or immunity, **knowing his conduct is unlawful;..."** **(Emphasis added).**

6.07 Texas Constitution Art. 1, Section 8 reads, in part as follows:

**"... Sec. 8.  Every person shall be at liberty to speak, write or publish his opinions on any subject, being responsible for the abuse of that privilege; and no law shall ever be passed curtailing the liberty of speech or of the press..." (Emphasis added).**

6.08  Additionally, by requesting **MR. RUBINSTEIN** to discipline and/or retaliate against and/or terminate members of the **BPOA**, Defendants **RICHARDS** and **HERNANDEZ** were, in essence, asking **MR. RUBINSTEIN** to violate **Texas Local Government Code, Section 143.086.**

**Section 143.086 (e)** provides as follows:

**"...(e) Except as expressly provided by this section, the commission or the municipality's governing body may not restrict a fire fighter's or police officer's right to engage in a political activity..." (Emphasis added).**

6.09 **MR. RUBINSTEIN** contends that his termination on January 6, 2000 was done in retaliation for his refusal to discipline and/or retaliate against the executive committee members of **BPOA** Defendant **HERNANDEZ**' September 9, 1998. As such, **MR. RUBINSTEIN** contends that this retaliation is violative of **Texas Government Code, Chapter 554, Section 554.002** which provides as follows:

**"... A state agency or local government may not suspend or terminate the employment of or discriminate against a public employee who in good faith reports a violation of**

**law to an appropriate law enforcement authority..." (Emphasis added).**

B.   <u>**RYDER/MLS ISSUE**</u>

6.10 On another point, **MR. RUBINSTEIN** would show this Court and Jury that on or about August 5, 1998 he became aware of an agreement between Defendant **HERNANDEZ'** businesses, **Ernie's Wrecker Services** and/or **Express Towing** and Ryder/MLS by which said businesses were placed on Ryder/MLS' **"preferred services"** list. This information was of immense concern to **MR. RUBINSTEIN** because Ryder/MLS provided vehicle maintenance services to the City of Brownsville's fleet under contract vehicle maintenance services to the City of Brownsville's fleet under a contract voted on and approved by the City Commissioners, including Defendant **HERNANDEZ.**

6.11 Thereafter, at the August 8, 1998 meeting at Defendant **HERNANDEZ'** office, **MR. RUBINSTEIN** pointed out to Defendant **HERNANDEZ** that Ernie's Wrecker Services being on Ryder's **"preferred services"** list could be challenged as a conflict of interest. **MR. RUBINSTEIN** further pointed out to Defendant **HERNANDEZ** that such fact may be viewed as a form of impropriety and/or public official misconduct.

6.12 Once again, **MR. RUBINSTEIN** would show this Court and Jury that he received the letter dated September 9, 1998 **(Exhibit "A")** from Defendant **HERNANDEZ** in which Defendant **HERNANDEZ',** a public servant, grossly questioned **MR. RUBINSTEIN's** religious beliefs and faith. **MR. RUBINSTEIN** contends that such action on the part of Defendant **HERNANDEZ** amounts to retaliation against him (i.e. **MR. RUBINSTEIN)** for addressing or bringing forth Defendant **HERNANDEZ'** benefit from his vote on the Contract for Municipal and Transit Fleet Management and Maintenance Services between the City of Brownsville and Ryder/MLS. **MR. RUBINSTEIN** further contends that such action and/or retaliation on the part of Defendant

**HERNANDEZ** is violative of **Chapter 39, §39.02 of the Texas Penal Code**.

6.13    Chapter 39, §39.02 of the Texas Penal Code reads, in part, as follows:

**"... §39.02.  ABUSE OF OFFICIAL CAPACITY"**

(a)    A public servant commits an offense if, with **intent to obtain a benefit or with intent to harm or defraud another, he intentional or knowingly**:

(1)    **violates a law relating to the public servant's office or employment; ..."** **(Emphasis added)**.

6.14  **MR. RUBINSTEIN** contends that his termination on January 6, 2000 was done in retaliation for his bringing forth Defendants **HERNANDEZ** and **MCNAIR's** potential conflicts of interest. As such, **MR. RUBINSTEIN** contends that this retaliation is violative of **Texas Government Code, Chapter 554, Section 554.002** which provides as follows:

**"... A state agency or local government may not suspend or terminate the employment of or discriminate against a public employee who in good faith reports a violation of law to an appropriate law enforcement authority..."** (Emphasis added).

