3'

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

FEB 2 8 2002

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| CARLOS RUBINSTEIN | § | |
| Plaintiff | § | |
| | § | |
| vs. | § | |
| | § | |
| CITY OF BROWNSVILLE, TEXAS | § | CIVIL ACTION NO. B-00-169 |
| & CITY COMMISSIONERS | § | |
| ERNIE HERNANDEZ, CARLTON "BUD" | § | |
| RICHARDS, & HARRY McNAIR, | § | |
| Individually & Officially | § | |
| Defendants | § | |

## MOTION TO DISMISS OR FOR PARTIAL SUMMARY JUDGMENT
## RELATING TO PLAINTIFF'S STATUTORY WHISTLEBLOWER CLAIM

May it Please the Court:

COMES NOW the CITY OF BROWNSVILLE, TEXAS, as well as individually named DEFENDANTS, ERNIE HERNANDEZ, CARLTON "BUD" RICHARDS, and HARRY McNAIR, (hereafter " CITY DEFENDANTS"), and file this dispositive motion against Plaintiff's statutory whistleblower causes of action asserted by Plaintiff in his live pleading before this Court.

### NATURE OF LAWSUIT

This is an employment related action arising out of the involuntary termination of Plaintiff's employment with the DEFENDANT CITY OF BROWNSVILLE, TEXAS as the CITY's chief executive officer, a position typically referred to as the City Manager.

Plaintiff contends that the termination of his employment was wrongful in that it was illegally motivated by the three individually named DEFENDANTS herein, all of whom voted to terminate Plaintiff's employment with the CITY OF BROWNSVILLE.

## PROCEDURAL POSTURE OF THE CASE

The live pleading before the Court is Plaintiff's Third Amended Original Complaint, which was filed on or about March 19, 2001.

The parties have exchanged fairly exhaustive written discovery requests consisting of admission, interrogatories, and document production. Further, the parties have recently completed deposition discovery of the named parties to this litigation. This particular motion, however, addresses only a questions of law as to the statutory whistleblower cause of action.

## CLAIMS AND CAUSES OF ACTION BY PLAINTIFF

Plaintiff's live pleadings before the Court contain the following state and federal claims and causes of action arising out of the termination of Plaintiff's employment as City Manager:

1. that the CITY DEFENDANTS violated Title VII of the Civil Rights Act of 1964, as amended in that they discriminated and retaliated against Plaintiff because of his race and religion (Jewish);

2.  that the CITY DEFENDANTS violated the First Amendment
    of the U.S. Constitution (freedom of religion and
    freedom of association clause) as well as the
    analogous clauses contained in the Texas Constitution;

3.  that the CITY DEFENDANTS violated the Due Process
    clause of the Fourteenth Amendment to the U.S.
    Constitution by maligning his good name, thereby
    depriving him of a liberty interest; and,

4.  that the CITY DEFENDANTS violated the Texas
    Whistleblower Act (Chapter 554, Texas Gov't Code) and
    the equivalent common law cause of action for
    whistleblower under *Sabine Pilot*

5.  state common law claim for intentional infliction of
    emotional distress.

*See* Plaintiff's Third Amended Original Complaint at p. 2.

Plaintiff has already conceded that the Title VII claim, the

statutory whistleblower claim, and the Texas Constitution claim

do not run against the individual defendants, and these claims

have been dismissed. *See* Court Order dated January 30, 2002.

### ISSUE TO BE RULED ON IN THIS DISPOSITIVE MOTION

The scope of this motion, which addresses pure questions of

law, is limited to Plaintiff's cause of action brought under the

the Texas Whistleblower Act claim, brought pursuant to Chapter

554, Texas Local Gov't Code.

The thrust of this motion is that Plaintiff's Chapter 554

claim is time barred as a matter of law and should be dismissed

for failure to meet a statutory limitations filing period.

## EXHIBITS RELEVANT TO THIS MOTION

The following authenticated exhibits are hereby submitted in support of this Motion:

A.  Relevant deposition testimony of Plaintiff Carlos Rubinstein, including certain deposition exhibits;

B.  Affidavit testimony of Lidia Gonzalez, HR Director;

C.  Chapter 554, Texas Gov't Code (Texas Whistlblower Statute).

## RELEVANT UNDISPUTED FACTS TO THIS MOTION

For purposes of this Motion, which is based a statutory bar, the relevant material facts are the following:

1.  that Plaintiff was the duly appointed City Manager from March 1997 through January 6, 2000, at which time he was involuntarily terminated [Exh. A, Rubinstein Depo at p. 9 & Depo Exh. A-9;

2.  that Plaintiff did not initiate this lawsuit against the CITY DEFENDANTS until September 9, 2000;[1]

3.  that the CITY OF BROWNSVILLE does not have any applicable grievance procedure under which a Charter appointed City Manager may submit a whistleblower grievance [Exh. B, Gonzalez Affidavit];

---

[1]  CITY DEFENDANTS requests that the Court take judicial notice pursuant to Fed.R.Evid. 201, of the contents of the Court's file and specifically the date on which Plaintiff filed his Original Petition in this cause, that is, September 9, 2000.

City Defendants' Motion to Dismiss and For Partial Summary
Judgment On Plaintiff's Whistleblower Claim                          Page 4

4.    that Plaintiff did not invoke, or attempt to invoke, any
      form of administrative grievance procedure in connection
      with his involuntary termination between January 6, 2000
      and September 9, 2000.   There was no procedure to invoke
      for the City Manager position.   *See* Exh. A, Rubinstein Depo
      at pp. 9-10; 21-22; *see also* Exh. B, Gonzalez Affidavit.

5.    that there are no contractual terms of employment that
      would sidestep or render void, the statutory deadlines
      addressed in this motion - [Exh. A.1 through A.4].

### LEGAL ARGUMENT & ANALYSIS

**I.    Plaintiff Did Not Timely File His Claim Under Chapter 554,
        Texas Local Gov't Code and This Claim is Time Barred.**

There is no dispute that the CITY OF BROWNSVILLE, acting
through a majority vote of its CITY COMMISSIONERS, involuntarily
terminated Plaintiff from his position as City Manager on
January 6, 2000.

It is further undisputed that Plaintiff did not file this
lawsuit until September 6, 2000, seven months after the last
possible adverse action about which Plaintiff complains.

As with Title VII, Plaintiff's claims against the individual
DEFENDANTS under the Texas Whistleblower Act must fail as a
matter of law.   The Whistleblower Act, provides, in pertinent
part, as follows:

City Defendants' Motion to Dismiss and For Partial Summary
Judgment On Plaintiff's Whistleblower Claim                      Page 5

Except as provided by Section 554.006, a public employee who seeks relief under this chapter must sue not later than the 90th day after the date on which the alleged violation of this chapter:

(1) occurred; or

(2) was discovered by the employee through reasonable diligence.

Section 554.005, Texas Local Gov't Code. In other words, the generic deadline for bringing a statutory whistleblower claim as per the statute itself is ninety days from the date of the last alleged violation, here, Plaintiff's involuntary termination on January 6, 2000.

Unless Plaintiff can demonstrate that the deadline for bringing his statutory whistleblower action is somehow tolled, this cause of action would be time barred as a matter of law.

## II. There Is No Applicable Tolling Provision That Would Preclude Summary Judgment on the Whistleblower Cause of Action.

Section 554.006 allows for a tolling provision if the employing government agency provides for an administrative grievance procedure. It provides, in pertinent part, that Section 554.006 provides as follows:

b) The employee must invoke the applicable grievance or appeal procedures not later than the 90th day after the date on which the alleged violation of this chapter:

(1) occurred; or

City Defendants' Motion to Dismiss and For Partial Summary
Judgment On Plaintiff's Whistleblower Claim                    Page 6

2) was discovered by the employee through reasonable diligence.

(c) Time used by the employee in acting under the grievance or appeal procedures is excluded, except as provided by Subsection (d), from the period established by Section 554.005.

This provision provides for a limited tolling provision **if** the governing body has an applicable grievance procedure and **if** the aggrieved employee invokes the procedure within the applicable ninety day deadline contained in Section 554.005.

Here, although the CITY has a procedure that could be invoked, it does not apply to the position of the City Manager. In short, the CITY OF BROWNSVILLE does not have in place an administrative grievance procedure that Plaintiff, as City Manager, could have employed. *See* Affidavit of Lidia Gonzalez, HR Director, attached as Exhibit "A."

Under the City Charter, the City Manager is both hired and fired directly by the CITY COMMISSION, by majority vote. *See* City Charter, Art. V, §20, as amended, attached as Exhibit "B." Because the City Manager is already answerable to the highest authorit within the CITY's administrative structure, there is by definition no applicable tolling provision that would allow

Plaintiff to sidestep the general ninety day tolling period established by Section 554.005.

Again, because of the general ninety day deadline applicable to this statutory cause of action, and because Plaintiff clearly did not file his lawsuit within this deadline, this cause of action should be dismissed.

## CONCLUSION

Therefore, based on the foregoing arguments and authorities, and because Plaintiff's statutory whistleblower cause of action under Chapter 554, Texas Gov't Code is barred by statute as a matter of law. The individual DEFENDANTS further request pray for such other and further relief, at law or in equity, to which they may show themselves justly entitled.