C.    <u>SUV ISSUE</u>

6.15 As mentioned beforhand **MR. RUBINSTEIN** was instructed on or about **November 17, 1999**, by Mayor Blanca Vela to do what Defendant **RICHARDS** wanted to do (i.e. cancel the 4X4 SUV vehicle contract and replace it with a fifteen (15) - passenger van). **MR. RUBINSTEIN** did not believe he had the legal right to do as he was instructed. **MR. RUBINSTEIN** explained that he believed such action was illegal because it would be an attempt to circumvent the purchasing laws of the State of Texas and the City of Brownsville. **MR. RUBINSTEIN** refused to do what was asked of him by the Defendants and Mayor Blanca Vela as he perceived such action to be an "illegal act" or at least against the **"laws of this state and the United States which carry criminal**

21

**penalties"** are implicated.  At all times during this request for the cancelation of the SUV vehicle, **MR. RUBINSTEIN** reported the conduct of the Defendants and Mayor Blanca Vela to the Brownsville Police Department, which he believed was the proper law enforcement agency to handle such matter.

6.16  Based upon the aforementioned facts the Defendants have violated Chapter 554 of the Texas Government Code (hereinafter referred to as the **(Texas Whistleblowers Act)** in that **MR. RUBINSTEIN** was terminated for in good faith, as a public employee, reporting violations of law of other public employees, i.e. Defendants **HERNANDEZ** and **RICHARDS,** to an appropriate law enforcement authority, i.e. the City of Brownsville Police Department.  Further, **MR. RUBINSTEIN** in good faith, believed the law enforcement authority, i.e. the City of Brownsville Police Department was authorized to regulate under or enforce the law alleged to be violated int he report or investigate or prosecute a violation of criminal law.

6.17    Further, **MR. RUBINSTEIN** alleges in each of 20 or more calendar weeks in the calendar year in which this suit is filed the City of Brownsville, i.e. the local government entity,  has employed more than 500 employees.

6.18 **MR. RUBINSTEIN** contends that his termination on January 6, 2000 was done in retaliation for his refusal to cancel the purchase of the SUV vehicle and reporting same to the Brownsville Police Department. As such, **MR. RUBINSTEIN** contends that this retaliation is violative of **Texas Government Code, Chapter 554, Section 554.002** which provides as follows:

> **"... A state agency or local government may not suspend or terminate the employment of or discriminate against a public employee who in good faith reports a violation of law to an appropriate law enforcement authority..." (Emphasis added).**

VII.

## THIRD CAUSE OF ACTION

### DEFENDANTS' VIOLATION OF TITLE VII OF
### THE CIVIL RIGHTS ACT OF 1964

7.01 Plaintiff incorporates by reference the factual contentions contained in the foregoing paragraphs 4.01 through 4.32 of this Amended Complaint.

7.02 Based upon the aforementioned facts, Plaintiff contends he was terminated from his employment as City Manager in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000(e), et seq., 2000(e)-2(a)(1), 2000(e)-2(a)(2), as well as in violation of 42 U.S.C. §1981, and §1983. **MR. RUBINSTEIN** alleges that Defendants deprived him of his rights, privileges or immunities secured by the United States Constitution by substantially burdening his exercise of his religion and thereby discriminating against him based upon his religious beliefs.

7.03 Based upon the aforementioned facts, Plaintiff contends he was terminated in violation of 42 U.S.C. §2000e-3(a) in that Plaintiff alleges that Defendants discriminated against him for making a charge or participating in an investigation pursuant to the Civil Rights Act of 1964.

7.04 All jurisdictional and administrative prerequisites have been met. Plaintiff timely filed an EEOC charge and filed suit within 90 days of his receipt of the dismissal and notice of rights ("right to sue" letter).

VIII.

## FOURTH CAUSE OF ACTION

### DEFENDANTS' VIOLATION OF PLAINTIFF'S RIGHT TO DUE PROCESS UNDER
### THE FOURTEENTH (14th) AMENDMENT OF THE UNITED STATES
### CONSTITUTION

8.01 Plaintiff hereby incorporates by reference the factual contentions contained in the foregoing paragraphs 4.01 through 4.32 of this Amended Complaint.

23

8.02 Based upon the foregoing facts, **MR. RUBINSTEIN** contends that his right to due process through Defendants' deprivation of his liberty interests by maligning his good name was in violation of due process of law under the Fourteenth (14th) Amendment of the United States Constitution.

IX.

**FIFTH CAUSE OF ACTION**

**INTENTIONAL INFLICTION OF EMOTION DISTRESS**

9.01 Plaintiff incorporates by reference the factual contentions contained in the foregoing paragraphs 4.01 through 4.32 of this Amended Complaint.

9.02 Based upon the aforementioned facts, **MR. RUBINSTEIN** was terminated as City Manager for the City of Brownsville as the Defendants acted intentionally or recklessly, further the Defendants' conduct  was extreme and outrageous and the Defendants' actions caused plaintiff emotional distress and lastly the distress was severe. [*Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993)--citing Restatement (Second) of Torts § 46 (1965)].