SIGNED on the 28th day of February, 2002.

Respectfully Submitted,

**DENTON, NAVARRO & BERNAL**
A Professional Corporation
Bank of America Building
222 E. Van Buren, Suite 405
Harlingen, Texas 78550
956/421-4904
956/421-3621 (Fax)

By: _Ricardo J. Navarro_
RICARDO J. NAVARRO
Attorney In Charge
State Bar No. 14829100
So. Dist. ID No. 5953

City Defendants' Motion to Dismiss and For Partial Summary
Judgment On Plaintiff's Whistleblower Claim                    Page 8

## CERTIFICATE OF SERVICE

I certify that a true copy of this document has been sent by first class U.S. Mail, postage prepaid, unless otherwise indicated, to the persons listed below on the _28th_ day of February, 2002.

Mr. Ed McAninch                    **CMRRR NO 7001 1940 0007 5864**
LAW OFFICES OF EDWIN L. MCANINCH, P.C.
507 Fall River Road
Houston, Texas 77024-5613
COUNSEL FOR PLAINTIFF

RICARDO NAVARRO

City Defendants' Motion to Dismiss and For Partial Summary
Judgment On Plaintiff's Whistleblower Claim                    Page 9

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| CARLOS RUBINSTEIN | § | |
| Plaintiff | § | |
| | § | |
| vs. | § | |
| | § | |
| CITY OF BROWNSVILLE, TEXAS | § | CIVIL ACTION NO. B-00-169 |
| & CITY COMMISSIONERS | § | |
| ERNIE HERNANDEZ, CARLTON "BUD" | § | |
| RICHARDS, & HARRY MCNAIR, | § | |
| Individually & Officially | § | |
| Defendants | § | |

**INDEX TO EXHIBITS IN SUPPORT OF CITY DEFENDANTS'
MOTION TO DISMISS OR FOR PARTIAL SUMMARY JUDGMENT
RELATING TO PLAINTIFF'S STATUTORY WHISTLEBLOWER CLAIM**

The following exhibits are hereby submitted in support of the above entitled motion and should be deemed to be incorporated for all purposes therein:

A.   Relevant deposition testimony of Plaintiff Carlos Rubinstein

    1.   Depo Exh. D-4; City Charter Provisions;

    2.   Depo Exh. D-6; Section 704 and 705, Personnel Polices;

    3.   Depo Exh. D-7; Rubinstein Terms of Employment;

    4.   Depo Exh. D-9; Personnel Action Notice dated 1/6/2000

B.   Affidavit testimony of Lidia Gonzalez, HR Director;

C.   Chapter 554, Texas Gov't Code (Texas Whistlblower Statute)

    SIGNED on the 28th day of February, 2002.

Index to Exhibits in Support of City Defendants'
Motion to Dismiss and For Partial Summary
Judgment On Plaintiff's Whistleblower Claim                    Page 1

Respectfully Submitted,

**DENTON, NAVARRO & BERNAL**
A Professional Corporation
Bank of America Building
222 E. Van Buren, Suite 405
Harlingen, Texas 78550
956/421-4904
956/421-3621 (Fax)

By: _Ricardo J. Navarro_
RICARDO J. NAVARRO
Attorney In Charge
State Bar No. 14829100
So. Dist. ID No. 5953

## CERTIFICATE OF SERVICE

I certify that a true copy of this document has been sent by first class U.S. Mail, postage prepaid, unless otherwise indicated, to the persons listed below on the 28th day of February, 2002.

Mr. Ed McAninch          **CMRRR NO 7001 1940 0007 5864**
LAW OFFICES OF EDWIN L. MCANINCH, P.C.
507 Fall River Road
Houston, Texas 77024-5613
COUNSEL FOR PLAINTIFF

_Ricardo J. Navarro_
RICARDO NAVARRO

Index to Exhibits in Support of City Defendants'
Motion to Dismiss and For Partial Summary
Judgment On Plaintiff's Whistleblower Claim                    Page 2

**EXHIBIT "___A___"**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

CARLOS RUBINSTEIN            ) (
        Plaintiff            ) (
                             ) (
VS.                          ) (    CIVIL ACTION NO. B-00-169
                             ) (
CITY OF BROWNSVILLE,         ) (
ET. AL.                      ) (
        Defendants           ) (

ORAL DEPOSITION OF
CARLOS RUBINSTEIN
JANUARY 24, 2002

# ORIGINAL

ORAL DEPOSITION OF CARLOS RUBINSTEIN, produced

as a witness at the instance of the DEFENDANTS, taken

in the above styled and numbered cause on JANUARY 24,

2002, reported by DONNA McCOWN, Certified Court

Reporter No. 6625, in and for the State of Texas, at

the offices of Denton, Navarro & Bernal, 222 East Van

Buren Street, Suite 405, Harlingen, Texas, pursuant to

the Federal Rules of Civil Procedure.

2.

## APPEARANCES

COUNSEL FOR PLAINTIFF:

    EDWIN L. McANINCH
    LAW OFFICE OF EDWIN L. McANINCH
    507 Fall River Road
    Houston, Texas  77024

COUNSEL FOR DEFENDANTS:

    RICARDO J. NAVARRO
    DENTON, NAVARRO & BERNAL
    222 East Van Buren Street, Suite 405
    Harlingen, Texas  78550

ALSO PRESENT:
    Harry McNair
    Carlton "Bud" Richards

## INDEX

|  | PAGE |
|---|---|
| Appearances ..................................... | 2 |
| CARLOS RUBINSTEIN | |
| Examination by Mr. Navarro ...................... | 4 |
| Errata Sheet/Signature Page ..................... | 176 |
| Reporter's Certificate .......................... | 177 |

Attached to the end of the transcript:  Stipulations

## EXHIBITS

| NUMBER | DESCRIPTION | PAGE IDEN. |
|---|---|---|
| 1 | Third Amended Complaint ................. | 5 |
| 2 | Objections and Responses to Written Questions .............................. | 6 |
| 3 | Objections and Responses to Requests for Admissions .............................. | 6 |
| 4 | Portions of City Charter ................ | 7 |
| 5 | Personnel Policies, 1978 ................ | 8 |

BRYANT & STINGLEY, INC.
McAllen     Harlingen     Brownsville
(956)618-2366  (956)428-0755  (956)542-1020

## EXHIBITS (Cont.)

| NUMBER | DESCRIPTION | PAGE IDEN. |
|--------|-------------|------------|
| 6 | Personnel Policies, Revision, 1998 ...... | 8 |
| 7 | Terms of Employment .................... | 20 |
| 8 | Personnel Action Form, Raise ........... | 21 |
| 9 | Personnel Action Form, Termination ...... | 22 |
| 10 | Letter, 11-10-95, to City Manager Vega .. | 53 |
| 11 | Draft of Press Briefing ................ | 73 |
| 12 | Letter, 9-9-98, Commissioner Hernandez .. | 101 |
| 13 | Grievance, 9-17-98 ..................... | 106 |
| 14 | Statement, 12-28-99 .................... | 140 |
| 15 | Letter, 12-6-99, from Mayor Vela ........ | 148 |
| 16 | Letter, 12-3-99, to Mayor Vela ......... | 148 |
| 17 | Letter, 1-4-00, to Mayor Vela .......... | 149 |
| 18 | Notice of Claim ........................ | 150 |
| 19 | Charge of Discrimination ............... | 151 |
| 20 | Dismissal and Notice of Rights ......... | 151 |

4

CARLOS RUBINSTEIN,

having been duly sworn, testified as follows:

EXAMINATION

BY MR. NAVARRO:

13:06:09    Q.  Good afternoon, Mr. Rubinstein.

13:06:10    A.  Good afternoon.

13:06:12    Q.  Your full name is Carlos Rubinstein?

13:06:15    A.  That is correct.

13:06:16    Q.  And you understand that we're here today in
13:06:19 connection with a lawsuit filed by you against the city
13:06:24 of Brownsville, Texas; is that correct?

13:06:26    A.  That's correct.

13:06:27    Q.  All right.  And you've been deposed before?

13:06:30    A.  I have.

13:06:30    Q.  All right.  And so you've been familiar with
13:06:35 the deposition process, correct?

13:06:36    A.  I am.

13:06:39    Q.  Okay.  I'm going to be asking you today a
13:06:41 series of questions about your lawsuit and about the
13:06:47 claims made in the legal pleadings prepared by your
13:06:52 attorney.  You understand that?

13:06:53    A.  I do.

13:06:54    Q.  And my questions are going to focus on the
13:06:58 factual aspects of your claims.  Okay?

13:07:01    A.  Okay.

13:07:03  1      Q.  I will try to make my questions as brief and

13:07:06  2    clear and straightforward as possible, but if for some

13:07:11  3    reason they don't seem that way to you, will you let me

13:07:14  4    know so that I can rephrase the question?

13:07:17  5      A.  Absolutely.

13:07:18  6      Q.  Okay.  And part of the reason for that is that

13:07:20  7    in this deposition, I want to be able to rely on the

13:07:24  8    answers that you give to my questions.  You understand

13:07:26  9    that?

13:07:26 10      A.  I understand.