X.

**DAMAGES**

10.01 Based upon the aforementioned facts, **MR. RUBINSTEIN** was terminated as City Manager for the City of Brownsville and has and/or will incur the following damages:

**A.    LOST WAGES AND BENEFITS**

Since Plaintiff was terminated from his position as City Manager for the City of Brownsville, Plaintiff is entitled to recover any lost wages due and owing due to his wrongful termination. Further, Plaintiff is owed any benefits (including but not limited to Pension Benefits, Retirement Plans, "Texas Municipal Retirement System" that would have accrued during the period of time for

which he was wrongfully discharged.

### B.    PAST AND FUTURE MENTAL ANGUISH

The actions of the Defendants have caused **MR. RUBINSTEIN** to suffer severe mental anguish and emotional trauma, and is therefore, entitled to recover money damages from the Defendants, jointly and severally, for such mental anguish based upon the acts of the Defendants. Also, **MR. RUBINSTEIN** will in all reasonable probability experience and suffer mental anguish and emotional distress in the future, and seeks to recover these damages from the Defendants, jointly and severally, as well.

### C.    DAMAGE TO REPUTATION

The actions of the Defendants have damaged **MR. RUBINSTEIN's** reputation in the community and is, therefore, entitled to recover money damages for such damage to his reputation based upon the acts of the Defendants.

### D.    EXEMPLARY DAMAGES

**MR. RUBINSTEIN** will further show the Court and Jury that all of the foregoing conduct of the Individual Defendants constituted malice in that such conduct amounted to ill will, bad or evil motive, and/or gross negligence to the rights of Plaintiff as to amount a willful, wanton and malicious acts.  As such, Plaintiff seeks exemplary and/or punitive damages against the Defendants, jointly and severally, for such conduct in an amount to be determined by the trier of fact.

Further, the actions taken by the Defendants were intentional acts which resulted in the intentional discrimination in the Plaintiff's employment in violation of 42 U.S.C. §1981a.  Such violation entitles Plaintiff to punitive damages as well.

X1.

## PUNITIVE DAMAGES UNDER THE TEXAS WHISTLEBLOWERS ACT

11.01 Punitive damages are available in a Whistleblower Act action. There is no requirement that the plaintiff prove malice or evil intent on the part of a "policy-making official" of the agency. The Whistleblower Act protects against pervasive retaliation by an entire institution as well as acts attributable to a single official. **City of San Antonio v. Heim, 932 S.W.2d 287, 293-294 (Tex. App.--Austin 1996, den.)**

XII.

## ATTORNEY'S FEES

12.01   As a further result of Defendants' actions and practices, **MR. RUBINSTEIN** has been compelled to retain legal counsel and has agreed to pay attorneys' fees for legal services rendered and to be rendered in the preparation and trial of this cause.  As such, **MR. RUBINSTEIN** seeks to recover reasonable attorney's fees in relation to the work performed in this cause.

XIII.

## NOTICE OF CLAIM WAS GIVEN TO THE DEFENDANTS

13.01   **MR. RUBINSTEIN** would show this Court and Jury that he gave notice of his claims to the Defendants on **June 22, 2000**.  This notice was issued to the Defendants pursuant to **Article II, Section 8 of the Brownsville Code (City Charter) and/or Ordinance No. 93-1270 (Proposition #1)**.  A true and correct copy of said Notice of Claim is attached hereto as **Exhibit "C"**, and incorporated by reference the same as if fully copied and set forth at length.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff **CARLOS RUBINSTEIN,**

respectfully prays that Defendants be cited to appear and answer, that a trial by jury be had on the

merits, and that, at the conclusion of said trial, he have the following:

1. Judgment against Defendants, **jointly and severally**, for actual damages in a sum in excess of the minimum jurisdictional limits of this Court; together with pre-judgment and post-judgment interest on said judgment;

2. Costs of court herein expended on his behalf;

3. An award of reasonable attorney's fees;

4. An award for exemplary and/or punitive damages against Defendants, jointly and severally, in an amount to be determined by the jury or the trier of fact; and

5. Such other and further relief , at law or in equity,  to which Plaintiff may show himself to be justly entitled.

27

Respectfully submitted,

LAW OFFICES OF
EDWIN L. MCANINCH, P.C.
507 Fall River Road
Houston, Texas  77024-5613
Telephone No. (713) 461-8619
Facsimile No. (713) 827-8920

BY: _Ed McAninch_____
EDWIN L. MCANINCH
State Bar No. 13325050
Federal Id. No. 4892