13:07:27 11      Q.  Okay.  And so it's important that the answers

13:07:31 12    to the questions -- that you understand the questions

13:07:33 13    so that the answers you give can be relied upon by me

13:07:36 14    and the court.  Okay?

13:07:38 15      A.  Okay.

13:07:38 16      Q.  All right.  I think that judging from the

13:07:44 17    pleadings -- and maybe what we should do first is kind

13:07:47 18    of go through these documents that I've marked.  It

13:07:51 19    will help us move through this a little more quickly.

13:07:54 20          I have marked as Rubinstein Exhibit 1 the

13:08:05 21    third amended complaint, and it's my understanding this

13:08:09 22    is the live complaint, the active complaint in the

13:08:12 23    lawsuit as we sit here today.  Okay.  Do you understand

13:08:16 24    that?

13:08:17 25      A.  That's my understanding.

13:08:18 1    Q.  All right.  And this is a document that's

13:08:22 2  prepared by your counsel, correct?

13:08:24 3    A.  Correct.

13:08:25 4    Q.  The second exhibit, which is marked as

13:08:28 5  Rubinstein 2, is a copy of your responses -- your

13:08:35 6  lawyer's objections and your responses to a series of

13:08:40 7  written questions about the lawsuit.  You understand

13:08:43 8  that?

13:08:43 9    A.  Yes, I do.

13:08:44 10   Q.  And if you'll go through it and just kind of

13:08:48 11 make sure you're comfortable that that's a copy of the

13:08:51 12 document.

13:09:02 13   A.  It appears to be a correct copy.

13:09:07 14   Q.  Okay.  The third document is a set of lawyer

13:09:14 15 objections and responses to a series of what are called

13:09:19 16 requests for admissions, and this is a document that's

13:09:23 17 prepared by your lawyer, but I may have some questions

13:09:25 18 off of this to follow up on some of the denials that

13:09:28 19 are in this document.  Okay?

13:09:30 20   A.  I understand.

13:09:30 21   Q.  Have you seen this document before?

13:09:32 22   A.  Yes, I have.

13:09:33 23   Q.  Okay.  We'll go through it in more detail later

13:09:36 24 on.  And that's marked as Rubinstein Deposition Exhibit

13:09:42 25 No. 3.

13:09:43 1     A.  Correct.

13:09:45 2     Q.  Okay.  The fourth document is the pertinent

13:09:50 3  portions of the city charter as they relate to the city

13:09:55 4  manager position.

13:09:58 5         If as we talk about this some more you

13:10:00 6  feel that there are other portions of the charter that

13:10:04 7  apply or that are not contained here that we need, I

13:10:08 8  can get those.  Okay?

13:10:10 9     A.  Understood.

13:10:11 10     Q.  But my review of the city charter reflects that

13:10:15 11  it's basically the Article V Section 19 and 20 and 21

13:10:24 12  that address some of the duties and responsibilities

13:10:26 13  and other matters related to the city manager position.

13:10:30 14  Is that your understanding?

13:10:34 15     A.  As it relates to the provisions within the

13:10:37 16  charter, that is my understanding.

13:10:39 17     Q.  Okay.  And just for clarification, in reviewing

13:10:44 18  some of the amendments to the charter, there's a

13:10:48 19  document at the very back which is Proposition 8, which

13:10:53 20  is an amendment to one section of that charter that

13:10:56 21  relates to the city manager.  Do you see that?

13:11:01 22     A.  I see it.

13:11:02 23     Q.  Are you familiar with that?

13:11:04 24     A.  I believe so.

13:11:04 25     Q.  Okay.  And if we need to look at source

BRYANT & STINGLEY, INC.
McAllen      Harlingen      Brownsville
(956)618-2366   (956)428-0755   (956)542-1020

13:11:08 1   documentation to confirm things, we can, but I'll

13:11:11 2   represent to you that just in order to save paper, I

13:11:15 3   just selected the portions of the charter that I think

13:11:18 4   are at issue here today.  Okay?

13:11:20 5       A.  Understood.

13:11:25 6       Q.  Okay.  Also I have provided a complete copy of

13:11:30 7   two other documents that I think will be important for

13:11:33 8   our discussion today.  One is marked as Exhibit D-5,

13:11:39 9   and that's the personnel policies that are dated June

13:11:43 10  of 1978.

13:11:45 11      A.  Correct.

13:11:45 12      Q.  All right.  And you recognize those policies

13:11:47 13  from when you were with the city, correct?

13:11:50 14      A.  Yes, I do.

13:11:52 15      Q.  Okay.  And then finally, there's a set of

13:11:54 16  personnel policies marked as D-6 that relates to, I

13:12:00 17  guess, a fairly comprehensive revision that took effect

13:12:05 18  in 1980 --

13:12:07 19      A.  1998.

13:12:08 20      Q.  1998, correct?

13:12:10 21      A.  Let me look at this real quick.  Correct.

13:12:26 22      Q.  Okay.  And do you recognize that document?

13:12:28 23      A.  Yes, I do.

13:12:29 24      Q.  All right.  Okay.  Now, there may be other

13:12:58 25  exhibits that we'll mark as we go along, but these are

13:13:08 1  exhibits that are going to definitely be part of our

13:13:08 2  question and answer today.  Okay?

13:13:08 3    A.  Understood.

13:13:09 4    Q.  All right.  Now, the next thing I would like to

13:13:10 5  do with you is that, again, in going through the

13:13:13 6  complaint, it appeared to me that the chronological

13:13:18 7  scope of the controversy kind of encompasses a fairly

13:13:24 8  broad period of time.

13:13:24 9        And I would like to ask you some questions

13:13:26 10  about your understanding and at least get some

13:13:31 11  perimeters on that so that when we're talking about

13:13:33 12  facts and things that happened, we can kind of be

13:13:36 13  oriented as to what periods of time we're talking

13:13:38 14  about.  Okay?

13:13:39 15    A.  Understood.

13:13:41 16    Q.  It appears to me that you were hired by the

13:13:44 17  city commission as the city manager effective March 1

13:13:49 18  of 1997; is that correct?

13:13:52 19    A.  That's correct.

13:13:53 20    Q.  And then you were officially terminated by

13:13:56 21  action of the city commission on January 6th of the

13:14:02 22  year 2000.

13:14:03 23    A.  Correct.

13:14:03 24    Q.  All right.  So insofar as your complaints

13:14:09 25  involving your city manager tenure, that would be the

13:14:13 1    outer perimeters of that time period, correct?

13:14:17 2       A.  I would agree.

13:14:19 3       Q.  All right.  And for the benefit of the court

13:14:20 4    and the jury and just to make sure we have all the

13:14:24 5    context here, you actually were a city employee prior

13:14:26 6    to being the city manager.

13:14:28 7       A.  That is correct.

13:14:30 8       Q.  All right.  By several years I think; is that

9    right?

13:14:33 10       A.  On two different occasions, yes, by several

11    years.

13:14:36 12       Q.  Prior to being city manager, you were working

13:14:39 13    as a department head director?

13:14:42 14       A.  That's correct.

13:14:42 15       Q.  Okay.  For the health department?

13:14:45 16       A.  Health and permitting, and just prior to the

13:14:48 17    appointment of city manager, I was the interim

13:14:52 18    operations manager for the city of Brownsville.

13:14:55 19       Q.  Okay.  And so how many years were you -- how

13:14:58 20    many years of experience with the city of Brownsville

13:14:59 21    did you have prior to becoming city manager?

13:15:04 22       A.  The first tenure started in 1983.  I was health

13:15:08 23    director from '83 to '89.  About '87 I also assumed the

13:15:15 24    responsibilities of EMS director.

13:15:18 25       I left city employment in late '89.  I

BRYANT & STINGLEY, INC.
McAllen        Harlingen       Brownsville
(956)618-2366   (956)428-0755   (956)542-1020

13:15:21  1    believe it was December of '89.  I returned to the city

13:15:23  2    in 1995, late November, early December.  I served from

13:15:29  3    '95 to December of '96, I believe, as health and

13:15:35  4    permitting director and then operations manager and

13:15:38  5    then finally city manager.

13:15:39  6        Q.  Okay.  In the capacities in which you worked

13:15:41  7    for the city prior to city manager then, it sounds to

13:15:45  8    me like you were at a department head level in

13:15:51  9    connection with your duties.

13:15:52 10        A.  That is correct.

13:15:53 11        Q.  And as a department head, you would have been

13:15:56 12    in the organizational chart, I guess, one level down

13:16:00 13    from the city manager.

13:16:04 14            MR. McANINCH:  Objection, form.

13:16:06 15        Q.  Is that correct?

13:16:07 16        A.  I would agree with that.

13:16:10 17        Q.  Okay.  And again, just to make sure that we're

13:16:13 18    on the same page of this, would you agree with me that

13:16:17 19    for -- that the city of Brownsville is a home-rule city

13:16:22 20    under Texas law?

13:16:24 21            MR. McANINCH:  Objection, form.

13:16:25 22            THE WITNESS:  That's my understanding.

13:16:27 23        Q.  Okay.  And that's all I want is your

13:16:28 24    understanding on these things.  And that the city is --

13:16:34 25    the policymakers consist of a mayor and commissioners

13:16:38  1    who form the governing board of the city.

13:16:41  2        A.  Correct.