ATTORNEY-IN-CHARGE FOR
PLAINTIFF CARLOS
RUBINSTEIN

## CERTIFICATE OF SERVICE

I, **EDWIN L. MCANINCH**, hereby certify that on this __16th__

day of ___March_____, 2001, a true and correct

copy of the above foregoing **Plaintiff's Motion for Leave to File**

**Plaintiff's Third Amended Original Complaint and Plaintiff's**

**Third Amended Original Complaint** was served VIA CMRRR #

__7099 3220 0006 2777 6902_____ in accordance with the

Federal Rules of Civil Procedure to Hon. Ricardo J. Navarro and

Hon. Mauro F. Ruiz, **DENTON, MCKAMIE & NAVARRO, P.C.**, Bank of

America Building, 222 E. Van Buren, Suite 405, Harlingen, Texas,

78550.

_Ed McAninch_____
EDWIN L. MCANINCH

1

CVISPDF – www.fastio.com

CERTIFIED COPY

DATE: 9/9/98

Dear Mr. Rubinstein,

This letter has been held for two days to allow you to respond to the racist comment made by the Mayor Gonzalez during the Tuesday executive session. I was shocked by your lack of response to his anti-Semitic slur. Mayor Gonzalez's arrogant sarcastic tone to Commissioner McNair was totally uncalled for and completely out of line.

I direct you to your letter of March 30th, 1998 where you lashed out your frustration at a comment made by Commissioner Richards regarding an action he felt was offensive in nature. Your position clearly stated that "I can not compromise what I believe in." Your non action and lack of response to the Mayor causes me wonder why you apply a double standard.

Your letter stated "I will not be party to such actions" leaves me wondering if the anger and frustration you displayed was staged to discredit Commissioner Richards. When a derogatory comment has been made in my presence, referring to a Mexican in a belittling way or something negative about my nationality, I would not hesitate to be across the table in somebody's face. Yet, the Mayor made a comment about "trying to Jew someone down" and you did not even react. This a direct slap in the face to you, the Jewish community, and your religious beliefs and yet you did not defend yourself as you did in the past with Commissioner Richards. It was also extremely embarrassing that the comment was heard by all members of the Commission, the City Secretary, City Attorney and the Assistant City Manager.

After the episode with Commissioner Richards, it shocks the conscience that you would allow such a remark to be ignored. It leads me believe that your past outrage was staged and selective. Since Commissioner Wood did not come to your defense after the Mayor's demeaning comment during our executive session, there is no doubt in my mind that Commissioner Wood staged the BPOA attack of Commissioner Richards in a public meeting. My assumption is that Commissioner Wood was trying defend your honor and destroy Commissioner Richard's credibility. This attack all started with your

# CERTIFIED COPY

letter to the Mayor about a private conversation with Commissioner
Richards. Yet, during Tuesdays executive session, this sarcastic and racist
comment made by the Mayor was ignored by Commissioner Wood. Up to
this point, he has acted like a honey spitting viper defending your honor and
demeanor towards Commissioner Richards. This premeditated attack and
human shielding has caused a tremendous breach among City Officials. We
all sat in an executive session when Commissioner Richards apologized to
you in front of all of us. He made it very clear that he was sorry, if his
remarks were misinterpreted. I certainly do not want to hear how you
confronted the Mayor and he apologized for his remarks. I am certain this
would be a false statement. He owes the entire Commission an apology for
his sarcasm and cynical racist behavior. In all my years in politics, I have
never seen a bigger abuse of political maneuvering. It only goes to prove
that Commissioner Wood and Mayor Gonzalez have a personal agenda
against Commissioner Richards. It is most unfortunate that we have gotten
to this point.

To summarize, I would like to know if you made the calls, wrote the e-mail
and solicited all the opinions about the Mayor's anti-semitic comment made
in front of eight people, as you did with Commissioner Richard's private
phone conversation with you on March 30th 1998. Again, Mayor Gonzalez's
sarcasm and insensitivity is an embarrassment to all of us that heard his
racist comment. By allowing Mayor Gonzalez to make this comment, you
have allowed yourself to be a party to such actions. You have allowed
yourself to be compromised in what you believe in and created doubt as to
your sincerity and sensibility to your religious beliefs. I seriously believe your
credibility in the community will be seriously compromised if this issue
becomes public. I would trust that this letter will remain private and
confidential as did your March letter to Mayor Gonzalez regarding
Commissioner Richards.

Enclosed are copies of your March letter and a letter from Commissioner
Richard's expressing his concerns about Tuesdays executive session.