13:16:41  3        Q.  All right.  And all of these individuals, the

13:16:44  4    mayor and commissioners, are placed in those positions

13:16:50  5    through elections.

13:16:52  6        A.  That is correct.

13:16:53  7        Q.  All right.  And so the citizens or residents of

13:16:56  8    the city of Brownsville elect their governing body.

13:16:59  9        A.  That's correct.

13:17:00 10        Q.  Now, is it also correct that the city of

13:17:03 11    Brownsville is a -- has a form of government that is a

13:17:07 12    city manager form of government?

13:17:09 13        A.  That's correct.

13:17:10 14        Q.  So that under the mayor and commissioners, you

13:17:17 15    have what amounts to an executive director or a general

13:17:19 16    manager or in the case of this municipality, a city

13:17:24 17    manager who is at the top of the organizational chart.

13:17:28 18        A.  Correct.

13:17:30 19        Q.  And is it correct that the city manager --

13:17:33 20    we're going to talk in more detail about what the city

13:17:36 21    manager's duties are, but generally speaking, the city

13:17:39 22    manager is a full-time employee of the city of

13:17:43 23    Brownsville, correct?

13:17:44 24        A.  That is correct.

13:17:45 25        Q.  And that city manager oversees the day-to-day

13:17:48 1    operations of the municipality.

13:17:51 2        A.   That is correct.

13:17:54 3        Q.   Obviously, the city of Brownsville is a fairly

13:17:57 4    large city, and the city manager could not run it by

13:18:00 5    himself or herself.

13:18:01 6             And so under the city manager, there's a

13:18:04 7    series of departments that are organized as part of the

13:18:08 8    administrative structure.

13:18:09 9        A.   That's correct.

13:18:10 10       Q.   And in those departments, each of those

13:18:12 11   departments has a department head or a department

13:18:16 12   director.

13:18:17 13       A.   Correct.

13:18:21 14       Q.   And those directors are there to assist the

13:18:23 15   city manager in overseeing and fulfilling, you know,

13:18:29 16   the duties and obligations of the various departments

13:18:34 17   of the city, whatever those might be, from time to

13:18:36 18   time.

13:18:37 19       A.   Correct.

13:18:37 20       Q.   All right.  And in fact, you were a department

13:18:41 21   head in connection with the health department and EMS

13:18:45 22   services at one time.

13:18:47 23       A.   Correct.

13:18:47 24       Q.   All right.  And then, of course, under those

13:18:52 25   departments, there are the different levels of

13:18:54  1    employees who are charged with different

13:18:56  2    responsibilities depending on the nature of the

13:19:00  3    department, correct?

13:19:01  4        A.  Correct.

13:19:06  5        Q.  And during the time that you were city manager,

13:19:09  6    it's my understanding that the city had about 800

13:19:15  7    employees.  What is your recollection?

13:19:18  8        A.  I recall between 8 and 900 employees.

13:19:20  9        Q.  Okay.  And the 8 and 900 would include all

13:19:32 10    full-time employees of the city, correct?

13:19:32 11        A.  Correct.

13:19:32 12        Q.  All right.  And that would also include all

13:19:32 13    employees up to and including the city manager.

13:19:34 14        A.  That is correct.

13:19:34 15        Q.  All right.  Now, would you also agree with me

13:19:44 16    that the city manager would also have some say and

13:19:50 17    control over the administrative structure of the city

13:19:54 18    government, in other words, what kinds of departments

13:19:56 19    to have or how the departments should be organized?

13:20:00 20        A.  Yes, I would say he would have some say-so in

13:20:02 21    that.

13:20:03 22        Q.  And depending on what specific types of

13:20:07 23    organization the city manager in his or her

13:20:11 24    professional judgment thought worked best, there may be

13:20:15 25    some communication and input with the mayor and

BRYANT & STINGLEY, INC.
McAllen          Harlingen          Brownsville
(956)618-2366   (956)428-0755   (956)542-1020

13:24:05 1    complaint, it's my impression that you have no

13:24:12 2    complaints -- that prior to your being hired or placed

13:24:29 3    as the city manager, there's no -- this lawsuit does

13:24:32 4    not include any complaints prior to your holding the

13:24:35 5    position of city manager.

13:24:36 6        A.  I would agree.

13:24:37 7        Q.  All right.  And so we don't have to worry about

13:24:42 8    anything having to do with you prior to being city

13:24:44 9    manager.

13:24:45 10        A.  It's not part of the complaint.

13:24:46 11        Q.  All right.  In connection with your position as

13:24:55 12    city manager, I'd like to talk about what your

13:25:01 13    understanding is of the applicable documents that set

13:25:08 14    out the obligations and duties and responsibilities of

13:25:13 15    the city manager.  Okay?

13:25:15 16        A.  Okay.

13:25:17 17        Q.  Would you agree with me that one place you

13:25:20 18    would look would be in the city charter?

13:25:22 19        A.  Yes.

13:25:23 20        Q.  And we had previously marked as D-4 the city

13:25:27 21    charter, and there's specifically some Article V

13:25:34 22    Section 20 and Section 21 that discusses or lays out

13:25:45 23    what the duties and obligations of the city manager

13:25:47 24    are.

13:25:48 25        A.  Within the charter, yes.

BRYANT & STINGLEY, INC.
McAllen       Harlingen      Brownsville
(956) 618-2366   (956) 428-0755   (956) 542-1020

13:25:50 1    Q.  Okay.  And then there's that one amendment,

13:25:52 2  which I'll represent to you occurred in '93, I believe,

13:25:56 3  that also is an addition to Article V Section 20.

13:26:00 4    A.  Okay.

13:26:01 5    Q.  Okay.  So would you agree with me that insofar

13:26:07 6  as what's in the charter, these would be the pertinent

13:26:10 7  provisions?

13:26:11 8              MR. McANINCH:  Objection, form.

13:26:11 9    Q.  As best you understand.

13:26:13 10             MR. McANINCH:  Same objection.

13:26:14 11             THE WITNESS:  There may be other

13:26:15 12  provisions within the charter if not within the

13:26:17 13  ordinances themselves that also place some deliverables

13:26:21 14  or requirements upon the city manager, and I'm thinking

13:26:23 15  primarily on the financial aspect of managing the city.

13:26:28 16    Q.  Okay.  Fair enough.  Yeah.  You're talking

13:26:30 17  about other potential references to what the city

13:26:40 18  manager does or doesn't do in other parts of the

13:26:40 19  charter that you would also have to look at?

13:26:41 20    A.  Or within the Code of Ordinances.

13:26:43 21    Q.  Or within the Code of Ordinances as well.

13:26:45 22    A.  Correct.

13:26:45 23    Q.  Okay.  But generally speaking, the provisions

13:26:48 24  that are contained in Exhibit 4 there would be a

13:26:51 25  starting point for that.

13:26:53 1      A.  I would agree.

13:26:54 2      Q.  All right.  Now, is it your position that your

13:27:07 3  appointment as city manager was at-will?

13:27:14 4          MR. McANINCH:  Objection, form.

13:27:15 5          THE WITNESS:  Can you elaborate on that,

13:27:18 6  please?

13:27:19 7      Q.  Well, what is your understanding of the status

13:27:22 8  of -- your status as city manager while you were there

13:27:25 9  in terms of whether or not it was at-will or not?

13:27:29 10         MR. McANINCH:  Same objection, form.

13:27:31 11         THE WITNESS:  The city manager was hired

13:27:32 12 and fired by the city commission.

13:27:37 13     Q.  Okay.  Were you -- did you have any kind of an

13:27:41 14 employment contract with the city when you were hired?

13:27:44 15     A.  I had a terms of employment agreement with the

13:27:46 16 city.

13:28:06 17     Q.  Okay.  Let me show you what I have marked as

13:28:14 18 Exhibit 7 and ask whether you recognize this document.

13:28:31 19         MR. NAVARRO:  Let me see if I have another

13:28:33 20 copy, Counsel.  It's in this packet here.

13:29:09 21     Q.  I've handed you what I've marked as D-7, which

13:29:13 22 is a cover memo from you to Lidia Gonzalez, the acting

13:29:21 23 HR director at the time, dated March 26, '97.

13:29:25 24     A.  Correct.

13:29:26 25     Q.  And then a resolution which appears to have

13:29:31 1    addressed your employment and a terms of employment

13:29:39 2    document behind that.

13:29:43 3        A.  Correct.

13:29:45 4        Q.  Is that the terms of employment that you're

13:29:48 5    referring to?

13:29:50 6        A.  Yes, I am.

13:29:52 7        Q.  Okay.  And this is a document that would have

13:29:55 8    been put in effect at the time you were hired.

13:29:57 9        A.  Correct.

13:29:58 10       Q.  Okay.  So is it your position that this

13:30:00 11   document is part of your employment relationship with

13:30:03 12   the city?

13:30:04 13       A.  Yes, it is.

13:30:29 14       Q.  Okay.  By the way, let me go ahead and mark in

13:30:39 15   connection with that as Exhibit D-8 a personnel action

13:30:47 16   form that appears to be a raise that took place in '99.

13:30:57 17       A.  Correct.

13:30:59 18       Q.  Okay.  And that reflects -- would that be the

13:31:05 19   first raise that you received as the city manager?

13:31:07 20       A.  Correct.