ERNIE HERNANDEZ
MAYOR PRO TEM

**CERTIFIED COP**1

**Date:** 9/9/98

**To:** Commissioner Ernie Hernandez

**From:** Commissioner Bud Richards

Considering the negative publicity generated by Mayor Henry Gonzalez regarding a personal telephone call to City Manager Carlos Rubinstein by me where Mr. Rubinstein took extremely personal offense to what he termed racial, anti-Semitic and degrading comments, I must register my comments regarding the Mayor's comment of September 8, 1998.

At the meeting of September 8th at about 3:15 P.M. in the presence of the entire Commission, Assistant City Manager, City Secretary, City Attorney, and City Manager Carlos Rubinstein, the Mayor's comment to Commissioner McNair regarding a real estate purchase was disturbing to me.

Mayor Gonzalez stated "you usually Jew people down" to Mr. McNair while discussing the real estate price. This was an extreme shock to all present and struck all speechless especially Mr. Rubinstein as he uttered not a detectable sound.

You will recall in Mr. Rubinstein's March 30th letter he was quick to point out "I am Jewish, proud of the fact that I am and always will be." I have attached a copy of his letter which I direct your attention to the last paragraph regarding his expectations and his comment about "I cannot compromise."

It appears that there are two standards being applied by Mr. Rubinstein, one, which excludes the Mayor's comments, and one where mine became public by the Mayor and held to high criticism.

I personally was shocked, dismayed, embarrassed, perplexed, appalled, and distressed at the Mayor Gonzalez's insensitive comment and even more confounded by the lack of protest by Commissioner Wood who rushed to Mr. Rubinstein's defense in March, and most of all by Mr. Rubinstein's total silence.

This is for your information, but not to be considered confidential as the comment was heard by all in the room. I am directing this to you as Mayor Pro-tem as it involves the Mayor for any further action you may deem necessary.

Bud Richards   Sept 9. 1998

Case 1:00-cv-00169   Document 27   Filed in TXSD on 03/16/2001   Page 33 of 46

CERTIFIED COPY



**Carlos Rubinstein**
City Manager

March 30, 1998

Henry Gonzales, Mayor
City of Brownsville

Dear Mayor:

Please be aware that I am writing this letter to you in as much as you are the presiding officer of the City Commission and Mayor of Brownsville. Also be aware that I am at this time writing this letter while in extreme anger. I do not however wish this letter be made public, a matter I leave in your hands.

Earlier this morning during a telephone conversation with Commissioner Richards a statement was made to me that I found very offensive. Commissioner Richards and I were discussing various city issues, among them a recent action by certain police officers, which I also find very troubling. Commissioner Richards referred to this action by the officers as "Gestapo" like and if the police department was to continue to act this way then we should treat them like Hitler would, or words to that effect.

As you are aware, I am Jewish, proud of the fact that I am and always will be. This is as important to me as my wife and children. It is the core that makes me what I am. While I suspect you may think you know how I feel about the comments made to me, please note that you simply can't. I advised Commissioner Richards that I did not appreciate the comments and would never be a part of any city action likened to Hitler. Commissioner Richards did ask that I put the comment aside, something I find very hard to do.

As much as I love this community and the job I hold, I cannot compromise what I believe in. I will not under any circumstances. I hope that the actions of today are not representative of future expectations of how I should manage the City, for if this is the case, then I wish to advise you that I will not be a party to such actions.

Sincerely,

*Carlos Rubinstein*
Carlos Rubinstein
City Manager

**City of Brownsville**
P.O. Box 911 / City Hall / Market Square / Brownsville, Texas 78520
(210) 548-6000
"EQUAL OPPORTUNITY EMPLOYER"

CERTIFIED COPY

**Date:** 9/9/98

**To:**   Commissioner Ernie Hernandez

**From:** Commissioner Bud Richards

Considering the negative publicity generated by Mayor Henry Gonzalez regarding a personal telephone call to City Manager Carlos Rubinstein by me where Mr. Rubinstein took extremely personal offense to what he termed racial, anti-Semitic and degrading comments, I must register my comments regarding the Mayor's comment of September 8, 1998.

At the meeting of September 8th at about 3:15 P.M. in the presence of the entire Commission, Assistant City Manager, City Secretary, City Attorney, and City Manager Carlos Rubinstein, the Mayor's comment to Commissioner McNair regarding a real estate purchase was disturbing to me.

Mayor Gonzalez stated "you usually Jew people down" to Mr. McNair while discussing the real estate price. This was an extreme shock to all present and struck all speechless especially Mr. Rubinstein as he uttered not a detectable sound.

You will recall in Mr. Rubinstein's March 30th letter he was quick to point out "I am Jewish, proud of the fact that I am and always will be." I have attached a copy of his letter which I direct your attention to the last paragraph regarding his expectations and his comment about "I cannot compromise."