13:31:08 21       Q.  Okay.  And so you had initially been hired at

13:31:11 22   80,000 annual, correct?

13:31:14 23       A.  Correct.

13:31:15 24       Q.  And then you were raised to 87,5 on June 3,

13:31:23 25   '99?

13:31:24 1     A.   2nd.

13:31:25 2     Q.   2nd, '99?

13:31:26 3     A.   Correct.

13:31:36 4     Q.   Let me go ahead and also mark as Exhibit 9

13:31:46 5  another personnel action form that relates to your

13:31:53 6  termination; is that correct?

13:31:57 7     A.   This is the first time I've seen this document.

13:32:02 8     Q.   Okay.  Do you recognize the form as a personnel

13:32:05 9  action form?

13:32:06 10    A.   Yes, I do.

13:32:06 11    Q.   Okay.  And, you know, you as the city manager

13:32:10 12  would have had occasion to sign off on forms like this?

13:32:13 13    A.   Yes, I would have.

13:32:15 14    Q.   Okay.  And this particular form simply reflects

13:32:17 15  that your status with the city as city manager was

13:32:21 16  terminated.  It was effective June 6th of the year

13:32:25 17  2000.

13:32:28 18    A.   Correct.

13:32:28 19    Q.   All right.  And that at that time, your annual

13:32:33 20  pay was 87,5.

13:32:37 21    A.   Correct.

13:32:55 22    Q.   Okay.  What I want to ask you now is -- and

13:32:58 23  what I'm trying to ascertain is your understanding of

13:33:02 24  what documents and things govern the employment

13:33:06 25  relationship between you and the city of Brownsville.

1          IN THE UNITED STATES DISTRICT COURT
            FOR THE SOUTHERN DISTRICT OF TEXAS
2               BROWNSVILLE DIVISION

CARLOS RUBINSTEIN       ) (
3        Plaintiff     ) (
                     ) (
4  VS.                ) (  CIVIL ACTION NO. B-00-169
                    ) (
5  CITY OF BROWNSVILLE,   ) (
  ET. AL.            ) (
6        Defendants    ) (

7             REPORTER'S CERTIFICATE

8    I, Donna McCown, Certified Court Reporter, certify

9  that the witness, CARLOS RUBINSTEIN, was duly sworn by

10  me, and that the deposition is a true and correct

11  record of the testimony given by the witness on JANUARY

12  24, 2002; that the deposition was reported by me in

13  stenograph and was subsequently transcribed under my

14  supervision.

15    I FURTHER CERTIFY that I am not a relative,

16  employee, attorney or counsel of any of the parties,

17  nor a relative or employee of such attorney or counsel,

18  nor am I financially interested in the action.

19         WITNESS MY HAND on this the 30th day of

20  January        , 2002.

21

22                     _Donna McCown_
           DONNA McCOWN, CSR NO. 6625
23         Expiration Date: 12/31/03
          Bryant & Stingley, Inc.
24         2010 East Harrison
          Harlingen, Texas  78550
25

BRYANT & STINGLEY, INC.
McAllen       Harlingen      Brownsville
(956) 618-2366   (956) 428-0755   (956) 542-1020

# Code of Ordinances

CITY OF

# Brownsville, Texas

CHARTER

and

GENERAL ORDINANCES OF THE CITY

Adopted, December 9, 1971

Effective, January 1, 1972

PUBLISHED BY ORDER OF THE CITY COMMISSION



MUNICIPAL CODE CORPORATION

Tallahassee, Florida                    1972



Rubinstein

EXHIBIT NO. 4
1-24-02
Bryant & Stingley, Inc.

person exercising the duties of city clerk or city secretary, provided, ordinances which must be published before they are effective shall be recorded in said book immediately after publication thereof and there shall be recorded with such ordinance proof of publication of same in accordance with this Charter and the law, which shall constitute evidence of such publication.

### Section 19. Investigations by commission.

The commission may investigate the financial transactions of any office or department of the city government, and the acts and conduct of any official or employee. In conducting such investigation, the commission may compel the attendance of witnesses, the production of books and papers, and other evidence, and for that purpose may issue subpoenas or attachments which shall be signed by the mayor; which may be served and executed by any officer authorized by law to serve subpoenas or other process, or any peace officer of the city. If any witness shall refuse to appear or to testify to any facts within his knowledge, or to produce any papers, or books in his possession, or under his control, relating to the matter under investigation before the commission, the commission shall have the power to cause the witness to be punished for contempt, not exceeding a fine of one hundred dollars ($100.00) and three days in the city prison. No witness shall be excused from testifying, touching his knowledge of the matter under investigation in any inquiry, but such testimony shall not be used against him in any criminal prosecution except for perjury committed upon such inquiry.

### Section 20. City manager; his responsibilities and powers of appointment and removal; removal of officers and employees; and non-interference with appointments and removals.

The commission shall apppoint an officer whose title shall be city manager, and he shall be the chief executive officer and head of the administrative branch of the city government. The city manager shall be chosen by the commission solely on the basis of his executive and administrative qualifications

with special reference to his actual experience in or his knowledge of accepted practices in respect to his duties of the office as hereinafter outlined. At the time of his appointment he need not be a resident of the city or state, but during his tenure of office he shall reside within the city. No person elected to membership on the city commission shall, subsequent to such election, be eligible for appointment as city manager until one year has elapsed following the expiration of the term for which he was elected. The city manager shall be appointed for an indefinite term, but he may be removed by a majority vote of the members of the city commission on thirty days prior notice of their intention to remove him. The action of the city commission in removing the manager shall be final. In case of the absence of the manager, he may, with the approval of the city commission, designate a qualified administrative officer of the city to perform his duties during his absence, and absence shall include temporary disability on account of sickness, or otherwise.

The city manager shall be responsible to the city commission for the proper administration of all affairs of the city in his charge and to that end, except as otherwise provided in this Charter, and, subject to any provisions herein with reference to civil service, he shall have the power to appoint and remove all officers and employees in the administrative service of the city, except the city attorney, who shall be appointed by the city commission but the manager may authorize the head of a department or office, responsible to him to appoint and remove subordinates in such department or office. Appointments made by or under the authority of the city manager shall be on a basis of executive and administrative ability and of the training and experience of such employees in the work which they are to perform; all such appointments shall be without definite term.

Any officer or employee to whom the city manager, or the head of a department or office, may appoint a successor, may be removed by the city manager, or other appointing officer, at any time, but the decision and action of the manager with reference to appointments, as well as removals, shall be final and there shall be no appeal therefrom to any other office, body or court whatsoever.

The city commission and its members shall deal with the administrative service of the city solely through the city manager. Neither the city commission nor any of its members shall in any manner dictate the appointment or removal of any city administrative officers or employees whom the city manager or any of his subordinates are empowered to appoint, but the city commission may express its views and fully and freely discuss with the city manager anything pertaining to appointment and removal of such officers and employees. (Ord. No. 871, Prop. No. 4, 7-29-75)

Section 21. Duties of city manager; rights of manager and other officers at commission meetings; heads of departments and divisions thereof; investigation of city manager by city commission.

It shall be the duty of the city manager to act as chief conservator of the peace within the city; to supervise the administrative affairs of the city; to see that the ordinances of the city and laws of the state are enforced; to make such recommendations to the commission concerning the affairs of the city as may seem to him desirable; to keep the commission advised of the financial condition and needs of the city; to prepare and submit to the commission the annual budget estimate; to prepare and submit to the commission such reports as may be required by that body, and to perform such other duties as may be prescribed by this Charter.

The city manager shall be entitled to a seat in all commission meetings, but shall have no vote therein. On vote of the commission, the heads of all departments and such other officers of the city as may be designated by vote therefor, shall also be entitled to seats in the commission meeting, but shall have no vote therein. The matters coming before the commission meeting, and the heads of all departments and other officers shall be entitled to take part in all discussions of the commission relating to their respective departments and offices.

There shall be such departments as are established by this Charter and as may be established by ordinance. The city commission may change or abolish any department or office

Case 1:00-cv-00169 Document 39 Filed in TXSD on 02/28/2002 Page 38 of 60

established by ordinance, and may prescribe, distribute or discontinue the functions and duties of departments and offices so established. Additional functions and duties may be assigned by ordinance to departments and offices established by this Charter, but no function or duty assigned by this Charter to a specific department or office shall be discontinued or assigned to any other department or office by ordinance.

For each department there shall be an officer designated as the head, or director, thereof, who shall have the supervision and control thereof subject to approval by the city manager to whom such head, or director, shall be responsible and accountable. Each head, or director, shall subject to the approval of the city manager, have power to prescribe rules and regulations, not inconsistent with this Charter and the ordinances passed in pursuance thereof, for the conduct of the officers and employees of the department of which he is in charge, for the distribution and transaction of its business, and for the custody of the books, records, papers and property under its control. The work of each department shall be distributed among such divisions thereof as may be established by ordinance upon the recommendation of the manager, provided, that pending the passage of an ordinance, or ordinances, distributing the work of departments under the supervision and control of the city manager among specific divisions thereof, the city manager may establish temporary divisions.