It appears that there are two standards being applied by Mr. Rubinstein, one, which excludes the Mayor's comments, and one where mine became public by the Mayor and held to high criticism.

I personally was shocked, dismayed, embarrassed, perplexed, appalled, and distressed at the Mayor Gonzalez's insensitive comment and even more confounded by the lack of protest by Commissioner Wood who rushed to Mr. Rubinstein's defense in March, and most of all by Mr. Rubinstein's total silence.

This is for your information, but not to be considered confidential as the comment was heard by all in the room. I am directing this to you as Mayor Pro-tem as it involves the Mayor for any further action you may deem necessary.

Bud Richards   Sept 9. 1998



CER~~TIFIED~~ COPY

**FILE COPY**

CARLOS RUBINSTEIN
1570 CAPISTRANO DRIVE
BROWNSVILLE, TEXAS  78526
Tel:  (956) 546-2066
Fax:  (956) 546-2066

June 23, 2000

Hon. Blanca S. Vela                    VIA HAND-DELIVERY
Hon. Carlton J. Richards               VIA HAND-DELIVERY
Hon. Ernie Hernandez, Jr.              VIA HAND-DELIVERY
Hon. Harry E. McNair, Jr.              VIA HAND-DELIVERY
Hon. John Wood                         VIA HAND-DELIVERY
City of Brownsville
City Hall
East 12th Street & Market Square
Brownsville, Texas  78520

Re:  **Notice of Claim**

Dear Mayor Vela and City Commissioners:

Enclosed herewith is my **Notice of Claim** pursuant to **Article II,
Section 8 of the Brownsville Code (City Charter) and/or ordinance
No. 93-1270 (Proposition #1)** of my claim for damages sustained by
me as a direct result of the actions or inactions of the City of
Brownsville and the City of Brownsville City Commission.

By copy of this letter, the same has been forwarded to Hon. Rick
Navarro, counsel for the City of Brownsville, as noted below.

Thank you for your attention in this matter.

Respectfully,

CARLOS RUBINSTEIN

CR/er

Enclosure

xc:  Hon. Ricardo J. Navarro                VIA HAND-DELIVERY
     DENTON, McKAMIE & NAVARRO, P.C.
     Bank of America Building, Suite 405
     222 E. Van Buren
     Harlingen, Texas  78550

DELIVERED TO:

Hon. Carlton J. "Bud" Richards
City of Brownsville
City Hall
East 12th Street & Market Square
Brownsville, Texas  78520

CERTIFIED COPY

SUBJECT:        Notice of Claim

FILE NAME:      Carlos Rubinstein

RECEIVED BY:    _S Bano_____

DATE:           _6-23-2000_____


DELIVERED TO:   Hon. Harry E. McNair, Jr.
                City Commission, Place 3
                City of Brownsville
                City Hall
                East 12th Street & Market Square
                Brownsville, Texas  78520

SUBJECT:        Notice of Claim

FILE NAME:      Carlos Rubinstein

RECEIVED BY:    _S Bano_____

DATE:           _6-23-0C_____


DELIVERED TO:   Hon. John Wood
                City Commission, Place 4
                City of Brownsville
                City Hall
                East 12th Street & Market Square
                Brownsville, Texas  78520

SUBJECT:        Notice of Claim

FILE NAME:      Carlos Rubinstein

RECEIVED BY:    _S Bano_____

DATE:           _6-23-0C_____


DELIVERED TO:   Hon. Ernie Hernandez, Jr.
                City Commission, Place 2
                City of Brownsville
                City Hall
                East 12th Street & Market Square
                Brownsville, Texas  78520

SUBJECT:        Notice of Claim

FILE NAME:      Carlos Rubinstein

CERTIFIED COPY

**DELIVERED TO:**     Mayor Blanca S. Vela
                     City of Brownsville
                     City Hall
                     East 12th Street & Market Square
                     Brownsville, Texas  78520

**SUBJECT:**         Notice of Claim

**FILE NAME:**       Carlos Rubinstein

**RECEIVED BY:**     _Sbano_

**DATE:**            _6-23-00_

CutePDF - www.fastio.com

CERTIFIED COPY

FILE COPY

<u>NOTICE OF CLAIM</u>

STATE OF TEXAS          &
                       &
COUNTY OF CAMERON       &

BEFORE ME, the undersigned authority, personally appeared, CARLOS RUBINSTEIN, who, by me duly sworn, deposed as follows:

"My name is CARLOS RUBINSTEIN.  I am over 21 years of age.  I reside at 1570 Capistrano Drive, Brownsville, Cameron County, Texas, 78526.  My telephone number is (956) 546-2066.  I am the former City Manager of the City of Brownsville, Texas.  I am of sound mind and capable of making this affidavit.