The city commission, the city manager, or any person or committee authorized by either of them, to be compensated as provided by the city commission, shall have power to inquire into the conduct of any department, office, or officer of the city, and to make investigations as to municipal affairs, and for that purpose may subpoena witnesses, administer oaths and compel the production of books, papers and other evidence. Failure to obey such subpoena, or produce books, papers or other evidence as ordered under the provisions of this paragraph, shall constitute a misdemeanor and shall be punishable by a fine not to exceed $100.00 or by imprisonment not to exceed five days, or both.

## PROPOSITION #8

Shall Article V, Section 20, Paragraph 3, <u>City manager; his responsibilities and powers of appointment and removal; removal of officers and employees; and non-interference with appointments and removals</u>, of the Charter of the City of Brownsville be amended to read as follows:

All appointments and removals of officers and employees`shall be subject to the personnel policy adopted by the commission, except as otherwise provided by this Charter, or as provided by law.

## PROPOSITION #9

Shall Article V, Section 28, <u>Audit and examination; budget</u>, of the Charter of the City of Brownsville be amended to read as follows:

An audit shall be conducted after each fiscal year. All budget matters and the audit process shall conform to the laws of Texas. And, any budget shall be balanced upon adoption.

## PROPOSITION #10

Shall Article V, Section 29, <u>Contracts</u>, of the Charter of the City of Brownsville be amended to read as follows:

All contracts or purchases of the City are governed by the laws of Texas regarding competitive bidding with the exception that any required notice need only be advertised once and bids be awarded no sooner than ten (10) days thereafter.

## PROPOSITION #11

Shall Article V, Section 31, <u>Hours and conditions of labor</u>, of the Charter of the City of Brownsville be amended to read as follows:

Hours and conditions of labor are governed by all applicable federal, state, and city laws, ordinances, resolutions, and rules and regulations.

## PROPOSITION #12

Shall Article II, be amended by adding Section 15A, <u>Street Improvements</u>, to the Charter of the City of Brownsville to read as follows:

# PERSONNEL POLICIES MANUAL

*CITY OF BROWNSVILLE*



**CITY OF BROWNSVILLE**

**CITY HALL**

**P.O. BOX 911**

**BROWNSVILLE, TEXAS 78520**

**Adopted by Resolution of**

**The City Commission on**

**July 7, 1998**



EXHIBIT NO. 6

Bryant & Slingley, Inc.

29. Failing to report to supervisor upon returning from sickness or accident;

Certain of the actions described above are subject to criminal prosecution subject to Section 39.01 (titled "Official Misconduct") or other appropriate sections of the Texas Penal Code. All employees should be advised that the City may, but is not required, to pursue criminal charges in addition to disciplinary action as described in these guidelines.

It is not possible to list all rules of conduct, and the various forms of prohibited conduct identified in this Personnel Policies Manual are not necessarily all-inclusive of the reasons for which an employee may be disciplined or discharged. The City tries to avoid unnecessary restriction on your personal conduct because we feel certain that you will exercise common sense and follow the generally accepted customs of good taste. The degree of discipline imposed for a particular offense may vary, from an oral warning, to a written reprimand, to suspension or termination, depending on the circumstances.



## Section 704: Appeal of Disciplinary Action

### Actions which are appealable

All city employees have the right to appeal disciplinary actions including disciplinary terminations, which become a part of the employee's personnel record. "Personnel record" means the employee's permanent personnel file maintained in the Human Resources Department and any file maintained on the employee in the employee's department.

### Level One Appeal

An employee who wants to appeal disciplinary action must file a written statement within 5 working days with the employee's departmental director. The statement must set forth the nature and date of the disciplinary action taken, the name of the person who imposed the discipline, the reason why the employee believes the disciplinary action was not warranted, and the action which the employee wants taken if the employee's appeal is successful. The Department Director shall investigate the appeal and issue a written decision on the appeal within 7 working days of the Director's receipt of the appeal.

If the person who imposed the discipline is the employee's Department Director, the Level One appeal shall be directly to the City Manager who may delegate the investigation as if the appeal were a Level Two appeal.

### Level Two Appeal

If the employee is not satisfied with Department Director's decision, the employee may further appeal to the City Manager by submitting a written statement within 5 working days of the Department Director's written decision

to the City Manager.  The written statement shall include the written statement submitted to the Department Director, a copy of the Department Director's written decision, and the reasons why the employee is not satisfied with the Department Director's decision.

The City Manager shall investigate the appeal in such a manner as the City Manager deems appropriate and issue a written decision within 7 working days of the City Manager's receipt of the employee's appeal.  The City Manager may delegate the investigation to any assistant City Manager or any Department Director other than the Director whose decision is being appealed and may rely on that investigation on making a decision.  The decision of the City Manager is final.

## Decisions on Appeals

During the course of the investigation, the employee may put such evidence before the person conducting the investigation as the employee deems pertinent.  Any such evidence must be presented in a timely fashion so that the written decision can be delivered within the time deadlines prescribed in this manual.

Any written decision whether at Level One or at Level Two shall contain a succinct explanation of the reasons for the decision.  The decision may affirm, reverse, or modify the disciplinary action, including making the disciplinary action greater or lesser that the discipline originally imposed.  However, no discipline may be made more severe because the employee chose to appeal.

The decision of the City Manager (or the Department Director if there is no Level Two appeal) is final.  There shall be no right of appeal to or action in any court except on constitutional or statutory grounds.  The administrative remedy set out in this chapter is the exclusive remedy.



## Section 705: Grievances

A grievance is a complaint about the terms of an employee's employment or about the conditions under which he or she does the job.  Examples include complaints about the employee's physical environment, the employee's treatment by their supervisor or co-workers, and alleged unlawful conduct or discrimination.  Grievances do not include appeals from disciplinary measures because those appeals are covered by section 704 of this manual.

All city employees are free to take advantage of this grievance procedure at any time.  City policy prohibits anyone from taking any adverse action against an employee for the sole reason that the employee filed a grievance in good faith.  However, an employee who abuses the grievance processes by repeatedly filing grievances in bad faith may be subject to discipline.

Before an employee files a formal grievance, he or she should talk to the person about whom you intend to complain.  Experience shows that many

41

grievances result from misunderstandings that could be avoided by prompt, effective communication.

### Step 1:

An employee may submit a written grievance to his or her immediate supervisor within five working days after the cause of the grievance arises or becomes known to the employee. If the grievance is not resolved to the employee's satisfaction by the supervisor within five days of the time the grievance was submitted, the employee may proceed to Step 2.

If the grievance is about the employee's immediate supervisor, the grievance process starts at Step 2. If the grievance is about the employee's department director, the grievance starts with Step 2 grievance submitted to the Human Resources Department.

### Step 2:

The written grievance shall be submitted to the employee's Department Director within three working days of completing Step 1. The Department Director shall then attempt to resolve the grievance. The Department Director must deliver a written decision on the grievance within five working days. The Department Director may extend the time for a decision by adding five working days by so notifying the employee in writing with a brief statement of the reasons for the extension. If the grievance is still not resolved to the employee's satisfaction, the employee may proceed to Step 3.

### Step 3:

The written grievance and a copy of the Department Director's decision may be submitted to the City Manager within three working days of completing Step 2. The City Manager shall deliver a written decision on a grievance within five working days. The City Manager may extend the time for a decision by an additional five working days by so notifying the employee in writing with a brief statement of the reasons for the extension. The City Manager's decision on the grievance is final.

Department Directors and the City Manager may delegate the processing of grievances to another managerial level City employee. However, a department director may not delegate a grievance to the employee's immediate supervisor and the City Manager may not delegate a grievance to the employee's Department Director.

# CITY MANAGER'S OFFICE
## MEMORANDUM



TO:         Lidia Gonzalez, Acting Human Resources Director

FROM:      Carlos Rubinstein, City Manager

SUBJECT:  City Manager - Terms of Employment

DATE:      March 26, 1997

---

As discussed, attached please find a copy of the terms of employment applicable to my position as City Manager. Please note the special provisions relative to sick and annual leave pay and accrual.

Please get with MIS and ensure that the necessary transfer of previously accrued annual leave (up to February 28th) is converted to sick leave. Also, ensure that sick leave accrual at the old rate ended on February 28th. As of March 1, 1997 my leave account should be credited 10 days of annual leave and 7 days of sick leave, as per the attached resolution. No other accrual is to take place until March 1, 1998.

Please confirm via written memo to me and copy to the Commission that the necessary changes have been made as specified in the attached terms of employment. If you have any questions relative to this matter please make them known to me.

cc:    Mayor Gonzalez and Members of the City Commission



EXHIBIT NO. 7

Bryant & Stingley Inc.

0001

Commissioner __Lockett__ introduced the following resolution and moved its adoption; the motion was duly seconded by Commissioner ___Wood___ and carried by the following vote:

AYES: Mayor Gonzalez and Commissioners Lockett, Hernandez, McNair and Wood; and

NAYS: None.

The Resolution thus adopted is as follows:

A RESOLUTION OF THE CITY COMMISSION OF THE CITY OF BROWNSVILLE, TEXAS, AMENDING THE CURRENT PERSONNEL POLICIES ADOPTED BY RESOLUTION ON JUNE 13, 1978, SPECIFICALLY PROVIDING FOR TERMS OF EMPLOYMENT FOR THE CITY MANAGER EMPLOYED ON MARCH 1, 1997 THAT ARE DIFFERENT THAN THE EXISTING POLICIES.