This affidavit serves as notice to the City of Brownsville and the City of Brownsville City Commission pursuant to **Article II, Section 8 of the Brownsville Code (City Charter) and/or ordinance No. 93-1270 (Proposition #1)** of my claim for damages sustained by me as a direct result of the conduct, actions or inactions of the City of Brownsville and the City of Brownsville City Commission.

My claim against the City of Brownsville and certain members of the City of Brownsville City Commission arises out of the unlawful and wrongful termination of me as City Manager of the City of Brownsville by the City of Brownsville and certain members of the City of Brownsville City Commission as well as the following conduct:

  (1)  Retaliating against me, a public employee, for addressing the Ryder/MLS issue with Commissioner **ERNIE HERNANDEZ, JR.** (in violation of the Texas Government Code Ann., Section 554.002 (Vernon 1998));

  (2)  Dictating to me to discipline and/or retaliate against City of Brownsville employees (in violation of the Texas Constitution, Article 1, Section 8);

CERTIFIED COPY

(3)   Dictating to me to discipline and/or retaliate against
      City of Brownsville employees (in violation of Section 20
      of the Brownsville City Charter);

(4)   Dictating to me to discipline and/or retaliate against
      City of Brownsville employees (in violation of the Texas
      Local Government Code Ann., Section 143.086 (Vernon
      1998));

(5)   Harassing me insofar as my religious faith and/or beliefs
      are concerned (in violation of Section 101, sub-section
      I, Chapter I of the City of Brownsville Personnel
      Policies Manual and the Texas Constitution, Article 1,
      Section 6);

(6)   Denying me the right to file a grievance against City
      Commissioners ERNIE HERNANDEZ, JR. and CARLTON J. "BUD"
      RICHARDS (in violation of Section 705 of the City of
      Brownsville Personnel Policies Manual);

(7)   Retaliating against me, a public employee for addressing
      or bringing forth City Commissioner ERNIE HERNANDEZ,
      JR.'s benefit from his vote on the Contract for Municipal
      and Transit Fleet Management and Maintenance Services
      between City of Brownsville and Ryder/MLS (in violation
      of the Texas Penal Code, Chapter 39, §39.02);

(8)   Mistreating me or intentionally denying or impeding my
      freedom of speech and/or freedom to worship (in violation
      of the Texas Penal Code, Chapter 39,§39.03);

(9)   Wrongfully terminating me, a public employee, who in good
      faith reported a violation of law of other public
      employees, i.e. City Commissioners ERNIE HERNANDEZ, JR.
      and CARLTON J. "BUD" RICHARDS, to an appropriate law
      enforcement authority, i.e. the City of Brownsville
      Police Department.  Further, I, in good faith, believed
      the law enforcement authority, i.e. the City of
      Brownsville Police Department was authorized to regulate
      under or enforce the law alleged to be violated in the
      report or investigate or prosecute a violation of
      criminal law (in violation of the Texas Whistleblowers
      Act, Chapter 554 of the Texas Government Code);

(10)  Wrongfully terminating me from my position as City
      Manager of the City of Brownsville for refusing to
      perform an "illegal act" by circumventing a majority City
      Commissioner vote on a contract or at least when the
      "laws of this state which carry criminal penalties" are
      implicated;

2

CERTIFIED COPY

(11) Wrongfully terminating me from my position as City Manager of the City of Brownsville (in violation of the Freedom of Religion clause of the Texas Constitution (Tex. Const. Art. 1 section 6) and in violation of the Texas Constitution's Freedom of Association Clause); and

(12) Wrongfully terminating me from my position as City Manager of the City of Brownsville (in violation of Chapter 551 of the Texas Government Code - Texas Open Meetings Act).

The aforementioned conduct commenced and continued in Brownsville, Cameron County, Texas, which ultimately led to the unlawful and wrongful termination of me as City Manager of the City of Brownsville on January 6, 2000.

Based on the conduct, actions, and/or inactions of the City of Brownsville and certain members of the City of Brownsville City Commission, I seek to recover damages in the approximate amount of ONE MILLION AND FIVE HUNDRED THOUSAND AND NO/100THS DOLLARS ($1,500,000.00) as well as exemplary and/or punitive damages in an amount to be determined by the trier of fact, and reasonable attorney's fees. The damages that I seek to recover include, but are not limited to damages for past mental anguish, future mental anguish, past emotional distress, future emotional distress, lost wages and/or salary, lost benefits, and damages to my reputation in the community.

I reserve the right to amend or modify my plea for a specific amount of damages once discovery is completed and before the commencement of trial.