WHEREAS, the City of Brownsville has heretofore been operating under a personnel policy which was adopted on June 13, 1978; and

WHEREAS, in order to employ a new City Manager with terms that are different than those contained in the current personnel policies, it is necessary to amend said current policies specifically with expressed terms that have been agreed to by the new City Manager and the City Commission.

NOW, THEREFORE, BE IT RESOLVED BY THE CITY COMMISSION OF THE CITY OF BROWNSVILLE, TEXAS:

THAT, the attached terms and conditions agreed to by the new City Manager, employed as of March 1, 1997, and the City Commission which are different than those terms and conditions expressed in the current personnel policies are made a part of said policies.

DONE THIS __4th__ day of ___March___, 1997.

CITY OF BROWNSVILLE

Henry Gonzalez,
Mayor

ATTEST:

Melissa Dennany Morales,
City Secretary

0002

Attachment to Personnel Action form for Carlos Rubinstein documenting appointment as City Manager, and documenting initial terms of employment effective 3/1/97. These terms are subject to the provisions of the Charter of the City of Brownsville.

## Salary
The salary will be $3,076.92 bi-weekly (equivalent to $80,000.00 per year).

## Auto allowance
Monthly auto allowance of $500.00. This figure covers travel within Cameron, Hidalgo and Willacy Counties, and the city of Matamoros. Travel outside of this area shall be reimbursed at $0.31 per mile (or as allowed by the IRS) calculated from the City of Brownsville.

## Additional accredited leave package
Accredited leave pay shall be calculated based on calendar days. During the first year of employment as City Manager, additional accredited leave pay for involuntary separation from service will be 120 days (30 from City Charter and 90 granted by City Commission). During the second year of employment as City Manager, accredited leave pay for involuntary separation from service will be 75 days (30 from City Charter and 45 granted by City Commission). After the second year of employment, accredited leave pay shall be that enumerated in the City Charter or 30 days, whichever is higher.

## Annual leave
Annual leave shall be a use it or loose it benefit. A total of 10 annual leave days (working days) shall be credited each year on the anniversary date of employment as City Manager starting March 1, 1997, and continuing annually on the anniversary date of hire. There will be no carry over of annual leave from year to year, based on anniversary date.

## Sick leave
Sick leave shall be accrued annually at 7 working days per year and shall be credited each year on the anniversary date of employment as City Manager starting March 1st, 1997, and continuing annually on the anniversary date of hire. Sick leave may be accrued indefinitely and without limit.

## Existing Annual and Sick leave
On February 28, 1997 all existing annual leave will be converted to sick leave. The combined existing and converted sick leave days (work days) shall represent the starting balance for sick leave.

## Cash out of unused leave
Upon separation from service, all unused annual leave (work days) and unused sick leave, not to exceed 20 work days of sick leave, shall be cashed out and paid to the employee at the salary rate at time of separation.

00003

**Travel, dues, and business cost reimbursement**
Costs associated with City related travel shall be paid/reimbursed by the City. Business expenses, for city related activities, shall be reimbursed by the City. Professional dues, subscriptions and membership cost associated with city related activities shall be reimbursed or paid for by the City. Membership dues associated with membership in one local civic organization shall be reimbursed by the City.

Items not covered herein shall be governed by the City Personnel Policy Manual and/or the City Charter (as amended). The City Commission may additionally adopt these terms of employment in the form of a resolution.

_____          _____
Hon. Henry Gonzalez                                Carlos Rubinstein
Mayor of Brownsville                               City Manager

_____          _____3/4/97_____
Hon. Jackie Lockett                                Date
City Commissioner, Place 1

_____
Hon. Ernie Hernandez
City Commissioner, Place 2

_____
Hon. Harry E. McNair, Jr.
City Commissioner, Place 3

_____  yes
Hon. John Wood
City Commissioner, Place 4

Approved as to form:

_____
J. G. Warburton, City Attorney

0004

Terms of employment   Carlos Rubinstein   Page 2

# CITY OF BROWNSVILLE, TEXAS

PERSONNEL ACTION NOTICE

| Employee's Name | Employee No. | Social Security Number | Effective Date |
|---|---|---|---|
| **CARLOS RUBINSTEIN** | **4181** | 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 | **1/6/2000** |

## TYPE OF ACTION

|  | |
|---|---|
| | New Employee |
| | Re-hire |
| | Change of Funding Source |
| | Name Change |
| | Salary/Wage Change |
| | Promotion |
| | Transfer |
| | Suspension |
| | Demotion |
| | Incentive Pay |
| | Out-of-Classification Pay |
| | Standby Pay   **12** |
| | Termination |
| **XX** | Other (Explain) |

## EXPLANATION OF TERMINATION CODES

1. Resignation (Explain)
2. Failure to Qualify
3. Disciplinary Action
4. Abandonment of Duties
5. Reduction in Force
6. Work Performance
7. Reorganization
8. Temporary Hire
9. Disability
10. Retirement
11. Death
12. Other (Explain)

### EMPLOYMENT CATEGORY (Circle one)

01 - Management/Supervision
02 - Clerical
03 - Labor Force
04 - Part-time
05 - Temporary

*Rubinstei*
**EXHIBIT NO. 9**
1-24-02
**Bryant & Stingley, Inc.**

## DETAILS OF ACTION (Fill in only items affected)

| | CHANGE FROM (or new hires) | CHANGE TO (or terminations) |
|---|---|---|
| NAME | | **CARLOS RUBINSTEIN** |
| HOME/ADDRESS/PHONE NUMBER | 64/.15 - 7287.23 | **1570 CAPISTRANO DR**<br>**BROWNSVILLE, TX 78520**<br>**546-2006L** |
| JOB TITLE | 20% | **CITY MANAGER** |

### SALARY/WAGE INFORMATION

| | Annual | Bi-Weekly | Annual | Bi-Weekly |
|---|---|---|---|---|
| | | | **87,500** | **3365.00** |
| | Hourly | Grade/Step | Hourly | Grade/Step |
| | | | **42.0673** | **0/0** |

### EMPLOYMENT STATUS (Check one √)

| | Regular | Probationary | Regular | Probationary |
|---|---|---|---|---|
| | | | **X** | |
| | Full Time | Temporary | Part-Time | Full Time | Temporary | Part-Time |
| | | | | **X** | | |

| DEPARTMENT/DIVISION | | **01-130 CITY MANAGER** |
|---|---|---|

## Explanation/Remarks:

**TERMINATION AS PER COMMISSION ACTION ON 1/6/2000.  ADDITIONAL**
**30 DAYS PAY AS SET FORTH IN THE ADDITIONAL ACCREDITED LEAVE PACKAGE.**

| Credit Union: 30 X8 = 250 hrs | Safety & Risk: |
|---|---|

Date received at Human Resource Department _____
Date sent to C.M. _____
Date received from C.M. _____
Date sent to finance _____

| Sick Leave Accrued Days | 20 X8 hrs = Total 160 hrs | Employee Signature | Date |
|---|---|---|---|
| Annual Leave Accrued Days | 8 X8 = Total 64 hrs | Department Head Signature | Date |
| | | Authorized Signature | Date |

DISTRIBUTION WILL BE MADE BY PERSONNEL DEPARTMENT.

WHITE: Personnel File.    YELLOW: Reporting Dept.    PINK: Finance Dept.    GOLDEN ROD: Credit Union

EXHIBIT" B "

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| CARLOS RUBINSTEIN | § | |
| Plaintiff | § | |
| | § | |
| vs. | § | |
| | § | |
| CITY OF BROWNSVILLE, TEXAS | § | CIVIL ACTION NO. B-00-169 |
| & CITY COMMISSIONERS | § | |
| ERNIE HERNANDEZ, CARLTON "BUD" | § | |
| RICHARDS, & HARRY MCNAIR, | § | |
| Individually & Officially | § | |
| Defendants | § | |

AFFIDAVIT OF LIDIA GONZALES,
INTERIM HUMAN RESOURCES DIRECTOR
FOR THE CITY OF BROWNSVILLE, TEXAS

_____

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF CAMERON | § |

BEFORE ME, the undersigned Notary Public, on this day personally appeared, LIDIA GONZALES, who being by me duly sworn and known to be the person whose signature appears below, stated on oath the following:

1.  My name is LIDIA GONZALES. I am over the age of twenty-one (21) years, of sound mind, and under no disability to make this affidavit.

2.  I am currently employed by the CITY OF BROWNSVILLE as the Interim Department Director for Human Resources. I have worked for the CITY OF BROWNSVILLE for 24 years and I have worked with personnel matters for 24 years.

3.  I am generally familiar with the Charter provisions, policy manuals, and other rules and regulations implemented by the CITY affecting personnel matters by virtue of my years of employment with the CITY working in personnel matters.

4.   This testimony is in connection with the claims made against the CITY OF BROWNSVILLE DEFENDANTS in the above-styled and numbered lawsuit by the CITY's former City Manager, Mr. Carlos Rubinstein.   The testimony provided below is all within my personal knowledge, and it is true and correct.

5.   Defense counsel has asked me to testify regarding whether the CITY OF BROWNSVILLE has a grievance policy or an appeal procedure that would apply to the position of the City Manager.