I also state that the following individuals have knowledge of matters or information relevant to the subject matter of this claim:

3

CERTIFIED COPY

Harry E. McNair, Jr.
37 Sunset Drive
Brownsville, Texas  78520

John Wood
1180 Toya Lane
Brownsville, Texas  78520

Carlton J. "Bud" Richards
17 Casa Linda
Brownsville, Texas  78521

Ernie Hernandez, Jr.
203 Shoreline Drive
Brownsville, Texas  78521

Sylvia Price
1545 Alta Mesa
Brownsville, Texas  78521

J.G. Warburton
c/o City of Brownsville
City Hall/Market Square
Brownsville, Texas  78520

Ivan Welker
c/o City of Brownsville
City Hall
East 12th Street & Market Square
Brownsville, Texas  78520

Blanca S. Vela
c/o City of Brownsville
City Hall
East 12th Street & Market Square
Brownsville, Texas  78520

Paul Calapa
c/o City of Brownsville
City Hall
East 12th Street & Market Square
Brownsville, Texas  78520

Pete Gonzalez
c/o City of Brownsville
City Hall
East 12th Street & Market Square
Brownsville, Texas  78520

4

CERTIFIED COPY

Ray Reinhart
c/o Tipton Ford
3840 North Expressway
Brownsville, Texas  78523

Jim Tipton
3840 North Expressway
Brownsville, Texas  78523

Ben Reyna (Chief of Police)
c/o Brownsville Police Department
600 E. Jackson Street
Brownsville, Texas  78520

Robert H. Lackner
2001 Palm Boulevard
Brownsville, Texas  78520

Henry Gonzalez
153 Paredes Line Road
Brownsville, Texas  78521

Rachel Figueroa
c/o City of Brownsville
City Hall
East 12th Street & Market Square
Brownsville, Texas  78520

Bill Young
c/o City of Brownsville
City Hall
East 12th Street & Market Square
Brownsville, Texas  78520

Efren Fernandez
c/o City of Brownsville
City Hall
East 12th Street & Market Square
Brownsville, Texas  78520

This list of witnesses or persons with knowledge of relevant
facts is not intended to be all inclusive, and may be modified or
supplemented once discovery is complete and before the commencement
of trial.

5

**CERTIFIED COPY**

Further affiant sayeth not.



CARLOS RUBINSTEIN

SUBSCRIBED AND SWORN TO BEFORE ME on the 22nd day of June, 2000, to certify which witness my hand and official seal.

Notary Public, State of Texas

ELIZABETH R. RIVERA
Notary Public, State of Texas
My Commission Expires
MARCH 1, 2003

My Commission Expires on:

3-01-03

A TRUE COPY I CERTIFY
AURORA DE LA GARZA, CLERK
DISTRICT COURT CAMERON COUNTY, TEXAS
DATE 10 03
BY _____ DEPUTY

6

# CERTIFIED COPY

DATE: _____

FILED _____ O'CLOCK
AURORA DE LA GARZA DIST _____ CLRK

SEP 0 6 2000

DISTRICT COURT OF CAMERON COUNTY, TEXAS
_____ DEPUTY

RE:   Cause No. _____

_____

VS

_____

Enclosed for filing, please find the following:

_____ Plaintiff's Original Petition.
_____ Plaintiff's _____ Amended Original Petition.
_____ Defendant's Original Answer.
_____ Defendant's _____ Amended Original Answer.
_____ _____ Interrogatories to _____.
_____ Plaintiff's Answers to _____ Interrogatories.
_____ Our firm check in the amount of $_____ For court costs.
_____ Motion _____.
_____ Order _____.
_____ Judgment _____.
_____ Notice of Taking of Oral Deposition of _____.
_____ Notice of Taking of Deposition by Written Questions of
        _____.
_____ Jury Fee deposit of $30.00.
_____ Other: Request for Issuance of Order to Withhold Earnings.
        $25.00 Fee.

Please indicate below the indicated action:

_____ Prepare the Abstract of Judgment - $8.00 fee paid by ___.
_____ Prepare Writ of Execution - $8.00 fee paid by _____.
_____ Prepare Order of Sale - $8.00 fee paid by _____.
_____ File among the papers in the above styled and numbered
        cause.
_____ Prepare Citation and return for out-of-county service
_____ Prepare Citation and have Defendant(s) served by
        Sheriff's office.
_____ Prepare citation and serve Defendant(s) by Certified
        Mail, Return Receipt Requested.

9/6/00
DPOK
$210.00 CK0530
me

_____
Attorney's Signature

A TRUE COPY I CERTIFY
AURORA DE LA GARZA, CLERK
DISTRICT COURT, CAMERON COUNTY, TEXAS
BY _____