6.   The position of the City Manager is addressed by the City Charter at Art. V §§20 & 21, as amended.   The City Manager is both hired and fired by a majority vote of the City Commission.   Within the City administrative structure, there is no board or supervisory authority over the City Commission.

7.   The City's personnel policy provide a disciplinary appeal procedure (Section 704) and a grievance procedure (Section 705) for its employees.   The disciplinary appeal procedure covers appeals from disciplinary decision, including termination (Section 704).   The grievance procedure covers other matters such as the terms of employment and work conditions, including alleged unlawful conduct or discrimination (Section 705).

8.   Although Section 705 does not specifically address whistleblower grievances, it does cover allegations of unlawful conduct and could be used to complain about such unlawful conduct.

9.   However, neither of these procedures would apply to the position of the City Manager, because the City Manager answers directly to the City Commission, and there is no any person or authority over the City Commission to whom the City Manager could appeal.   Under Section 704 and 705, the City Manager is the highest level of the grieance and/or appeal process.

10. CITY records reflect that Mr. Carlos Rubinstein was involuntarily removed from his position as City Manager by majority vote of the City Commission effective January 6, 2000. There is nothing in Mr. Rubinstein's personnel file, or any other City related file, reflecting that Mr. Rubinstein attempted to invoke any type of administrative grievance or appeal procedure to complain about the termination of his employment by the City Commission.

FURTHER AFFIANT SAYETH NOT.


_____
LIDIA GONZALES
INTERIM HR DIRECTOR
CITY OF BROWNSVILLE, TEXAS



SUBSCRIBED AND SWORN TO BEFORE ME by the said LIDIA GONZALES, INTERIM HR DIRECTOR on this 28th day February, 2002 to certify which witness my hand and official seal.


NORMA G. DELGADO
Notary Public, State of Texas
My Commission Expires
NOV. 5, 2002

_____
NOTARY PUBLIC, State of Texas

Printed Name: NORMA G DELGADO

My commission expires: 11/05/02


Affidavit of HR Director Lidia Gonzales                    Page 3

**EXHIBIT" C "**

Case 1:00-cv-00169   Document 39   Filed in TXSD on 02/28/2002   Page 57 of 60

# CHAPTER 554. PROTECTION FOR REPORTING VIOLATIONS OF LAW

## § 554.001. Definitions

In this chapter:

    (1) "Law" means:

        (A) a state or federal statute;

        (B) an ordinance of a local governmental entity; or

        (C) a rule adopted under a statute or ordinance.

    (2) "Local governmental entity" means a political subdivision of the state, including a:

        (A) county;

        (B) municipality;

        (C) public school district; or

        (D) special-purpose district or authority.

    (3) "Personnel action" means an action that affects a public employee's compensation, promotion, demotion, transfer, work assignment, or performance evaluation.

    (4) "Public employee" means an employee or appointed officer other than an independent contractor who is paid to perform services for a state or local governmental entity.

    (5) "State governmental entity" means:

        (A) a board, commission, department, office, or other agency in the executive branch of state government, created under the constitution or a statute of the state, including an institution of higher education, as defined by Section 61.003, Education Code;

        (B) the legislature or a legislative agency; or

        (C) the Texas Supreme Court, the Texas Court of Criminal Appeals, a court of appeals, a state judicial agency, or the State Bar of Texas.

Added by Acts 1993, 73rd Leg., ch. 268, § 1, eff. Sept. 1, 1993.

Amended by Acts 1995, 74th Leg., ch. 721, § 1, eff. June 15, 1995.

## § 554.002. Retaliation Prohibited for Reporting Violation of Law

(a) A state or local governmental entity may not suspend or terminate the employment of, or take other adverse personnel action against, a public employee who in good faith reports a violation of law by the employing governmental entity or another public employee to an appropriate law enforcement authority.

(b) In this section, a report is made to an appropriate law enforcement authority if the authority is a part of a state or local governmental entity or of the federal government that the employee in good faith believes is authorized to:

(1) regulate under or enforce the law alleged to be violated in the report; or

(2) investigate or prosecute a violation of criminal law.

Added by Acts 1993, 73rd Leg., ch. 268, § 1, eff. Sept. 1, 1993.

Amended by Acts 1995, 74th Leg., ch. 721, § 2, eff. June 15, 1995.

### § 554.003. Relief Available to Public Employee

(a) A public employee whose employment is suspended or terminated or who is subjected to an adverse personnel action in violation of Section 554.002 is entitled to sue for:

(1) injunctive relief;

(2) actual damages;

(3) court costs; and

(4) reasonable attorney fees.

(b) In addition to relief under Subsection (a), a public employee whose employment is suspended or terminated in violation of this chapter is entitled to:

(1) reinstatement to the employee's former position or an equivalent position;

(2) compensation for wages lost during the period of suspension or termination; and

(3) reinstatement of fringe benefits and seniority rights lost because of the suspension or termination.

(c) In a suit under this chapter against an employing state or local governmental entity, a public employee may not recover compensatory damages for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses in an amount that exceeds:

(1) $50,000, if the employing state or local governmental entity has fewer than 101 employees in each of 20 or more calendar weeks in the calendar year in which the suit is filed or in the preceding year;

(2) $100,000, if the employing state or local governmental entity has more than 100 and fewer than 201 employees in each of 20 or more calendar weeks in the calendar year in which the suit is filed or in the preceding year;

(3) $200,000, if the employing state or local governmental entity has more than 200 and fewer than 501 employees in each of 20 or more calendar weeks in the calendar year in which the suit is filed or in the preceding year; and

(4) $250,000, if the employing state or local governmental entity has more than 500 employees in each of 20 or more calendar weeks in the calendar year in which the suit is filed or in the preceding year.

(d) If more than one subdivision of Subsection (c) applies to an employing state or local governmental entity, the amount of monetary damages that may be recovered from the entity in a suit brought under this chapter is governed by the applicable provision that provides the highest damage award.

Added by Acts 1993, 73rd Leg., ch. 268, § 1, eff. Sept. 1, 1993.

Amended by Acts 1995, 74th Leg., ch. 721, § 3, eff. June 15, 1995.

## § 554.0035. Waiver of Immunity

A public employee who alleges a violation of this chapter may sue the employing state or local governmental entity for the relief provided by this chapter. Sovereign immunity is waived and abolished to the extent of liability for the relief allowed under this chapter for a violation of this chapter.

Added by Acts 1995, 74th Leg., ch. 721, § 4, eff. June 15, 1995.

## § 554.004. Burden of Proof; Presumption; Affirmative Defense

(a) A public employee who sues under this chapter has the burden of proof, except that if the suspension or termination of, or adverse personnel action against, a public employee occurs not later than the 90th day after the date on which the employee reports a violation of law, the suspension, termination, or adverse personnel action is presumed, subject to rebuttal, to be because the employee made the report.

(b) It is an affirmative defense to a suit under this chapter that the employing state or local governmental entity would have taken the action against the employee that forms the basis of the suit based solely on information, observation, or evidence that is not related to the fact that the employee made a report protected under this chapter of a violation of law.

Added by Acts 1993, 73rd Leg., ch. 268, § 1, eff. Sept. 1, 1993.

Amended by Acts 1995, 74th Leg., ch. 721, § 5, eff. June 15, 1995.

## § 554.005. Limitation Period

Except as provided by Section 554.006, a public employee who seeks relief under this chapter must sue not later than the 90th day after the date on which the alleged violation of this chapter:

(1) occurred; or

(2) was discovered by the employee through reasonable diligence.

Added by Acts 1993, 73rd Leg., ch. 268, § 1, eff. Sept. 1, 1993.

## § 554.006. Use of Grievance or Appeal Procedures

(a) A public employee must initiate action under the grievance or appeal procedures of the employing state or local governmental entity relating to suspension or termination of employment or adverse personnel action before suing under this chapter.

(b) The employee must invoke the applicable grievance or appeal procedures not later than the 90th day after the date on which the alleged violation of this chapter:

(1) occurred; or

(2) was discovered by the employee through reasonable diligence.

(c) Time used by the employee in acting under the grievance or appeal procedures is excluded, except as provided by Subsection (d), from the period established by Section 554.005.

(d) If a final decision is not rendered before the 61st day after the date procedures are initiated under Subsection (a), the employee may elect to:

(1) exhaust the applicable procedures under Subsection (a), in which event the employee must sue not later than the 30th day after the date those procedures are exhausted to obtain relief under this chapter; or

(2) terminate procedures under Subsection (a), in which event the employee must sue within the time remaining under Section 554.005 to obtain relief under this chapter.

Added by Acts 1993, 73rd Leg., ch. 268, § 1, eff. Sept. 1, 1993.

Amended by Acts 1995, 74th Leg., ch. 721, § 6, eff. June 15, 1995.

## § 554.007. Where Suit Brought

(a) A public employee of a state governmental entity may sue under this chapter in a district court of the county in which the cause of action arises or in a district court of Travis County.

(b) A public employee of a local governmental entity may sue under this chapter in a district court of the county in which the cause of action arises or in a district court of any county in the same geographic area that has established with the county in which the cause of action arises a council of governments or other regional commission under Chapter 391, Local Government Code.